1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David J.F. Gross (SB# 290951)
Nick P. Chan (SB# 286925)
FAEGRE BAKER DANIELS LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone: (650) 324-6700
Fax: (650) 324-6701
david.gross@FaegreBD.com
nick.chan@FaegreBD.com

*Attorneys for Plaintiffs Boston Scientific Corporation,*
*Boston Scientific Scimed, Inc., and*
*Fortis Advisors LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, a Delaware Corporation, BOSTON SCIENTIFIC SCIMED, INC., a Minnesota Corporation, and FORTIS ADVISORS LLC, as Securityholder Representative for the Former Securityholders of nVision Medical Corporation, a Delaware Corporation<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>BIOCARDIA, INC., a Delaware Corporation<br><br>　　　　　Defendant. | Case No.: _____<br><br>**COMPLAINT**<br>**FOR DECLARATORY JUDGMENTS AND**<br>**OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Boston Scientific Corporation and Plaintiff Boston Scientific Scimed, Inc. (collectively, "Boston Scientific"), and Plaintiff Fortis Advisors LLC ("Fortis"), as Securityholder Representative for the former securityholders (the "Securityholders") of nVision Medical Corporation ("nVision"), by and through their undersigned counsel, file this Complaint against Defendant BioCardia, Inc. ("Defendant" or "BioCardia"), seeking various declaratory judgments and other relief, as set forth herein.

## NATURE OF THE ACTION

1.      Plaintiffs bring this action seeking various declaratory judgments and other relief to address threats and allegations by Defendant BioCardia against the Plaintiffs. (*See, e.g.*, Ex. A, April 9, 2019 Letter from counsel for BioCardia.) Among other things, BioCardia's pre-suit communications to Plaintiffs challenged inventorship and ownership of various patents that Boston Scientific acquired through an April 13, 2018 merger with nVision ("Merger"), as well as related threats and allegations by Defendant of trade secret misappropriation and unjust enrichment.

This declaratory judgment complaint is therefore necessary to protect the interests of Boston Scientific and Fortis.

4.      Defendant's threats, allegations, and/or claims have no merit.  The patent in question—U.S. Patent No. 9,173,571 ("the '571 Patent")—is assigned to Boston Scientific Scimed, Inc. and correctly lists Ms. Sarna as the sole inventor.  No one at BioCardia contributed to the conception or reduction to practice of the invention claimed in the '571 Patent, nor any other invention in related patent applications, including Provisional Application No. 61/435,945; Application No. 13/979,691; Application No. 14/929,989; and Application No. 15/605,407 (collectively, "the '571 Family").  Nor did anyone at BioCardia contribute to the conception or reduction to practice of the inventions in Provisional Patent Application No. 61/559,120 ("the '120 Provisional"), which Ms. Sarna filed on November 13, 2011, or applications claiming priority to the '120 Provisional, including Application No. 14/357,875, which published on October 30, 2014, as US2014/0323859 (collectively, "the '120 Provisional Family").

5.      Boston Scientific also owns the '571 Family and the '120 Provisional Family (as well as all other intellectual property acquired through the Merger).  Indeed, upon information and belief, Ms. Sarna's conception and development of both the '571 Family and '120 Provisional Family falls squarely within California Labor Code Section 2870, including because Ms. Sarna independently developed the inventions without any assistance from BioCardia, and the inventions had nothing to do with BioCardia's business, research, or development.  BioCardia's business, research, and development is directed to cardiovascular disease, specifically therapeutic candidates and biotherapeutic delivery systems for cardiovascular disease.  Indeed, its filings with the SEC reflect the same.  For example, in their 2015 S-1 filing, BioCardia stated "We are a clinical-stage regenerative medicine company developing novel therapeutics for cardiovascular diseases with large unmet medical needs."  BioCardia further stated "We are committed to applying our expertise in the fields of autologous and allogeneic cell-based therapies to improve the lives of patients with cardiovascular conditions."  In contrast, the inventions of the '571 Family and the '120 Provisional Family are directed to women's health.

6.      Upon information and belief, Ms. Sarna left BioCardia in 2012 to work full-time at nVision, with BioCardia's full knowledge.  Ms. Sarna legally assigned the '571 Family and '120 Provisional Family to nVision.  Many years later, Boston Scientific acquired the '571 Family and '120 Provisional Family upon its acquisition of nVision through the Merger on April 13, 2018. Boston Scientific is therefore the owner of all right and title in the '571 Family and '120 Provisional Family, including under state law and as a bona fide purchaser under 35 U.S.C. § 261.

7.      Contrary to Defendant's allegations, neither the '571 Family nor the '120 Provisional Family are based on misappropriated trade secrets of Defendant.  The '571 Family and '120 Provisional Family have nothing to do with BioCardia's business, research, or development, and are not based on any trade secret information of Defendant.  ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████  Nor have nVision or Boston Scientific ever used any trade secrets of Defendant.

8.      Defendant's allegations are also time-barred or otherwise foreclosed under relevant statutes of limitations, laches, and/or estoppel doctrines.  On information and belief, BioCardia was fully aware of Ms. Sarna's desire to develop a company focused on women's health and never expressed any concern with nVision, nVision's intellectual property, and/or Ms. Sarna's work with nVision.  To the contrary, in June 2013, BioCardia's then-Chief Operating Officer, Andrew MacKenzie, heard Ms. Sarna speak about nVision and nVision's products and patents at a conference.  (*See* Ex. B, Ms. Sarna's June 2013 Presentation Slides.)  After hearing Ms. Sarna's presentation at this conference, Mr. MacKenzie did not raise any objections to Ms. Sarna's work for nVision or her patents, but rather subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company."  (Ex. C, June 2013 MacKenzie/Sarna Email Exchange.)  Ms. Sarna also informed BioCardia that she had filed the patent applications in question.  BioCardia also knew, or at a minimum, reasonably should have known, of the application for the '571 Patent by at least November 7, 2013, the date the application

published as US2013/0296686.  BioCardia never raised any concerns with Ms. Sarna or nVision about any patent applications or patents filed by Ms. Sarna or nVision until close to a year after Boston Scientific's highly publicized acquisition of nVision for an upfront payment of $150 million.  In particular, BioCardia first raised the issues in this dispute in a letter dated April 9, 2019, over seven years after Ms. Sarna's departure from BioCardia, and over five years after the application for the '571 Patent published.  Defendant's decision to suddenly raise its tardy and baseless allegations after Boston Scientific's acquisition of nVision is nothing but a transparent attempt to improperly capitalize on nVision's success.  In any event, Defendant's unreasonable delay means that any claims by BioCardia are time-barred under relevant statutes of limitations or otherwise foreclosed under laches, estoppel, and/or other equitable doctrines.

9.      Defendant's April 9 Letter was titled "BioCardia Ownership of nVision Medical's Patents," and was sent to Ms. Sarna and the General Counsel of Boston Scientific, demonstrating Defendant's focus on obtaining ownership rights to Boston Scientific's intellectual property.  (*See* Ex. A.)

10.     Defendant's threats and allegations have created a real and concrete dispute between the parties regarding claims of inventorship and ownership of various patents and applications that Boston Scientific owns (including in the '571 Family and '120 Provisional Family), as well as related claims based on allegations of trade secret misappropriation and/or unjust enrichment.

11.     Accordingly, Boston Scientific, as the parent of nVision and owner of the '571 Family and '120 Provisional Family; and Fortis, for, and on behalf of, the Securityholders, who received the consideration in the Merger, and which BioCardia now demands, and whose rights to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who must provide indemnification to Boston Scientific related to various representations and warranties made by nVision in connection with the Merger, including without

COMPLAINT FOR DECLARATORY
JUDGMENTS AND OTHER RELIEF

limitation related to ownership of intellectual property transferred in the Merger and disputes relating thereto, bring this action for various declaratory judgments and other relief.

## PARTIES

12.     Plaintiff Boston Scientific Corporation is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 300 Boston Scientific Way, Marlborough, MA 01752-1234.  Boston Scientific Corporation acquired nVision, including all of its intellectual property, through the Merger on April 13, 2018.  Boston Scientific Corporation brings this action as the owner of nVision and the intellectual property and other assets acquired in the Merger, and as the parent of Boston Scientific Scimed, Inc.

13.     Plaintiff Boston Scientific Scimed, Inc. is a corporation organized and existing under the laws of the state of Minnesota, with its principle place of business at One SciMed Place, Maple Grove, Minnesota 55311.  Boston Scientific Scimed, Inc. is the current assignee of the '571 Patent and wholly owned subsidiary of Boston Scientific Corporation.

14.     Plaintiff Fortis is a Delaware limited liability company with its principal place of business in San Diego, California.  Fortis brings this action in its capacity as representative of the Securityholders pursuant to the terms of the Agreement and Plan of Merger, dated April 13, 2018, by and among Boston Scientific, Clarity Merger Corp., nVision, and Fortis.

15.     Upon information and belief, Defendant BioCardia is a corporation organized and existing under the laws of Delaware, with its principal place of business at 125 Shoreway Road, Suite B, San Carlos, CA 94070.

## JURISDICTION AND VENUE

16.     This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*., and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  In addition, this Court has supplemental jurisdiction over state law claims—including those involving declarations of ownership, no trade secret misappropriation, and no unjust enrichment—under 28 U.S.C. § 1367.

18.     This Court has general personal jurisdiction over BioCardia, as BioCardia has its principal place of business in this District.  This Court also has specific personal jurisdiction over BioCardia, as BioCardia's activities giving rise to this action occurred in this District.

19.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

### A.     BioCardia

20.     On information and belief, BioCardia was founded in the 1990s.  As its name suggests, BioCardia is and always has been in the business of treating cardiovascular disease.  For example, BioCardia's website states that its mission is to "bring to market comprehensive cell therapy solutions for the treatment of cardiovascular diseases with large unmet medical needs."  In its annual reports filed with the U.S. Securities & Exchange Commission, BioCardia describes its business as "a clinical-stage regenerative medicine company developing novel therapeutics for cardiovascular diseases with large unmet medical needs."  It also consistently states in its SEC filings that it is "committed to applying our expertise in the fields of autologous and allogeneic cell-based therapies to improve the lives of patients with cardiovascular conditions."  On information and belief, all of BioCardia's products have been directed to cardiovascular disease.

21.     BioCardia's business is not related to and has never been related to the field of women's health, let alone fallopian tube visualization or cancer detection.  Indeed, on information and belief, BioCardia has never had a product directed to the field of women's health and has never had plans to enter the field of women's health.

### B.     Ms. Sarna's Employment at BioCardia

22.     On information and belief, Ms. Sarna was an employee of BioCardia for a little over three years, from October 2008 to January 2012.

23.     On information and belief, at BioCardia, Ms. Sarna worked exclusively on projects relating to BioCardia's business of treating cardiovascular disease.  In particular, Ms. Sarna was an entry-level product development engineer at BioCardia, with her primary responsibilities including printing product labels, preparing risk analysis documentation, handling customer complaints, and

product testing.  Ms. Sarna's primary supervisors were David Snow, who was Vice President of Research and Development, and Andrew MacKenzie, who was Chief Operating Officer.

24.     On information and belief, none of Ms. Sarna's work at BioCardia related to the field of women's health.

25.     On information and belief, throughout Ms. Sarna's employment at BioCardia, BioCardia did not have any business relating to women's health, or any actual or demonstrably anticipated research or development relating to women's health.

**C.     nVision**

26.     On information and belief, long before starting her employment at BioCardia, Ms. Sarna was interested in forming a medical company focused on the field of women's health.  When Ms. Sarna was 13 years old, she developed a complex ovarian cyst.  Doctors were unable to tell if the cyst was cancerous.  The only testing available at that time was invasive surgery or a blood test notorious for false cancer diagnoses.  After some time, doctors eventually determined that her cyst was benign.  The lack of adequate medical testing devices available when Ms. Sarna suffered her cancer scare led her to believe that there was a dearth of innovation in the women's health space.  This caused Ms. Sarna to study molecular and cell biology and conduct research in the area of bioengineering while in college.

27.     After she graduated from the University of California, Berkeley in 2007, Ms. Sarna was hired by Abbot Vascular, where she worked from 2007-2008.  Ms. Sarna left Abbott Vascular to work at BioCardia in 2008.

28.     On information and belief, while employed at BioCardia, Ms. Sarna openly shared her interests in starting her own medical company focused on women's health with her colleagues at BioCardia, including Dr. Peter Altman, BioCardia's President and CEO, and her supervisors, Mr. Snow and Mr. Mackenzie.  Dr. Altman, Mr. Snow, and Mr. Mackenzie were fully supportive of Ms. Sarna's goal of forming her own company in women's health.  In fact, on information and belief, Ms. Sarna was told by Dr. Altman that she had permission to pursue her own projects relating to women's health on her own time and using her own resources, as such projects were outside the scope of BioCardia's business and research and development efforts.

8

29.     To that end, during the 2008-2012 time period, and with BioCardia's knowledge, Ms. Sarna continued to work independently and on her own time—often at night and on weekends out of her home—researching issues in women's health and ideas for starting a medical company focused on women's health, all on her own time and without the use of any BioCardia resources.

30.     Ms. Sarna's independent research on issues in women's health led to her filing two provisional patent applications in 2011.

31.     Ms. Sarna filed provisional patent application No. 61/435,945 ("'945 Provisional")—entitled "Transvaginal device and technique to access the fimbria of the fallopian tubes via the uterotubal ostium in order to both diagnose and treat occlusions and disease"—on January 25, 2011.  The '945 Provisional was based on inventions Ms. Sarna had independently conceived, on her own time, and without any assistance from BioCardia or use of any BioCardia equipment, supplies, facilities, trade secrets, or other resources.  The '945 Provisional was directed to "embodiments of a catheter with the ability to diagnose, sample and treat fallopian tube occlusion and disease."  Ms. Sarna subsequently filed several utility applications claiming priority to the '945 Provisional, including Application No. 13/979,691, which published on November 7, 2013, and subsequently issued as the '571 Patent on November 3, 2015.  The '571 Patent is titled "Systems and methods for maintaining a narrow body lumen," and describes systems and methods for diagnostic imaging or therapeutic treatment of the fallopian tubes.  Other applications claiming priority to the '945 Provisional include (1) Application No. 14/929,989, which published on June 2, 2016 as US2016/0151011; and (2) Application No. 15/605,407, which published on September 14, 2017 as US2017/0258392.  These applications and the '571 Patent are all part of the '571 Family, and all were conceived by Ms. Sarna, on her own time, and without any assistance from BioCardia or use of any BioCardia equipment, supplies, facilities, trade secrets, or other resources.

32.     Ms. Sarna also filed Provisional Patent Application No. 61/559,120 on November 13, 2011 ("the '120 Provisional"), entitled "Device and method to confirm occlusion of the fallopian tube."  Ms. Sarna subsequently filed Application No. 14/357,875, which claimed priority to the '120 Provisional, and which published on October 30, 2014, as US2014/0323859.  These applications, and any other application claiming priority to the '120 Provisional, are all part of the

'120 Provisional Family and were conceived by Ms. Sarna, on her own time, and without any assistance from BioCardia or use of any BioCardia equipment, supplies, facilities, trade secrets, or other resources.

33.     On information and belief, Ms. Sarna provided BioCardia with written notification of the patent applications she filed in 2011—namely, the '945 Provisional and the '120 Provisional.

34.     On information and belief, Ms. Sarna left BioCardia on January 4, 2012, to work full-time at nVision.

35.     After Ms. Sarna left BioCardia, she kept in touch with her BioCardia superiors and colleagues—including Dr. Altman and Mr. MacKenzie—and kept them apprised of her position as an entrepreneur in the field of women's health.  For example, in June 2013, BioCardia's then COO, Mr. MacKenzie, heard Ms. Sarna speak at a conference about nVision, the ovarian cancer detection device she was developing, the design of the devices she was developing, and the patents she had filed for nVision.  (*See* Ex. B.)  Mr. MacKenzie subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company."  (Ex. C.)

36.     BioCardia was therefore fully aware of nVision and Ms. Sarna's goal of developing nVision into a leading company in the field of women's health.

37.     Ms. Sarna spent the next six years working full-time developing nVision's business, which, as stated on its website, was "dedicated to filling the void in women's health innovation." During this time, the work of Ms. Sarna and her other nVision colleagues included extensive focus on research, product development, clinical studies, and regulatory matters.

38.     With respect to product development, nVision initially experimented with trying to develop a commercial prototype for a visualization device based on the '571 Family, and even hired an external engineering firm to provide assistance.  However, on information and belief, nVision met a number of challenges and abandoned the project around May 2013.

39.     Realizing the challenges with visualization devices, Ms. Sarna refocused her efforts in 2012 and 2013 on discovering other detection mechanisms for ovarian cancer.  This led to a new collaboration with Dr. Albert Chin and a change in direction for nVision's product development.

40.     Ms. Sarna met Dr. Chin in about September 2012.  Dr. Chin had extensive experience in medical-device development, which aligned well with Ms. Sarna's and nVision's goals for developing women's health devices.  Dr. Chin and nVision entered into a formal consulting agreement in January 2013.

41.     On information and belief, Ms. Sarna and Dr. Chin started collaborating immediately to develop new medical devices for women's health, including ovarian cancer detection.  In particular, with Ms. Sarna's understanding of fallopian tube anatomy and Dr. Chin's medical-device development experience, Ms. Sarna and Dr. Chin co-invented a balloon, which, as it inflated, would follow the path from the uterus into a fallopian tube and collect cells on its surface.  After collection of the cells, testing could be performed to detect the presence or absence of cancer.  Ms. Sarna and her team created a prototype of this invention in July 2013, which ultimately led to the Mako Device.

42.     Ms. Sarna and Dr. Chin filed for patent protection on the Mako Device.  There are several patent applications relating to the Mako Device, including US 2015/0351729A1 (filed February 3, 2014), WO 2014/121207A1 (filed February 3, 2014), and US 2016/0278747A1 (filed February 25, 2016), all of which are referred to collectively as the "Mako Device Patent Family." The Mako Device Patent Family is not related to the '571 Family or the '120 Provisional Family. BioCardia has not ever alleged ownership of the patents and patent applications in the Mako Device Patent Family.

43.     The Mako Device received clearance from the U.S. Food and Drug Administration ("FDA") in June 2016.  The Mako Device is currently the only device cleared by the FDA to collect cells from fallopian tubes, which are known to be the primary site of origin for the most lethal types of ovarian cancer.

44.     After receiving FDA clearance and completing several clinical trials, Ms. Sarna met with numerous potential development partners to commercialize the device.  Boston Scientific was one of the potential development partners that showed particular interest.

45.     Boston Scientific eventually acquired nVision in April 2018.  The Securityholders, who received distributions of the consideration paid by Boston Scientific in the Merger, and who

owe indemnification obligation to Boston Scientific as a guaranty of nVision's representations and warranties regarding intellectual property transferred in connection with the Merger, are at risk on any allegations challenging the ownership of nVision intellectual property, seeking payment of the Merger consideration, or otherwise leveling allegations of misappropriation of intellectual property.

46.     nVision formally merged with Boston Scientific on April 13, 2018.  Upon execution of the Merger, the '571 Family and '120 Provisional Family were assigned to Boston Scientific Scimed, Inc.  Boston Scientific thus acquired complete ownership of nVision and all of its intellectual property, including the '571 Family and '120 Provisional Family.

47.     The Merger between Boston Scientific and nVision was widely publicized, with a deal size of $275 million reported in the press.

**D.     The Dispute**

48.     Between the time of Ms. Sarna's departure from BioCardia in January 2012 and nVision's merger with Boston Scientific on April 13, 2018, and for almost one year thereafter until April 9, 2019, no one from BioCardia ever raised any issue with nVision's business or patents, or otherwise suggested that any of nVision's patents or patent applications were based on technology belonging to BioCardia.  To the contrary, in June 2013, BioCardia's then-Chief Operating Officer, Andrew MacKenzie, heard Ms. Sarna speak about nVision and nVision's products and patents at a conference and subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company."  (Exs. B, C.)

49.     Boston Scientific then acquired nVision through a highly publicized Merger, which was publicly reported to have a purchase price of $150 million, with the potential for additional milestone payments.

50.     On April 1, 2019, BioCardia filed its Annual Report on Form 10-K with the Securities and Exchange Commission, noting multiple times that BioCardia's losses "raise substantial doubt about [BioCardia's] ability to continue as a going concern."  Days later, on April 9, 2019—over 7 years after Ms. Sarna left BioCardia, over five years after the application for the '571 Patent published, and almost one year after the Merger—counsel for BioCardia sent a letter to Ms. Sarna and Boston Scientific, which, for the first time, raised various issues and allegations

regarding inventorship and ownership of the '571 Family and at least one application in the '120

Provisional Family, trade secret misappropriation based on the filing of applications in the '571

Family and '120 Provisional Family, breach of contract, and unjust enrichment of nVision by virtue

of the recent Merger with Boston Scientific.  (*See* Ex. A.)  As asserted in its letter, "BioCardia

believe[d] that a good first approximation of nVision's unjust enrichment is the amount Boston

Scientific paid for nVision, since the company was clearly built on the '571 Family rightfully

belonging to BioCardia."  (*Id.* at 2.)

51.     The issues raised in BioCardia's April 9 Letter were based largely on allegations that

Dr. Altman had disclosed the inventions of the '571 Patent and '571 Family to Ms. Sarna during her

employment at BioCardia.

BioCardia alleged that "at least Dr. Altman and Dr. Simon Stertzer may be co-inventors of at

least claim 1 of the '571 Patent, making them (and by assignment BioCardia) co-owners of the '571

Patent under 35 U.S.C. § 116, even if the '571 Patent did not already belong to BioCardia pursuant

to the BioCardia Agreement."  (*Id.* at 2-3.)

52.      Boston Scientific informed BioCardia that none of BioCardia's allegations had any

merit and were in any event time-barred.

53.     BioCardia sent Ms. Sarna and Boston Scientific another letter on May 20, 2019,

generally reiterating its previous allegations, none of which have any merit.  BioCardia also

suggested in its May 20, 2019 letter that the parties engage in "pre-litigation mediation."  However,

13

when Boston Scientific and Ms. Sarna reached out to BioCardia about "pre-litigation mediation," BioCardia did not respond.



55.     Plaintiffs Boston Scientific and Fortis now bring this action for declaratory judgments and other relief to address BioCardia's unfounded allegations.

## COUNT I

### (INVENTORSHIP OF '571 PATENT IS CORRECT)

56.     All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

57.     Ms. Sarna independently conceived of and reduced to practice the inventions claimed in the '571 Patent, and is therefore the sole inventor of all such inventions.

58.     There is a strong presumption that the inventorship of the '571 Patent is correct under U.S. patent law.



60.     Plaintiffs deny BioCardia's allegations.  As explained above, Ms. Sarna is the sole inventor of the inventions claimed in the '571 Patent.

61.     Boston Scientific, as the owner of the '571 Patent, has a recognized interest in the '571 Patent that is adverse to BioCardia's inventorship allegations.

62.     Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding inventorship of the '571 Patent.

63.     Plaintiff Boston Scientific is therefore entitled to a judgment declaring that Ms. Sarna is the sole inventor of the '571 Patent and that inventorship is correct.

## COUNT II

### (BOSTON SCIENTIFIC OWNS THE '571 PATENT FAMILY)

64.     All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

65.     Boston Scientific owns the '571 Patent and '571 Family.

66.     Under California Labor Law Section 2870, "any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer."

67.     As explained above, Ms. Sarna's conception and development of the inventions in the '571 Family falls squarely within California Labor Law Section 2870, such that Ms. Sarna (not BioCardia) owned the '945 Provisional and all applications and patents relating thereto, including the '571 Patent, before assigning them to nVision.  Ms. Sarna developed the inventions entirely on her own time without using BioCardia's equipment, supplies, facilities, or trade secret information. At the time of Ms. Sarna's conception and/or reduction to practice of the inventions (which all relate to women's health), none of the inventions related to BioCardia's business, or actual or demonstrably anticipated research or development of BioCardia, including because BioCardia's business and research and development was focused on treating cardiovascular disease, not

women's health.  Nor did any of the inventions result from any work performed by Ms. Sarna for BioCardia.



69.     Accordingly, Ms. Sarna's conception and development of all the inventions in the '571 Family fell within the scope of California Labor Law Section 2870, such that Ms. Sarna owned all inventions in the '571 Family until she assigned them to nVision.

70.     In addition, BioCardia's allegations that Ms. Sarna's conception and development of the inventions in the '571 Family did not fall within the scope of California Labor Law Section 2870 is barred by California's four-year statute of limitations for claims based on breach of contract.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '571 Patent and Family by at least November 7, 2013, the publication date of the application for the '571 Patent.  Accordingly, the statute of limitations provides another basis for finding that Ms. Sarna owned all inventions in the '571 Family until she assigned them to nVision.

71.     Ms. Sarna legally assigned the '571 Family to nVision.

72.     nVision also owned the '571 Family as a bona fide purchaser under 35 U.S.C. § 261, as it purchased the '571 Family for valuable consideration and without notice of BioCardia's

16

allegations regarding ownership.  BioCardia, moreover, did not record its alleged ownership interests with the U.S. Patent and Trademark Office.  Accordingly, any allegations by BioCardia of ownership in the '571 Patent and/or patent applications in the '571 Family by way of "assignment, grant, or conveyance" are "void as against" nVision.

73.     Boston Scientific purchased the '571 Family by way of the Merger on April 13, 2018.  Accordingly, Boston Scientific owns the '571 Family, which includes the '571 Patent.

74.     Boston Scientific also owns the '571 Patent and related applications in the '571 Family as a bona fide purchaser under 35 U.S.C. § 261.  Boston Scientific purchased the '571 Patent and all patent applications in the '571 Family through the Merger for valuable consideration and without notice of BioCardia's allegations regarding ownership.  BioCardia, moreover, did not record its alleged ownership interests with the U.S. Patent and Trademark Office.  Accordingly, any allegations by BioCardia of ownership in the '571 Patent and/or patent applications in the '571 Family by way of "assignment, grant, or conveyance" are "void as against" Boston Scientific.  Accordingly, 35 U.S.C. § 261 is yet another basis by which Boston Scientific owns the '571 Family, including the '571 Patent.

75.     Boston Scientific, as the owner of the '571 Family, has a recognized interest in the '571 Family that is adverse to BioCardia's ownership allegations.

76.     Fortis, as the representative of the Securityholders, who owe indemnification obligations to Boston Scientific over certain representations and warranties made by nVision as to the '571 Family in connection with the Merger, who were recipients of the Merger consideration now demanded by BioCardia (including future milestone consideration), whose right to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who have a financial interest in the disputes relating to intellectual property transferred in the Merger, also has a recognized interest in the '571 Family that is adverse to BioCardia's ownership allegations.

77.     Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding ownership of the '571 Family.

17

78.     Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that Boston Scientific is the owner of the '571 Family.

### COUNT III

### (BOSTON SCIENTIFIC OWNS THE '120 PROVISIONAL FAMILY)

79.     All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

80.     Boston Scientific owns the '120 Provisional Family—*i.e.*, the '120 Provisional and all patent applications that claim priority to the '120 Provisional, including Application No. 14/357,875, which published on October 30, 2014, as US2014/0323859.

81.     Under California Labor Law Section 2870, "any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer."

82.     As explained above, Ms. Sarna's conception and development of the inventions in the '120 Provisional Family fall squarely within California Labor Law Section 2870, such that Ms. Sarna (not BioCardia) owned all applications in the '120 Provisional Family, including the '120 Provisional and Application No. 14/357,875, before assigning them to nVision.  Ms. Sarna developed the inventions entirely on her own time without using BioCardia's equipment, supplies, facilities, or trade secret information.  At the time of Ms. Sarna's conception and/or reduction to practice of the inventions (which all relate to women's health), none of the inventions related to BioCardia's business, or actual or demonstrably anticipated research or development of BioCardia, including because BioCardia's business and research and development was focused on treating cardiovascular disease, not women's health.  Nor did any of the inventions result from any work performed by Ms. Sarna for BioCardia.

83.     Accordingly, Ms. Sarna's conception and development of all the inventions in the '120 Provisional Family fell within the scope of California Labor Law Section 2870, such that Ms. Sarna owned all such inventions when she assigned them to nVision.

84.     In addition, to the extent BioCardia claims that Ms. Sarna's conception and development of the inventions in the '120 Provisional Family did not fall within the scope of California Labor Law Section 2870, any such claim is barred by California's four-year statute of limitations for claims based on breach of contract.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '120 Provisional Family by at least October 30, 2014, the date on which Application No. 14/357,875 published.  Accordingly, the statute of limitations provides another basis for finding that Ms. Sarna owned all inventions in the '120 Provisional Family, including the '120 Provisional and Application No. 14/357,875, which published as US2014/0323859, until she assigned them to nVision.

85.     Ms. Sarna legally assigned the '120 Provisional Family to nVision.

86.     nVision also owned the '120 Provisional Family as a bona fide purchaser under 35 U.S.C. § 261, as it purchased the '120 Provisional Family for valuable consideration and without notice of BioCardia's allegations regarding ownership.  BioCardia, moreover, did not record its alleged ownership interests with the U.S. Patent and Trademark Office.  Accordingly, any allegations by BioCardia of ownership in the '120 Provisional and/or patent applications in the '120 Provisional Family by way of "assignment, grant, or conveyance" are "void as against" nVision.

87.     Boston Scientific purchased the '120 Provisional and all applications in the '120 Provisional Family, including Application No. 14/357,875, by way of the Merger on April 13, 2018. Accordingly, Boston Scientific owns the '120 Provisional and all applications in the '120 Provisional Family, including Application No. 14/357,875.

88.     Boston Scientific also owns the '120 Provisional and Application No. 14/357,875 as a bona fide purchaser under 35 U.S.C. § 261.  Boston Scientific purchased the '120 Provisional and Application No. 14/357,875, and any applications relating thereto, through the Merger for valuable consideration and without notice of BioCardia's allegations regarding ownership.  BioCardia, moreover, did not record its alleged ownership interests with the U.S. Patent and Trademark Office.

19

Accordingly, any claim by BioCardia of ownership in the '120 Provisional, Application No. 14/357,875, or any related application or patent by way of "assignment, grant, or conveyance" are "void as against" Boston Scientific.  Accordingly, 35 U.S.C. § 261 is yet another basis by which Boston Scientific owns the '120 Provisional and Application No. 14/357,875.

89.    Boston Scientific, as the owner of the '120 Provisional Family, has a recognized interest in the '120 Provisional Family that is adverse to BioCardia's ownership allegations.

90.    Fortis, as the representative of the Securityholders, who owe indemnification to Boston Scientific over certain representations and warranties made by nVision as to the '120 Provisional Family in connection with the Merger, who were recipients of the Merger consideration now demanded by BioCardia, whose right to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who have a financial interest in the intellectual property transferred in the Merger and disputes relating thereto, also has a recognized interest in the '120 Provisional Family that is adverse to BioCardia's ownership allegations.

91.    Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding ownership of the '120 Provisional Family, including the '120 Provisional and/or Application No. 14/357,875 (published as US2014/0323859).  Indeed, BioCardia's April 9 Letter expressly refers to published application US2014/0323859, which is part of the '120 Provisional Family.  (*See* Ex. A, at 2.)

92.    Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that Boston Scientific is the owner of the '120 Provisional Family, including the '120 Provisional and Application No. 14/357,875.

## COUNT IV

## ('571 FAMILY IS NOT BASED ON MISAPPROPRIATED TRADE SECRETS)

93.    All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

94.    None of the patent applications or patents in the '571 Family, including the '571 Patent, are based on any misappropriated trade secrets of BioCardia.  As explained above, Ms.

20

Sarna conceived of the inventions and reduced them to practice entirely on her own time without using BioCardia's equipment, supplies, facilities, or trade secret information.



98.     Accordingly, none of the applications or patents in the '571 Family, including the '945 Provisional and '571 Patent, are based on any misappropriated trade secrets of BioCardia.

99.     In addition, any claim by BioCardia that the '945 Provisional, '571 Patent, and/or other applications in the '571 Family are based on misappropriated trade secrets of BioCardia is barred by the three-year statute of limitations for trade secret misappropriation under both California and federal trade secret law.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '945 Provisional and '571 Patent by at least

November 7, 2013, the publication date of the application for the '571 Patent. Accordingly, the statute of limitations provides another basis for finding that none of the applications or patents in the '571 Family are based on misappropriated trade secrets of BioCardia.

100. Boston Scientific, as the owner of the '571 Family, has a recognized interest in the '571 Family that is adverse to BioCardia's allegations of trade secret misappropriation.

101. Fortis, as the representative of the Securityholders, who owe indemnification to Boston Scientific over certain representations and warranties made by nVision as to the '571 Family in connection with the Merger, were the recipients of the Merger Consideration now demanded by BioCardia, whose right to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who have a financial interest in the intellectual property transferred in the Merger and disputes relating thereto, also has a recognized interest in the '571 Family that is adverse to BioCardia's allegations of trade secret misappropriation.

102. Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether the filing of any application in the '571 Family misappropriated any trade secrets of BioCardia and/or whether the '571 Family is otherwise based on misappropriated trade secrets of BioCardia.

103. Plaintiffs Bostin Scientific and Fortis are therefore entitled to a judgment declaring that none of the patents or applications in the '571 Family, including the '945 Provisional and '571 Patent, are based on misappropriated trade secrets of BioCardia.

**COUNT V**

**('120 PROVISIONAL FAMILY**

**IS NOT BASED ON MISAPPROPRIATED TRADE SECRETS)**

104. All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

105. None of the patent applications or patents in the '120 Provisional Family are based on any misappropriated trade secrets of BioCardia. As explained above, Ms. Sarna conceived of the

inventions and reduced them to practice entirely on her own time without using BioCardia's equipment, supplies, facilities, or trade secret information.

106.    BioCardia has nonetheless alleged that the inventions in the '120 Provisional Family are based on trade secrets of BioCardia.  BioCardia's allegations have no merit, including for all the reasons explained above in connection with the '571 Family.

108.    Accordingly, none of the applications in the '120 Provisional Family are based on any misappropriated trade secrets of BioCardia.

109.    In addition, any claim by BioCardia that the '120 Provisional Family are based on misappropriated trade secrets of BioCardia is barred by the three-year statute of limitations for trade secret misappropriation under both California and federal trade secret law.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '120 Provisional Family by at least October 30, 2014, the date on which Application No. 14/357,875 published.  Accordingly, the statute of limitations provides another basis for finding that none of the applications or patents in the '120 Provisional Family are based on misappropriated trade secrets of BioCardia.

110.    Boston Scientific, as the owner of the '120 Provisional Family, has a recognized interest in the '120 Provisional Family that is adverse to BioCardia's allegations of misappropriation of trade secrets.

111.    Fortis, as the representative of the Securityholders, who owe indemnification to Boston Scientific over certain representations and warranties made by nVision as to the '120 Provisional Family in connection with the Merger, who were the recipients of the Merger consideration now demanded by BioCardia, whose right to future milestone consideration arising

out of the Merger may be clouded by Defendant's allegations and who have a financial interest in the intellectual property transferred in the Merger and disputes relating thereto, also has a recognized interest in the '120 Provisional Family that is adverse to BioCardia's allegations of misappropriation of trade secrets.

112.    Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether the filing of any application in the '120 Provisional Family misappropriated any trade secrets of BioCardia or whether any application in the '120 Provisional Family is otherwise based on misappropriated trade secrets of BioCardia.

113.    Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that none of applications in the '120 Provisional Family are based on misappropriated trade secrets of BioCardia.

## COUNT VI

### (NO TRADE SECRET MISAPPROPRIATION BY NVISION UNDER CUTSA)

114.    All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

115.    BioCardia has also alleged that nVision was built on misappropriated trade secrets of BioCardia, including through the continuing use of trade secrets allegedly misappropriated through the filing of applications in the '571 Family and '120 Provisional Family.  (*See* Ex. A at 2 (asserting "recovery by BioCardia of nVision's unjust enrichment from the breach of contract and misappropriation of trade secrets"); *id.* (asserting that BioCardia "believes a good first approximation of nVision's unjust enrichment is the amount Boston Scientific paid for nVision, since the company was clearly built on the '571 Family rightfully belonging to BioCardia").)

116.    BioCardia's allegations have no merit, for all the reasons set forth above.  For example, as set forth above, none of the patents or patent applications in the '571 Family or '120 Provisional Family are based on any misappropriated trade secrets of BioCardia.  Nor did nVision ever use, let alone misappropriate, any trade secrets of BioCardia.

117.   In addition, any claim by BioCardia for misappropriation of trade secrets by nVision is barred by California's three-year statute of limitations for trade secret misappropriation. As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '571 Family and '120 Provisional Family by at least November 7, 2013, and October 30, 2014, respectively. BioCardia was also fully aware of the fact that Ms. Sarna had started nVision in 2012 and was developing products in women's health. Indeed, in June 2013, BioCardia's then-Chief Operating Officer, Andrew MacKenzie, heard Ms. Sarna speak about nVision and nVision's products and patents at a conference and subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company." (Exs. B, C.) Accordingly, the statute of limitations provides another basis for finding that nVision did not misappropriate any trade secrets of BioCardia.

118.   Boston Scientific, as the parent of nVision and as the party that acquired nVision and all of its intellectual property through the Merger, has a recognized interest in nVision that is adverse to BioCardia's allegations of misappropriation of trade secrets by nVision.

119.   Fortis, as the representative of the Securityholders, who owe indemnification to Boston Scientific over certain representations and warranties made by nVision, including as to its intellectual property, in connection with the Merger, who were the recipients of the Merger Consideration now demanded by BioCardia, whose right to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who have a financial interest in the intellectual property transferred in the Merger and disputes relating thereto, also has a recognized interest in nVision that is adverse to BioCardia's allegations of misappropriation of trade secrets by nVision.

120.   Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether nVision misappropriated any trade secrets of BioCardia under California's Uniform Trade Secrets Act or other applicable state law.

121.     Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that nVision did not misappropriate any trade secrets of BioCardia under California's Uniform Trade Secrets Act or other applicable state law.

**COUNT VII**

**(NO TRADE SECRET MISAPPROPRIATION BY NVISION UNDER FEDERAL LAW)**

122.     All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

123.     The Defend Trade Secrets Act ("DTSA") was enacted on May 11, 2016.

124.     As set forth above, BioCardia has made allegations that nVision was built on misappropriated trade secrets of BioCardia, and that nVision therefore continued to use misappropriated trade secrets until the Merger with Boston Scientific on April 13, 2018.

125.     BioCardia's allegations have no merit, for all the reasons set forth above, including in connection with Plaintiffs' request for declaratory judgment that nVision did not misappropriate any trade secrets of BioCardia under California's Uniform Trade Secret Act.

126.     In addition, any claim by BioCardia for misappropriation of trade secrets by nVision is barred by the DTSA's three-year statute of limitations for trade secret misappropriation, for all the reasons set forth above.

127.     Boston Scientific and Fortis have recognized interests in nVision that are adverse to BioCardia's allegations of misappropriation of trade secrets by nVision, as set forth above.

128.     Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether nVision misappropriated any trade secrets of BioCardia under the DTSA.

129.     Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that nVision did not misappropriate any trade secrets of BioCardia under the DTSA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT VIII

## (NO TRADE SECRET MISAPPROPRIATION BY BOSTON SCIENTIFIC
## UNDER CUTSA)

130.    All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

131.    BioCardia has also alleged that nVision, which Merged with Boston Scientific on April 13, 2018, was built on misappropriated trade secrets of BioCardia, including through the continuing use of trade secrets allegedly misappropriated through the filing of applications in the '571 Family and '120 Provisional Family.  (*See* Ex. A at 2 (asserting "recovery by BioCardia of nVision's unjust enrichment from the breach of contract and misappropriation of trade secrets"); *id.* (asserting that BioCardia "believes a good first approximation of nVision's unjust enrichment is the amount Boston Scientific paid for nVision, since the company was clearly built on the '571 Family rightfully belonging to BioCardia").)

132.    BioCardia has therefore at least suggested that Boston Scientific, through its Merger with nVision, has misappropriated trade secrets of BioCardia.

133.    BioCardia's allegations that Boston Scientific misappropriated trade secrets of BioCardia have no merit.  For example, BioCardia's allegations that the '571 Family and '120 Provisional Family are based on misappropriated trade secrets of BioCardia have no merit, including for all the reasons set forth above.  In addition, BioCardia's allegations that nVision misappropriated trade secrets of BioCardia have no merit, including for all the reasons set forth above.  Accordingly, BioCardia's allegations that Boston Scientific misappropriated trade secrets of BioCardia in connection with its Merger with nVision also have no merit, including for all the reasons set forth above.

134.    In addition, any claim by BioCardia for misappropriation of trade secrets is barred by California's three-year statute of limitations for trade secret misappropriation.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '571 Family and '120 Provisional Family by at least November 7, 2013, and October 30, 2014, respectively.  BioCardia was also fully aware of the fact that Ms. Sarna had started nVision in 2012

27

and was developing products in women's health.  Indeed, in June 2013, BioCardia's then-Chief Operating Officer, Andrew MacKenzie, heard Ms. Sarna speak about nVision and nVision's products and patents at a conference and subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company."  (Exs. B, C.)  Accordingly, the statute of limitations provides another basis for finding that Boston Scientific did not misappropriate any trade secrets of BioCardia.

135.    Boston Scientific has a recognized interest that is adverse to BioCardia's allegations of misappropriation of trade secrets by Boston Scientific.

136.    Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether Boston Scientific misappropriated any trade secrets of BioCardia under California's Uniform Trade Secrets Act or other applicable state law.

137.    Plaintiff Boston Scientific is therefore entitled to a judgment declaring that Boston Scientific did not misappropriate any trade secrets of BioCardia under California's Uniform Trade Secrets Act or other applicable state law.

## COUNT IX

### (NO TRADE SECRET MISAPPROPRIATION BY BOSTON SCIENTIFIC UNDER FEDERAL LAW)

138.    All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

139.    As set forth above, BioCardia has made allegations that nVision was built on misappropriated trade secrets of BioCardia, and that nVision therefore continued to use misappropriated trade secrets until the Merger with Boston Scientific on April 13, 2018.

140.    BioCardia has also at least suggested that Boston Scientific, through its Merger with nVision, has misappropriated trade secrets of BioCardia.

141.    BioCardia's allegations that Boston Scientific misappropriated BioCardia trade secrets have no merit.  For example, BioCardia's allegations that the '571 Family and '120 Provisional Family are based on misappropriated trade secrets of BioCardia have no merit,

including for all the reasons set forth above.  In addition, BioCardia's allegations that nVision misappropriated trade secrets of BioCardia have no merit, including for all the reasons set forth above.  Accordingly, BioCardia's allegations that Boston Scientific misappropriated trade secrets of BioCardia in connection with its Merger with nVision also have no merit, including for all the reasons set forth above.

142.    In addition, as set forth above, any claim by BioCardia for misappropriation of trade secrets by Boston Scientific is barred by the DTSA's three-year statute of limitations for trade secret misappropriation.

143.    Boston Scientific has a recognized interest that is adverse to BioCardia's allegations of misappropriation of trade secrets by Boston Scientific, as set forth above.

144.    Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether Boston Scientific misappropriated any trade secrets of BioCardia under the DTSA.

145.    Plaintiff Boston Scientific is therefore entitled to a judgment declaring that Boston Scientific did not misappropriate any trade secrets of BioCardia under the DTSA.

## COUNT X

### (NO UNJUST ENRICHMENT BY NVISION)

146.    All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference.

147.    As set forth above, BioCardia has threatened to seek "recovery by BioCardia of nVision's unjust enrichment from the breach of contract and misappropriation of trade secrets," (Ex. A at 2), and "believes a good first approximation of nVision's unjust enrichment is the amount Boston Scientific paid for nVision, since the company was clearly built on the '571 Family rightfully belonging to BioCardia" (*id.*).

148.    BioCardia is not entitled to seek any type of unjust enrichment by nVision.  For example, as set forth above, BioCardia has no basis for any inventorship claim regarding the '571 Patent, or any ownership claim regarding the '571 Family or '120 Provisional Family.  Nor does

BioCardia have any claim that any application or patent in the '571 Family or '120 Provisional Family was based on any misappropriated trade secrets of BioCardia, or that nVision otherwise misappropriated any trade secrets of BioCardia.  Accordingly, BioCardia has no claim for unjust enrichment.

149.    In addition, BioCardia's assertion that nVision was "built on the '571 Family" is incorrect.  In fact, none of nVision's products use any technology claimed in the '571 Family.  As explained above, the Mako Device is not based on the '571 Family.

150.    In addition, any claim by BioCardia for unjust enrichment is barred by California's statute of limitations, as set forth above, or otherwise foreclosed under laches, estoppel, and/or other equitable doctrines.  As explained above, BioCardia knew, or at a minimum, reasonably should have known, of the inventions in the '571 Family and '120 Provisional Family by at least November 7, 2013, and October 30, 2014, respectively.  BioCardia was also fully aware in 2012 of the fact that Ms. Sarna had left BioCardia to work full-time at nVision, and that Ms. Sarna and nVisions were developing products in women's health.  Indeed, in June 2013, BioCardia's then-Chief Operating Officer, Andrew MacKenzie, heard Ms. Sarna speak about nVision and nVision's products and patents at a conference and subsequently emailed Ms. Sarna to congratulate her on "how successful [she had] been at pursuing the birth of [her] company."  (Exs. B, C.)

151.    Boston Scientific, as the parent of nVision and as the party that acquired nVision and all of its intellectual property through the Merger, has a recognized interest in nVision that is adverse to BioCardia's allegations of unjust enrichment by nVision.

152.    Fortis, as the representative of the Securityholders, who owe indemnification obligations to Boston Scientific over certain representations and warranties as to nVision, including as to its intellectual property, in connection with the Merger, who were the recipients of the Merger consideration now demanded by BioCardia, whose right to future milestone consideration arising out of the Merger may be clouded by Defendant's allegations, and who have a financial interest in the intellectual property transferred in the Merger and disputes relating thereto, also has a recognized interest in nVision that is adverse to BioCardia's allegations of unjust enrichment by nVision.

153.     Moreover, as explained above, Defendant's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether nVision was unjustly enrichment through its Merger with Boston Scientific.

154.     Plaintiffs Boston Scientific and Fortis are therefore entitled to a judgment declaring that nVision was not unjustly enriched through its Merger with Boston Scientific.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests that the Court:

A.     Declare and enter judgment that inventorship on the '571 Patent is correct;

B.     Declare and enter judgment that Boston Scientific owns the '571 Family;

C.     Declare and enter judgment that Boston Scientific owns the '120 Provisional Family;

D.     Declare and enter judgment that the '571 Family is not based on any misappropriated trade secrets of BioCardia;

E.     Declare and enter judgment that the '120 Provisional Family is not based on any misappropriated trade secrets of BioCardia;

F.     Declare and enter judgment that nVision did not misappropriate any trade secrets of BioCardia under state law;

G.     Declare and enter judgment that nVision did not misappropriate any trade secrets of BioCardia under federal law;

H.     Declare and enter judgment that Boston Scientific did not misappropriate any trade secrets of BioCardia under state law;

I.     Declare and enter judgment that Boston Scientific did not misappropriate any trade secrets of BioCardia under federal law;

J.     Declare and enter judgment that nVision was not unjustly enriched through the Merger with Boston Scientific;

L.      Find that this case is exceptional and award Plaintiffs their costs, attorneys' fees, and litigation expenses incurred in this action pursuant to 35 U.S.C. § 285, including interest;

M.      Award Plaintiffs their costs, attorneys' fees, and litigation expenses incurred in this action under any applicable basis; and

N.      Award Plaintiffs any other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury for all issues so triable that are raised herein or which hereinafter may be raised in this action.


Dated:  September 6, 2019_____            **FAEGRE BAKER DANIELS LLP**

                                        By:    /s/  David J.F. Gross
                                        David J.F. Gross (SB# 290951)
                                        Nick P. Chan (SB# 286925)
                                        FAEGRE BAKER DANIELS LLP
                                        1950 University Avenue, Suite 450
                                        East Palo Alto, CA 94303
                                        Telephone: (650) 324-6700
                                        Fax: (650) 324-6701
                                        david.gross@FaegreBD.com
                                        nick.chan@FaegreBD.com

                                        *Attorneys for Plaintiffs Boston Scientific Corporation,*
                                        *Boston Scientific Scimed, Inc., and*
                                        *Fortis Advisors LLC*

COMPLAINT FOR DECLARATORY
JUDGMENTS AND OTHER RELIEF