IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
**FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP**
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Tel: 650.825.4300

*Attorneys for Defendant/Counterclaimant*
BioCardia, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC,

Plaintiffs,

v.

BIOCARDIA, INC.,

Defendant.

BIOCARDIA, INC.,

Counterclaimant,

v.

BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC, AND SURBHI SARNA,

Counterdefendants.

CASE NO. 3:19-05645-VC

**BIOCARDIA, INC.'S FIRST AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS**

**JURY TRIAL DEMANDED**

Hon. Vince Chhabria

Defendant BioCardia, Inc. ("Biocardia") hereby answers the complaint of Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively "Boston Scientific"), Plaintiff Fortis Advisors LLC, as Securityholder Representative for the former securityholdcrs of nVision Medical Corporation Complain (the "Securityholders;" "Plaintiffs" together with Boston Scientific). BioCardia also asserts counterclaims as alleged below against Plaintiffs and Surbhi Sarna ("Ms. Sarna;" "Counterdefendants" together with Plaintiffs).

**BIOCARDIA'S ANSWER TO COMPLAINT**

**NATURE OF THE ACTION**

1. BioCardia admits the allegations of paragraph 1.

2. BioCardia admits the allegations of paragraph 2.

3. BioCardia admits the allegations of the first sentence of paragraph 1 of paragraph 3, lacks sufficient information or belief to respond to the second sentence of paragraph 3, and denies the remaining allegations of paragraph 3.

4. BioCardia denies the allegations of paragraph 4.

5. BioCardia denies the allegations of the first two sentences of paragraph 5, admits the allegations of the remaining allegations of paragraph 5, and alleges that (a) Ms. Sarna did not develop the invention of the '571 Family "entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information;" and (b) the '571 Family related "at the time of conception or reduction to practice of the invention to [BioCardia's] business, or actual or demonstrably anticipated research or development of [BioCardia]," within the meaning of California Labor Code § 2870.

6. BioCardia denies the allegations of paragraph 6.

7. BioCardia denies the allegations of paragraph 7.

8. BioCardia denies the allegations of paragraph 8.

10. BioCardia admits the allegations of paragraph 10.

11. BioCardia admits that Plaintiffs bring this action for various declaratory judgments and other relief. Except as thus expressly admitted, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 11 and on that basis

denies them.

**PARTIES**

12. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 12 and on that basis denies them.

13. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 13 and on that basis denies them.

14. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 14 and on that basis denies them.

15. BioCardia admits the allegations of paragraph 15.

**JURISDICTION AND VENUE**

16. BioCardia admits that Plaintiffs purport to assert claims under the referenced statutes. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 16.

17. BioCardia admits the allegations of paragraph 17.

18. BioCardia admits the allegations of paragraph 18.

19. BioCardia admits the allegations of paragraph 19.

**FACTUAL BACKGROUND**

**A. BioCardia**

20. BioCardia admits the allegations of paragraph 20.

21. BioCardia denies the allegations of paragraph 21. BioCardia alleges that Ms. Sarna started consulting with BioCardia on September 15, 2008 pursuant to a Consulting Agreement executed on August 27, 2008, and Ms. Surbhi started as a full time employee of BioCardia on November 3, 2008 pursuant to the BioCardia standard Employment Agreement which she signed on October 29 (the “Sarna Agreement”).

**B. Ms. Sarna Employment at BioCardia**

22. BioCardia denies the allegations of paragraph 22.

23. BioCardia denies the allegations of paragraph 23.

24. BioCardia denies the allegations of paragraph 24.

25. BioCardia denies the allegations of paragraph 25.

**C. nVision**

26. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 26 and on that basis denies them.

27. BioCardia admits that Ms. Sarna began working at BioCardia in 2008. Except as thus expressly admitted, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 27 and on that basis denies them.

28. BioCardia admits the allegations of the first sentence of paragraph 28. Except as thus expressly admitted, denies the allegations of paragraph 28.

29. BioCardia denies that it had knowledge of Ms. Sarna's alleged activities. Except as thus expressly denied, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 29 and on that basis denies them.

30. BioCardia denies the allegations of paragraph 30.

31. BioCardia denies the allegations of the second and last sentences of paragraph 31. Except as thus expressly denied, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 31 and on that basis denies them.

32. BioCardia denies the allegations of the last sentence of paragraph 32. Except as thus expressly denied, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 32 and on that basis denies them.

33. BioCardia denies the allegations of paragraph 33.

34. BioCardia admits that Ms. Sarna left BioCardia on January 4, 2012. Except as thus expressly denied, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 34 and on that basis denies them.

35. BioCardia admits that Mr. MacKenzie heard Ms. Sarna speak at a conference about nVision and he subsequently emailed Ms. Sarna. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 35.

36. BioCardia admits that it was aware of Ms. Sarna's goal of developing a company in the field of women's health while she was an employee of BioCardia, and that BioCardia CEO was emailed by Ms. Sarna that she had become an entrepreneur in a short cryptic email after her

departure from the Company. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 36.

37 . BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 37 and on that basis denies them.

38. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 38 and on that basis denies them.

39. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 39 and on that basis denies them.

40. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 40 and on that basis denies them.

41. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 31 and on that basis denies them.

42. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 42 and on that basis denies them.

43. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 43 and on that basis denies them

44. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 44 and on that basis denies them

45. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 45 and on that basis denies them.

46. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 46 and on that basis denies them.

47. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 47 and on that basis denies them.

**D. The Dispute**

48. BioCardia admits the allegations of the first sentence and that in June 2013 Andrew MacKenzie heard Ms. Sarna speak about nVision and subsequently emailed her. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 48.

49. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 49 and on that basis denies them.

50. BioCardia admits the allegations of paragraph 50.

51. BioCardia admits the allegations of paragraph 51.

52. BioCardia admits that Boston Scientific so-informed BioCardia of its belief. Except as this expressly admitted, BioCardia denies the allegations of paragraph 52.

53. BioCardia admits that it sent another letter on May 20, 2019 generally reiterating its previous allegations. BioCardia admits it suggested the parties engage in "pre-litigation mediation." BioCardia alleges that Boston Scientific expressly stated that it would only mediate before a mediator of its choosing in Chicago, Illinois, a venue having no connection to the dispute. BioCardia alleges it did not respond to Boston Scientific's offer of mediation because the preconditions put on mediation by Boston Scientific were preposterous and not in good faith. Except as thus expressly admitted and alleged, BioCardia denies the allegations of paragraph 53.

54. BioCardia admits that it filed the Arbitration against Ms. Sarna on August 6, 2019 because Ms. Sarna's agreement with BioCardia requires arbitration. Except as thus expressly admitted, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 54 and on that basis denies them.

55. BioCardia admits that Plaintiffs bring an action for declaratory judgments and other relief. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 55.

**<u>COUNT I</u>**

**(INVENTORSHIP OF '571 PATENT IS CORRECT)**

56. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

57. BioCardia denies the allegations of paragraph 57.

58. BioCardia neither admits nor denies the allegations of paragraph 58 as it states a conclusion of law.

59. BioCardia admits the allegations of paragraph 63.

60. BioCardia admits the first sentence of paragraph 60. Except as thus expressly

admitted, BioCardia denies the allegations of paragraph 60.

61. BioCardia denies the allegations of paragraph 63.

62. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 62 and on that basis denies them.

63. BioCardia  denies the allegations of paragraph 63.

**COUNT II**

**(BOSTON SCIENTIFIC OWNS THE '571 PATENT FAMILY)**

64. BioCardia incorporates its responses it to the allegations of the proceeding paragraphs.

65. BioCardia denies the allegations of paragraph 65.

66. BioCardia alleges that California Labor Law Section 2870 speaks for itself. Except as thus expressly alleged, BioCardia denies the allegations of paragraph 66.

67. BioCardia denies the allegations of paragraph 65.

68. BioCardia denies the allegations of paragraph 68.

69. BioCardia denies the allegations of paragraph 69.

70. BioCardia denies the allegations of paragraph 70.

71. BioCardia denies the allegations of paragraph 71.

72. BioCardia admits the allegations of the second sentence of paragraph 72. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 72.

73. BioCardia denies the allegations of the second sentence of paragraph 73. Except as thus expressly denied, BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 31 and on that basis denies them.

74. BioCardia admits the allegations of the third sentence of paragraph 74. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 74.

75. BioCardia denies the allegations of paragraph 75.

76. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 76 and on that basis denies them.

77. BioCardia alleges that it lacks sufficient information or belief to respond to the

allegations of paragraph 77 and on that basis denies them.

78. BioCardia denies the allegations of paragraph 78.

**COUNT III**

**(BOSTON SCIENTIFIC OWNS THE 120 PROVISIONAL FAMILY)**

79. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

80. BioCardia denies the allegations of paragraph 80.

81. BioCardia alleges that California Labor Law Section 2870 speaks for itself. Except as thus expressly alleged, BioCardia denies the allegations of paragraph 81.

82. BioCardia denies the allegations of paragraph 82.

83. BioCardia denies the allegations of paragraph 83.

84. BioCardia denies the allegations of paragraph 84.

85. BioCardia denies the allegations of paragraph 85.

86. BioCardia admits the allegations of the second sentence of paragraph 86. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 86.

87. BioCardia denies the allegations of paragraph 87.

88. BioCardia admits the allegations of the third sentence of paragraph 88. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 88.

89. BioCardia denies the allegations of paragraph 89.

90. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 90 and on that basis denies them.

91. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 91 and on that basis denies them.

92. BioCardia denies the allegations of paragraph 92.

**COUNT IV**

**('571 FAMILY IS NOT BASED ON MISAPPROPRIATED TRADE SECRETS)**

93. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

94. BioCardia denies the allegations of paragraph 94.

95. BioCardia admits the allegations of all but the last sentence of paragraph 95. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 95.

96. BioCardia denies the allegations of paragraph 96.

97. BioCardia denies the allegations of paragraph 97.

98. BioCardia denies the allegations of paragraph 98.

99. BioCardia denies the allegations of paragraph 99.

100. BioCardia denies the allegations of paragraph 100.

101. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 101 and on that basis denies them.

102. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 102 and on that basis denies them.

103. BioCardia denies the allegations of paragraph 103.

**COUNT V**

**('120 "PROVISIONAL FAMILY IS NOT BASED ON MISAPPROPRIATED TRADE SECRETS)**

104. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

105. BioCardia denies the allegations of paragraph 105.

106. BioCardia admits that it alleges that the inventions in the '120 Provisional Family are based on trade secrets of BioCardia and filed by Ms. Sarna while she was an employee of BioCardia. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 106.

107. BioCardia denies the allegations of paragraph 107.

108. BioCardia denies the allegations of paragraph 108.

109. BioCardia denies the allegations of paragraph 109.

110. BioCardia denies the allegations of paragraph 110.

111 BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 111 and on that basis denies them.

112. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 112 and on that basis denies them.

113. BioCardia denies the allegations of paragraph 113.

**COUNT VII**

**(NO TRADE SECRET MISAPPROPRIATIONS BY NVISION UNDER CUTSA)**

114. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

115. BioCardia admits the allegations of paragraph 115.

116. BioCardia denies the allegations of paragraph 116.

117. BioCardia admits the allegation that in June 2013 Andrew MacKenzie heard Ms. Sarna speak about nVision and subsequently emailed her. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 117.

118. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 118 and on that basis denies them.

119. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 119 and on that basis denies them.

120. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 120 and on that basis denies them.

121. BioCardia denies the allegations of paragraph 121.

**COUNT VII**

**(NO TRADE SECRET MISAPPROPRIATION BY NVISION UNDER FEDERAL LAW)**

122. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

123. BioCardia admits that the DTSA was effective May 11, 2016. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 123.

124. BioCardia admits the allegations of paragraph 124.

125. BioCardia denies the allegations of paragraph 125.

126. BioCardia denies the allegations of paragraph 126.

127. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 127 and on that basis denies them.

128. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 128 and on that basis denies them.

129. BioCardia denies the allegations of paragraph 129.

**COUNT VIII**
**(N0 TRADE SECRET MISAPPROPRIATION BY BOSTON SCIENTIFIC UNDER CUTSA)**

130. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

131. BioCardia admits the allegations of paragraph 131.

132. BioCardia denies the allegations of paragraph 132.

133. BioCardia denies the allegations of paragraph 133.

l34. BioCardia admits the allegation that in June 2013 Andrew MacKenzie heard Ms. Sarna speak about nVision and subsequently emailed her. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 134.

135. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 135 and on that basis denies them.

136. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 136 and on that basis denies them.

137. BioCardia denies the allegations of paragraph 137.

**COUNT IX**
**(NO TRADE SECRET MISAPPROPRIATION BY BOSTON SCIENTIFIC UNDER FEDERAL LAW)**

138. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

139. BioCardia admits that it alleges that nVision was built on misappropriated trade secrets of BioCardia. Except as thus expressly alleged, BioCardia denies the allegations of paragraph 139.

140. BioCardia denies the allegations of paragraph 140.

141. BioCardia denies the allegations of paragraph 141.

142. BioCardia denies the allegations of paragraph 142.

143. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 151 and on that basis denies them.

144. BioCardia denies the allegations of paragraph 144.

145. BioCardia denies the allegations of paragraph 145.

**COUNT X**
**(NO UNJUST ENRICHMENT BY NVISION)**

146. BioCardia incorporates its responses to the allegations of the proceeding paragraphs.

147. BioCardia admits the allegations of paragraph 147.

148. BioCardia denies the allegations of paragraph 148.

149. BioCardia denies the allegations of paragraph 149.

150. BioCardia admits that it was aware in 2012 that Ms. Sarna left BioCardia. BioCardia admits the allegation that in June 2013 Andrew MacKenzie heard Ms. Sarna speak about nVision and subsequently emailed her. Except as thus expressly admitted, BioCardia denies the allegations of paragraph 150.

151. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 151 and on that basis denies them.

152. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 152 and on that basis denies them.

153. BioCardia alleges that it lacks sufficient information or belief to respond to the allegations of paragraph 153 and on that basis denies them.

154. BioCardia denies the allegations of paragraph 154

**BIOCARDIA, INC.'S COUNTERCLAIMS**

("BioCardia") alleges the following counterclaims against Counterdefendants.

**NATURE OF THE ACTION**

1. BioCardia brings this counterclaim seeking correction of inventorship on certain patents (the "Sarna Patent Family" as more specifically alleged below), seeking damages, including damages for Counterdefendants' unjust enrichment measured by the amount Boston Scientific paid for nVision Medical Corporation ("nVision"), for Counterdefendants misappropriation of trade secrets and Ms. Sarna's breach of contract, and seeking imposition of constructive trusts both on the Sarna Patent Family and the proceeds from Counterdefendants misappropriation of trade secrets and Ms. Sarna's breach of contract.

2. On August 6, 2019, BioCardia filed a request for arbitration (the "Arbitration Request") with the American Arbitration Association ("AAA") seeking, among other things, a declaration of ownership of various patents on which Ms. Sarna is a purported inventor and unjust enrichment" in the amount Boston Scientific paid for nVision Medical (the "Arbitration").

3. On August 12, 2019. Ms. Sarna, through her previous attorney, requested an extension to respond to the Arbitration Request because Ms. Sarna was 33 weeks into a high risk pregnancy, which BioCardia immediately granted.

4. On September 6, 2019, Boston Scientific filed the instant Action.

5. On September 13, 2019, after having requested an extension to respond to the Arbitration Request, Ms. Sarna instead filed a complaint in the Superior Court of California in and for the County of San Mateo, Action No. 19CLJ05413 (the "State Court Action") seeking to enjoin the Arbitration on various grounds.

6. BioCardia and Counterdefendants subsequently agreed that they would resolve all of their disputes in this Action, that BioCardia would withdraw the Arbitration Demand, that Ms. Sarna would dismiss the State Court Action, and that BioCardia would asserts its claims against Counterdefendants in this Action.

7. BioCardia subsequently withdrew the Arbitration Demand with the AAA and is informed and believes and on that basis alleges that Ms. Sarna dismissed the State Court Action,

both in favor of resolving BioCardia's claims in this Action.

## PARTIES

8. BioCardia is a corporation organized and existing under the laws of Delaware with its principal place of business at 125 Shoreway Road, Suite B, San Carlos CA 94070.

9. BioCardia is informed and believes and on that basis alleges that(a) Counterdefendant Boston Scientific Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 300 Boston Scientific Way, Marlborough, MA 01752-l 234 and that (b) Boston Scientific Corporation acquired nVision, including all of its intellectual property, through a Merger on April 13, 2018.

10. BioCardia is informed and believes and on that basis alleges that Counterdefendant Boston Scientific Scimed, Inc. is (a) a corporation organized and existing under the law of the state of Minnesota with its principle place of business at One SciMed Place, Maple Grove, Minnesota 55311; (b) a wholly-owned subsidiary of Boston Scientific Corporation; and (c) is the current assignee of record of the '571 Patent

11. BioCardia is informed and believes and on that basis alleges that Counterdefendant Fortis Advisors LLC is a Delaware limited liability company with its principal place of business in San Diego, California, and is sued in its alleged capacity as representative of the Securityholders pursuant to the terms of an alleged Agreement and Plan of Merger, dated April 13 20 18, by and among Boston Scientific Clarity Merger Corp., nVision and Fortis Advisors LLC.

12. BioCardia is informed and believes and on that basis alleges that Counterdefendant Surbhi Sarna is an individual residing at 249 Randall Street, San Francisco, CA 94131, within this District.

## JURISDICTION AND VENUE

13. BioCardia's counterclaims arises under the patent laws of the United States, U.S.C. §§ 101 et seq., and the laws of the State of California.

14. This Court has subject matter jurisdiction over BioCardia's patent law counterclaims under 28 U.S.C. §§ 1331 and I 338(a), and has supplemental jurisdiction over

BioCardia's state law claims under 28 U.S.C. § 1367.

15. This Court has general personal jurisdiction over Counterdefendants other than Ms. Sarna because, among other reasons, they filed this Action in this District, and personal jurisdiction over Ms. Sarna because she is a resident of this District.

16. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

***Ms. Sarna's Employment Agreement with BioCardia***

17. Ms. Sarna started consulting with BioCardia on September 15, 2008 pursuant to a Consulting Agreement executed on August 27, 2008, and started as a full time employee of BioCardia on November 3, 2008 pursuant to the BioCardia standard Employment Agreement which she signed on October 29 (the "Sarna Agreement"). A true and correct copy of the Sarna Agreement with Ms. Sarna's signature is attached hereto as **Exhibit A**.

18. Ms. Sarna agreed in Section 3(b) of the Sarna Agreement to "promptly make full written disclosure to the Company . . . and assign to the Company, or its designee, all my right, title and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets" Ms. Sarna conceived of, developed or reduced to practice during the time period Ms. Sarna was a BioCardia employee. The only exception to Ms. Sarna's contractual duty to assign to BioCardia provided by the Sarna Agreement is an invention which comes entirely within California Labor Code Section 2870 ("Section 2870").

19. In section 3(a) of the Sarna Agreement and in Exhibit A thereto, Ms. Sarna represented that before starting work at BioCardia, she had no "inventions, original works of authorship, developments, improvements, and trade secrets" made prior to her BioCardia employment "which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder." When Ms. Sarna left BioCardia in January 2012, Ms. Sarna expressly represented to BioCardia in writing that Ms. Sarna did not have any invention to disclose to BioCardia and had made no invention which was assigned to BioCardia pursuant to the Sarna Agreement.

20. In or around January 2019, BioCardia learned that on January 25, 2011, while a

BioCardia employee and a year before Ms. Sarna left BioCardia, Ms. Sarna filed U.S. Provisional application No. 61/435,945 (the "'945 Provisional Application"), which issued as U.S. Patent No. 9,173,571 (the "'571 Patent") on November 3, 2015.

21. BioCardia subsequently learned that Ms. Sarna also filed three other published applications claiming priority to the '945 Provisional Application, including US 2014/0323859 published on October 30, 2014, US 2016/151001 published June 2, 2017, and US 2017/0258392 published September 14, 201 (collectively, with the '945 Provisional Application and the '571 Patent, the "'945 Provisional Family"). "

22. BioCardia learned only from the complaint in this Action that while a BioCardia employee, Ms. Sama also filed Provisional Patent Application No. 61/559120 on November 13, 2011 entitled "Device and method to confirm occlusion of the fallopian tube" (the "'120 Provisional Application") , and that Ms. Sarna subsequently filed Application No, 14/357,875, which claimed priority to the '120 Provisional and which published on October 30, 2014 as US2014/0323859 (collectively the "'120 Provisional Family").

23. The '945 Provisional Family and the '120 Provisional Family will be collectively referred to as the "Sarna Patent Family."

24. BioCardia had no reason to discover the Sarna Patent Family since it had no reason to search for patents or patent applications on which Ms. Sarna was a claimed inventor to determine if they claimed priority to a date when Ms. Sarna was employed by BioCardia.

25. The inventions claimed in the Sarna Patent Family (the "Sarna Patent Family Inventions") were conceived of by Ms. Sarna while a BioCardia employee, and Counterdefendants do not and cannot contend otherwise.

26. The Sarna Patent Family Inventions claimed in the Sarna Patent Family are covered by Ms. Sarna's assignment obligation in the Sarna Agreement because as a matter of law they do not come within the Section 2870 exception to Ms. Sarna's obligation to assign them to BioCardia.

27. BioCardia is informed and believes and on that basis alleged that Ms. Sarna apparently was working on the Sarna Patent Family Inventions during BioCardia working hours.

In fact, Ms. Sarna was reprimanded for not showing up during working hours, which reprimands were documented in writing at least three times in writing on February 2011, July 2011, and December 2011 (she was also reprimanded verbally for similar infractions at different times), when BioCardia now is informed and believes and on that basis alleges that, among other times, she was working on the Sarna Parent Family Inventions instead of what she was being paid to do by BioCardia, making them outside of the Section 2870 exemption from Ms. Sarna's assignment obligation as a matter of law.

***Labor Code Section 2870 Does Not Exempt the Sarna Patent Family Inventions from Assignment***

28. Under Section 2870, the Sarna Patent Family Inventions were exempted from assignment by Section 2870 ***only if both*** (1) the Sarna Patent Family Inventions were made wholly on Ms. Sarna's own time and ***in addition*** (2) the Sarna Patent Family Inventions (a) neither related to BioCardia's business or actual or demonstrably anticipated research or development at the time of invention nor (b) resulted from any work Ms. Sarna performed for BioCardia.

29. California Labor Code Section 2872 puts the burden of proof squarely on Ms. Sarna to prove that the Sarna Invention comes within the Section 2870 prohibition against assignment: " In any suit or action arising thereunder [Section 2870], the burden of proof shall be on the employee claiming the benefits of its provisions."

***The Sarna Patent Family Inventions Are Related to BioCardia's*** **"Demonstrably Anticipated Research or Development at the Time of Invention."**

30. What Ms. Sarna claimed to have invented in in the Sarna Patent Family was actually disclosed to Ms. Sarna by Dr. Peter Altman, BioCardia's President and CEO. In particular, Dr. Altman showed to Ms. Sarna at least pages 74-76 of BioCardia Lab Notebook No. 21 signed and dated March 23, 2000 (the "Lab Notebook"). The Lab Notebook demonstrates that the Sarna Patent Family Inventions related to BioCardia's business and even more clearly, to its demonstrably anticipated research or development, at the time of their purported invention. The Lab Notebook also constituted trade secrets of BioCardia (the "BioCardia Trade Secrets").

31. Dr. Altman discussed the potential for early diagnostic and local therapy for ovarian cancer with Ms. Sarna because BioCardia anticipated research regarding the ovarian diagnostic/ therapy approach detailed in the Lab Notebook. Without early diagnosis, local therapy for the treatment of ovarian cancer becomes irrelevant because of metastasis. This concept underlines why BioCardia's core efforts in local biologic therapy require pre metastasis diagnostics to identify the disease state.

32. BioCardia intended that Ms. Sarna herself was going to conduct that research, which is why Dr. Altman disclosed the Lab Notebook to her. That is also why Dr. Altman shared additional laboratory notebook pages with her in the same meeting session relating to the potential ramifications of early diagnosis and the potential for local therapy. The images in the Lab Notebook clearly show BioCardia Morph and Helix products being purposed for fallopian tube based procedures being performed through the uterus. These are two products on which Ms. Sarna worked on a daily basis. Further, at least three other employees of BioCardia were aware that Dr. Altman had spent time with Ms. Sarna proposing that she work on a women's health project.

33. BioCardia has detailed publicly its interest in intrauterine procedures in a number of patents issued for its Morph product offerings. These include U.S. Patent No. 9,078,994 on a method of accessing a contralateral femoral artery of a patient; U.S. Patent No. 9,022,977 on a method of accessing a renal artery of a patient; U.S. Patent No. 9,017,284 on a method of implanting a PFO occluder in a patient; U.S. Patent No. 9,011,373 on a method of accessing a carotid artery of a patient; U.S. Patent No. 8,939,960 on a steerable guide catheters and methods for their use; and U.S. Patent No. 7,402,151 on a Steerable guide catheters and methods for their use. The patent specifications expressly state (emphasis added) that:

> [o]ther applications of this thin walled steerable guide and sheath guide invention include transjugular intrahepatic portosystemic (TIPS) shunt placement, **uterine fibroid biopsy and ablation**, trans atrial septal delivery and manipulation of devices (for pulmonary vein ablation, implantation and or recovery of devices in the left atrial appendage and performing antegrade mitral and aortic valve manipulations and artificial valve implantation), and also for neurological access and delivery of coils and stents.

34. BioCardia also disclosed publicly its interest in local therapy for the treatment of

cancer, which has been noted would require early diagnosis to make sense.

35. On September 10th, 2013, BioCardia's US Patent 8,529,550 (the "'550 patent") issued with claims related to the potential of local catheter based therapy for cancer that include broad claims on the leading blockbuster agents that were approved for cancer at that time, The primary independent issued patent claim awarded was for:

> " A catheter system comprising: a catheter having a proximal end and a distal end; a drug delivery structure disposed on the distal end of the catheter, where the structure is a hollow structure with one or more apertures communicating from the interior to the exterior of said hollow structure, and a reservoir of a therapeutic agent within said drug delivery structure, said therapeutic agent comprising one of antagonists to angiogenic agents, cytotoxic agents, anti-Her-2, and anti CD20, and tumor necrosis factors; said drug delivery structure being disengageable from the distal end of the catheter; a mechanism at the proximal end of the catheter for disengaging said drug delivery structure from the distal end of the catheter; and a fixation means on said drug delivery structure that may be used within a body of a patient to implant the drug delivery structure to a depth within an intended tissue within the body of a patient."

36. BioCardia privately had a number of conversations with senior executives at other institutions regarding its interests in local biotherapeutic delivery for ovarian cancer. At least two of these are documented in emails.

37. On September 11, 2013, the day after the '550 patent issued, BioCardia's CEO reached out via email to a colleague at Genentech involved with the commercial development of Avanstin, possibly the world's most valuable drug for the treatment of cancer by revenue that is described broadly in the '550 patent, alerting him that the '550 patent had issued and that BioCardia "can also enable local delivery of therapeutic agents with ease into the ovary."

38. Separately, BioCardia's CEO reached out to a research scientist at one of the world's leading cancer institutes, MD Anderson in Houston, to the same effect.

***The '571 Patent Itself Discloses That It Is Related to BioCardia's Actual Business***

39. Coronary artery disease was and is a primary focus of BioCardia's business. The '571 Patent's specific reference to the use of the invention for coronary arteries proves that the '571 Invention related not only to BioCardia's reasonably anticipated research but also to its core business. The application states that:

> Although illustrative embodiments of this invention have been shown and described, other modifications, changes, and substitutions are intended. By way of example, the present invention discloses fallopian tubes as an exemplar of a narrow body lumen, which may

> undergo maintenance, and other anatomical structures, such as ***coronary arteries***, may be similarly maintained. Accordingly, it is appropriate that the appended claims be construed broadly and in a manner consistent with the scope of the disclosure as set forth in the following claims.

'571 Patent at 16:30-39 (emphasis supplied).

***Misappropriation of Trade Secrets***

40. The Lab Notebook also contains what are clearly BioCardia trade secrets, making Ms. Sarna's filing U.S. Provisional application No. 61/435,945 and the other members of the Sarna Patent Family also a misappropriation of trade secrets under California law.

41. Moreover, in or about April 2019 BioCardia discovered that Ms. Sarna emailed to her personal email address a large number of BioCardia confidential documents, starting at least as early as April 29, 2009 and continuing at least through December 19, 2011, less than a month before her departure from BioCardia.

42. Although BioCardia does not know at this point why Ms. Sarna emailed the identified documents to her personal email, it does suggest that she may have used BioCardia confidential information for her own purposes. Discovery may result in additional claims relating to these emailed documents.

***The Statute of Limitations***

43. Counterdefendants have asserted in correspondence and (other than Counterdefendant Ms. Sarna) in their complaint that BioCardia's claims are barred by the statute of limitations, estoppel, or on other bases. This is incorrect. Although Ms. Sarna's wrongful acts occurred more than eight years ago, they were only discovered earlier this year. Since an employer is under no duty to search for breaches of assignment agreements by former employees, there is no statute of limitations issue.

***The Statute of Limitations for Breach of Contract Has Not Run***

44. While the statute of limitations for breach of contract is four years from breach, the limitations period for a breach of contract done in secret resulting in harm that is not reasonably discoverable, as was Ms. Sarna's breach of the Agreement, does not begin to run until the breach was or reasonably should have been discovered. *See, e.g., April Enterprises, Inc. v. KTTV*, 147

Cal.App.3d 827, 831 (1983).

***The Statute of Limitations for Breach of the Assignment of Inventions Has Not Run***

45. Ms. Sarna's assignment of inventions she would make during her employment at BioCardia is considered an automatic assignment of a right in a future interest. *DDB Techs v. MLB Advanced Media LP,* 517 F.3d 1284, 1290 (Fed.Cir.2008).

46. The breach occurred only when Ms. Sarna refused to assign the '571 Inventions after BioCardia demanded assignment. *See, e.g., General Elec. Co. v. Wilkins*, 2012 WL 3778865, *16 (E.D. Ca. Aug. 31, 2012*); Imatec, Ltd. v Apple Computer, Inc*., 81 F.Supp.2d 471, 483 n.5 (S.D.N.Y. 2000); *Goldwasser v. Smith Corona Corp*., 817. F.Supp. 263, 271-72 (D. Conn. 1994), aff'd, 26 F.3d 137 (Fed. Cir. 1994). This did not happen until April 9, 2019 at the earliest, when BioCardia sent a letter to Ms. Sarna based on BioCardia's discovery in January 2019 that there was something for which to demand assignment.

47. It is well settled that the four-year California statute of limitations for breach of an automatic assignment does not run begin to run until the former employer learned or should have learned of the breach. In the context of breach of an automatic assignment agreement, the discovery rule "'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'" *Target Technology Co. v. Williams Advanced Materials, Inc.*, 2008 WL 5002935, *12 (C.D. Cal 2008), *quoting Nogart v. The Upjohn Company*, 21 Cal. 4th 383, 397 (1999). Again in the context of breach of an automatic assignment agreement, "[t]he statutory limitations period for a breach of contract commences when the party wronged knows, or reasonably should know of the breach." *Gen Elec. Co.* at *15, *quoting Jaffe v. Carroll*, 35 Cal.App.3d 53, 58059 (1973).

***The Statute of Limitations for Misappropriation of Trade Secrets Has Not Run***

48. The statute of limitations on a trade secret claim runs from the date on which the claim was or reasonably should have been discovered, California Civil Code §3426.6, and BioCardia had no reason to suspect a misappropriation until it found the '571 Patent in January 2019.

***Laches Does Not Apply to BioCardia's Claim for Correction of Inventorship***

49. There is no statute of limitations as such with respect to correction of inventorship; claims for correction of inventorship can only be barred by laches. There is a presumption against laches if the claim is brought within six years of the ***later*** of discovery of the claim or issuance of the patent to be corrected. *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012). Here the correction of inventorship claim did not accrue until earlier this year, so there is no laches issue.

***Fraudulent Concealment Tolled the Statute of Limitations***

50. Ms. Sarna agreed in Section 3(f) of that "I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A." The Termination Certificate Ms. Sarna was contractually obligated to sign and did sign on her January 4, 2012 departure from BioCardia did not disclose the inventions claimed in the '945 Provisional Application and the '120 Provisional Application, which she was obligated to do even if she believed them outside her automatic assignment obligation because of Section 2870. Ms. Sarna thus fraudulently concealed U.S. Provisional application No. 61/435,945 from BioCardia.

51. Thus, even if there were otherwise some duty by BioCardia to have investigated Ms. Sarna's breach of her automatic assignment obligation, which there was not, her fraudulent concealment of the Sarna Patent Family Inventions excused any failure to discover her breach. *Target Technology, Inc.*, 2008 WL 5002935 at * 13, *citing USA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475 (9th Cir. 1994).

***nVision Was Chargeable with Sarna's Wrongful Acts***

52. nVision was directly and primarily liable for its own misappropriations of BioCardia's trade secrets and secondarily liable for Ms. Sarna's misappropriation of BioCardia's trade secrets under the doctrine of respondeat superior because Ms. Sarna, as the president and founder of nVision, was acting within the course and scope of her employment in committing the acts of misappropriation as herein alleged. *See, e.g., In re Energy Securities Litigation*, No. 15-cv-00265-EMC, 2016 WL 324150, *25 (N.D. Cal. Jan 27, 2016).

***Boston Has Successor, Not Direct, Liability for the Acts of nVision and the Acts of Sarna Attributable to nVision***

53. Because Boston Scientific merged nVision into itself, Boston is liable for all of the liability of nVision, including that alleged herein, under California Corporations Code § 6020. To the extent that California law is not applicable to Boston Scientific's liability as a result of the merger, BioCardia is informed and believes and on that basis alleges that the law of every other potentially applicable state law is the same as California Corporations Code § 6020.

***Imposition of a Constructive Trust Against the Shareholders and Boston Is Proper Even if They Engaged in no Wrongdoing***

54. Imposition of a constructive trust against Boston Scientific and the Security Holders is appropriate even if neither committed a wrongful act because under California law "the remedy of a constructive trust does not require that the person currently holding the property committed any wrongful act in obtaining the property, only that the property at issue was wrongfully gained, even if by accident or mistake." *Carpenters Local Union 271 v. Griggs*, CV-17-4460 DSF (MRWx), 2018 WL. 6003577, *3 (C.D. Cal. Nov. 5, 2018), *citing In re Advent Management Corp*., 104 F.3d 293, 295 (1997).

**COUNT I**
**Correction of Inventorship under 35 U.S.C. § 256**
(Against Counterdefendants Boston Scientific and Ms. Sarna)

55. BioCardia realleges paragraphs 1-54, inclusive.

56. BioCardia is informed and believes and on that basis alleges that Dr. Altman and Dr. Stertzer are at least co-inventors of at least of at least claim 1 of the '571 Patent because they conceived or at least contributed to the conception of the highlighted portions of claim 1:

> A device for maintaining a narrow body lumen, comprising: a hydraulic propulsion mechanism and at least one of an imaging portion or a therapeutic portion, said hydraulic propulsion mechanism configured for propelling said imaging portion or said therapeutic portion relative to said hydraulic propulsion mechanism and through the narrow body lumen, said hydraulic propulsion mechanism including an elongate shaft, wherein the narrow body lumen is distal of a distal end of said elongated shaft; wherein said imaging portion or said therapeutic portion, when propelled by said hydraulic propulsion mechanism, is driven distally from said distal end of said elongated shaft and is distally spaced therefrom; and a retrieval mechanism for retrieving said imaging portion or said therapeutic portion from the narrow body lumen.

57. BioCardia is informed and believes and on that basis alleges that Dr. Altman and Dr. Stertzer may be at least co-inventors of at least one claim in other patent applications in the Sarna Patent Family, depending on which claims issue on each application, and may seek leave to amend to seek correction of inventorship of any patent issuing with claims on which Dr. Altman and Dr. Stertzer are omitted inventors.

58. BioCardia is informed and believes and on that basis alleges that Dr. Altman and Dr. Stertzer are omitted inventors on the ’571 Patent and may be omitted inventors on patent applications in the Sarna Patent Family.

59. BioCardia is informed and believes and on that basis alleges that the omission of Dr. Altman and Dr. Stertzer as inventors was the result of error.

60. BioCardia is informed and believes and on that basis alleges that the omission of Dr. Altman and Dr. Stertzer as inventors was made without deceptive intent.

61. BioCardia has standing to seek correction of inventorship because Dr. Altman and Dr. Stertzer each assigned to BioCardia all of their right, title and interest in and to all inventions they made at BioCardia, and all resulting patents.

62. BioCardia requests correction of inventorship of the ’571 Patent to name Dr. Peter Altman and Dr. Simon Stertzer as co-inventors.

WHEREFORE, BioCardia prays for judgment as more fully set forth below.

**COUNT II**
**Breach of Written Contract**
(Against Counterdefendants)

63. BioCardia realleges paragraphs 1-54, inclusive.

64. The Sarna Agreement is a valid and enforceable contract with BioCardia.

65. BioCardia has duly performed all conditions, covenants, and promises required on its part to be performed pursuant to the Sarna Agreement.

66. Ms. Sarna breached her contractual obligations to BioCardia under the Sarna Agreement by, *inter alia*, failing to disclose to and assign to BioCardia each of the patents and patent applications in the Sarna Patent Family.

67. As a direct and proximate result of Ms. Sarna's breaches of the Sarna Agreement, BioCardia has incurred and continues to incur damages in an amount according to proof.

68. As a further direct and proximate result of Ms. Sarna's breaches of the Sarna Agreement, Ms. Sarna has been unjustly enriched in an amount equal to at least what Boston Scientific paid for nVision Medical.

69. BioCardia also seeks specific performance of Ms. Sarna's obligation to assign to BioCardia each of the patents and patent applications in the Sarna Patent Family, including against Plaintiffs to the extent any of them is presently the owner of any of the patents and patent applications in the Sarna Patent Family.

70. BioCardia is informed and believes and on that basis alleges that Counterdefendants Ms. Sarna and the Security Holders wrongfully detained and/or gained the consideration Boston Scientific paid for nVision in violation of California Civil Code §§2223 and/or 2224 as a proximate result of the breach of contract as herein alleged.

71. Accordingly, BioCardia seeks Imposition of a constructive trust against Ms. Sarna and the Security Holders for the benefit of BioCardia on the consideration Boston Scientific paid for nVision.

72. BioCardia is informed and believes and on that basis alleges that Counterdefendants Ms. Sarna and Boston Scientific wrongfully detained and/or gained legal title to each of the patents and patent applications in the Sarna Patent Family within the meaning of California Civil Code §§2223 and/or 2224 as a proximate result of the breach of contract as herein alleged.

73. Accordingly, BioCardia seeks imposition of a constructive trust against Ms. Sarna and Boston Scientific for the benefit of BioCardia on each of the patents and patent applications in the Sarna Patent Family.

WHEREFORE, BioCardia prays for judgment as more fully set forth below.

**COUNT III**

**Misappropriation of Trade Secrets under California Uniform Trade Secrets Act, California Civil Code Sections 3426 et seq.**

(Against Counterdefendants)

74. BioCardia realleges paragraphs 1-54, inclusive.

75. BioCardia derived independent economic value from the BioCardia Trade Secrets not being known to the public or other persons who could obtain economic value from their disclosure or use.

76. The BioCardia Trade Secrets were subject to efforts that are reasonable under the circumstances to maintain their secrecy.

77. Counterdefendants Ms. Sarna and nVision misappropriated the BioCardia's Trade Secrets by disclosing and/or using such information to make the purported Sarna Patent Family Inventions without BioCardia's consent, despite having a duty to limit the use of the BioCardia Trade Secrets only for BioCardia's benefit.

78. Counterdefendant nVision took advantage of the misappropriated BioCardia Trade Secrets by having Ms. Sarna disclose and/or use such information for the advancement and benefit of nVision despite being aware of Ms. Sarna's duties and obligations to BioCardia to limit the disclosure and use of such information only for the benefit of BioCardia and that such disclosure was in violation of the Sarna Agreement.

79. As a direct and proximate result of Counterdefendants Ms. Sarna's and nVision's misappropriation of the BioCardia Trade Secrets, BioCardia has incurred and continues to incur damages in an amount according to proof.

80. As a further direct and proximate result of Counterdefendants' misappropriation of the BioCardia Trade Secrets, Counterdefendants Ms. Sarna and the Security Holders have been unjustly enriched in an amount equal to at least what Boston Scientific paid for nVision Medical.

81. Counterdefendants misappropriation of the BioCardia Trade Secrets was willful and malicious and thereby entitles BioCardia to an award of exemplary damages.

82. BioCardia is informed and believes and on that basis alleges that Counterdefendants Ms. Sarna and the Security Holders wrongfully detained and/or gained the consideration Boston Scientific paid for nVision in violation of California Civil Code §§2223 and/or 2224 as a proximate result of the misappropriation of trade secrets as herein alleged.

83. Accordingly, BioCardia seeks Imposition of a constructive trust against Ms. Sarna and the Security Holders for the benefit of BioCardia on the consideration Boston Scientific paid

for nVision.

84. BioCardia is informed and believes and on that basis alleges that Counterdefendants Ms. Sarna and Boston Scientific wrongfully detained and/or gained legal title to each of the patents and patent applications in the Sarna Patent Family within the meaning of California Civil Code §§2223 and/or 2224 as a proximate result of the misappropriation of trade secrets as herein alleged.

85. Accordingly, BioCardia seeks imposition of a constructive trust against Ms. Sarna and Boston Scientific for the benefit of BioCardia on each of the patents and patent applications in the Sarna Patent Family.

WHEREFORE, BioCardia prays for judgment as more fully set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, BioCardia prays for judgment and relief follows:

1. That Plaintiffs take nothing by reason of their complaint;

2. An order correcting of inventorship of the ’571 Patent to name Dr. Peter Altman and Dr. Simon Stertzer as co-inventors.

3. An order compelling Counterdefendants Ms. Sarna and Boston Scientific to assign to BioCardia each of the patents and patent applications in the Sarna Patent Family;

4. Damages according to proof, including Counterdefendants Ms. Sarna’s and the Security Holder’s unjust enrichment in an amount equal to what Boston Scientific paid for nVision Medical;

5. Exemplary damages in an amount twice BioCardia’s actual damages for Counterdefendants’ willful and malicious misappropriation of the BioCardia Trade Secrets;

6. Imposition of a constructive trust against Counterdefendants Ms. Sarna and the Security Holders for the benefit of BioCardia on the consideration Boston Scientific paid for nVision;

7. Imposition of a constructive trust against Ms. Sarna and Boston Scientific for the benefit of BioCardia on each of the patents and patent applications in the Sarna Patent Family;

8. Pre-judgment and post-judgment interest; and

9. Such further and other relief as the Court may deem proper and just.

Dated: December 11, 2019

By */s/ Ian N. Feinberg*
Ian N. Feinberg

FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP
Ian N. Feinberg
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Telephone: 650.825.4300
Ifeinberg@feinday.com

Attorneys for Defendant and Counterclaimant BioCardia, Inc.

**DEMAND FOR JURY TRIAL**

BioCardia demands trial by jury on all claims and issues so triable.

Dated: December 11, 2019

By */s/ Ian N. Feinberg*
Ian N. Feinberg

FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP
Ian N. Feinberg
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Telephone: 650.825.4300
Ifeinberg@feinday.com

Attorneys for Defendant and Counterclaimant BioCardia, Inc.