ROBERT E. FREITAS (SBN 80948)
rfreitas@fawlaw.com
JESSICA N. LEAL (SBN 267232)
jleal@fawlaw.com
FREITAS & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301

Attorneys for Counter-Defendant
Surbhi Sarna

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BIOCARDIA, INC.,<br><br>Defendant. | No.  3:19-cv-05645-VC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS BIOCARDIA, INC.'S AMENDED COUNTERCLAIM** |
| BIOCARDIA, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC, BIOCARDIA, INC., AND SURBHI SARNA,<br><br>Counterdefendants. | Date: March 19, 2020<br>Time: 10:00 a.m.<br>Ctrm.: 4, 17th Floor<br>Judge: Hon. Vince Chhabria |

# TABLE OF CONTENTS

Page

I.    STATEMENT OF RELEVANT FACTS ............................................................................ 2

II.   COUNT I DOES NOT STATE A CLAIM FOR CORRECTION OF
      INVENTORSHIP............................................................................................................... 2

      A.   BioCardia Does Not Sufficiently Allege The "Assignment" Of A Relevant
           Invention ................................................................................................................. 3

      B.   The Counterclaim Does Not Allege That Dr. Altman Or Dr. Stetzer Is An
           Inventor Of The '571 Patent .................................................................................. 5

III.  COUNT II (BREACH OF WRITTEN CONTRACT) IS BARRED BY THE
      STATUTE OF LIMITATIONS ......................................................................................... 9

      A.   The Discovery Rule Does Not Apply To The Breach of Contract Claim
           Alleged By BioCardia ........................................................................................... 11

      B.   BioCardia Does Not Allege Facts Sufficient to Postpone the Accrual of Its
           Claim For Breach of Contract ............................................................................... 12

      C.   BioCardia's Fraudulent Concealment Allegations Lack Particularity ................. 13

IV.   COUNT III (MISAPPROPRIATION OF TRADE SECRETS) IS SIMILARLY
      TIME BARRED ................................................................................................................. 15

V.    CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Asghari v. Volkswagen Grp. of Am., Inc.,*
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..................................................................................12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................................3

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................................4

*In re Brooms,*
  447 B.R. 258 (9th Cir. 2011) ..................................................................................................3

*Clegg v. Cult Awareness Network,*
  18 F.3d 752 (9th Cir. 1994) .....................................................................................................3

*CODA Dev. s.r.o v. Goodyear Tire & Rubber Co.,*
  916 F.3d 1350 (Fed. Cir. 2019) ..............................................................................................6

*Collins v. Nationalpoint Loan Services,*
  No. 09-cv-1314 JM, 2009 U.S. Dist. LEXIS 91135 (S.D. Cal. Sept. 29, 2009)......................14

*In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation,*
  No. C-05-04726 RMW, 2008 U.S. Dist. LEXIS 111497 (N.D. Cal. Sept. 30,
  2008) ...............................................................................................................................12, 16

*Deirmenjian v. Deutsche Bank, A.G.,*
  No. CV 06-00774 MMM, 2006 U.S. Dist. LEXIS 96772 (C.D. Cal. Sept. 25,
  2006) ......................................................................................................................................14

*Eastman v. Apple Inc.,*
  No. 18-cv-05929-JST, 2018 U.S. Dist. LEXIS 194487 (N.D. Cal. November
  14, 2018) ..............................................................................................................................7, 8

*Eli Lilly & Co. v. Aradigm Corp.,*
  376 F.3d 1352 (Fed. Cir. 2004) ..............................................................................................6

*Ethicon, Inc. v. U.S. Surgical Corp.,*
  135 F.3d 1456 (Fed. Cir. 1998) ..............................................................................................6

*Fina Oil & Chem. Co. v. Ewen,*
  123 F.3d 1466 (Fed. Cir. 1997) ........................................................................................6, 7, 8

*Hess v. Advanced Cardiovascular Sys., Inc.,*
  106 F.3d 976 (Fed. Cir. 1997) .................................................................................................6

*Juniper Networks v. Shipley,*
  No. C 09-0696 SB, 2009 U.S. Dist. LEXIS 40978 (N.D. Cal. May 14, 2009) ........................14

*Keilholtz v. Lennox Hearth Products Inc.,*
  No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009) .....................13

*MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.,*
  No. 17-cv-02522-CAS, 2017 U.S. Dist. LEXIS 192880 (C.D. Cal. Nov. 20,
  2017) ...........................................................................................................................................4

*MAO-MSO Recovery II, LLC v. MSP Recovery, LLC,*
  No. 17-cv-02525-AB, 2017 U.S. Dist. LEXIS 193874 (C.D. Cal. Nov. 2, 2017).....................3

*MVP Asset Mgmt. (USA) LLC v. Vestbirk,*
  No. 2:10-CV-02483-GEB, 2012 U.S. Dist. LEXIS 1889 (E.D. Cal. Jan. 6,
  2012) ..........................................................................................................................................3

*Orange Street Partners v. Arnold,*
  179 F.3d 656 (9th Cir. 1999)....................................................................................................14

*Perez-Encinas v. AmerUs Life Ins. Co.,*
  468 F. Supp. 2d 1127 (N.D. Cal. July 26, 2006).......................................................................11

*Philips v. Ford Motor Co.,*
  No. 14-CV-02989-LHK, 2015 U.S. Dist. LEXIS 88937 (N.D. Cal. July 7,
  2015) ........................................................................................................................................16

*Plumlee v. Pfizer, Inc.,*
  No. 13-CV-00414-LHK, 2014 U.S. Dist. LEXIS 121634 (N.D. Cal. Aug. 29,
  2014) ........................................................................................................................................16

*Rambus Inc. v. Samsung Electronics Co., Ltd.,*
  No. C-05-02298 RMW, 2007 U.S. Dist. LEXIS 3088 (N.D. Cal. Jan. 4, 2007) .....................14

*Suckow Borax Mines Consolidated v. Borax Consolidated,*
  185 F.2d 196 (9th Cir. 1951)....................................................................................................14

*Vaughan v. Grijalva,*
  927 F.2d 476 (9th Cir. 1991)....................................................................................................10

*In re VerHoef,*
  888 F.3d 1362 (Fed. Cir. 2018)...........................................................................................6, 8, 9

**State Cases**

*April Enterprises, Inc. v. KTTV,*
  147 Cal. App. 3d 805 (1983).................................................................................................11, 12

*EFab, Inc. v. Accountants, Inc. Services*,
    153 Cal. App. 4th 1308 (2007) ............................................................................13

*Evans v. Eckelman*,
    216 Cal. App. 3d 1609 (1990)..............................................................................11

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 ..............................................................................................11, 13

*Inv'rs Equity Life Holding Co. v. Schmidt*,
    195 Cal. App. 4th 1519 (2011) ............................................................................15

*Mills v. Forestex Co.*,
    108 Cal. App. 4th 625 (2003) ..............................................................................14

*Norgart v. The Upjohn Co.*,
    21 Cal. 4th 383 (1999) ........................................................................................11

**Federal Statutes**

35 U.S.C. § 12 ...........................................................................................................12

35 U.S.C. § 256 ...................................................................................................2, 5, 6

**State Statutes**

Cal. Civ. Code § 3426 *et seq* .....................................................................................2

Cal. Civ. Code § 3426.6 ............................................................................................15

Cal. Code Civ. Proc. § 337 ........................................................................................10

Cal. Code Civ. Proc. § 337(a) ...................................................................................11

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, March 19, 2020 at 10:00 a.m., or at such other date as may be agreed upon, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, counterdefendant Surbhi Sarna will, and hereby does, move the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing in its entirety the Amended Counterclaim of defendant and counterclaimant BioCardia, Inc. ("BioCardia"). The motion to dismiss is made on the following grounds:

(1)     BioCardia fails to state a claim for correction of inventorship under Count I;

(2)     BioCardia fails to allege facts that establish an assignment by Peter Altman and Simon Stertzer to BioCardia under Count I;

(3)     BioCardia fails to allege that Dr. Altman and Dr. Stertzer are inventors of or contributed to the invention of U.S. Patent No. 9,173,571 under Count I;

(4)     BioCardia's claims for breach of contract under Count II are barred by the statute of limitations; and

(5)     BioCardia's claim for trade secret misappropriation under Count III is barred by the statute of limitations.

This motion shall be based on this notice of motion and motion, the supporting memorandum of points and authorities herein, the pleadings and papers on file, and upon such further matters the Court deems appropriate.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### I.     STATEMENT OF RELEVANT FACTS.

On September 6, 2019, the plaintiffs Boston Scientific Corporation, Boston Scientific

Scimed, Inc., and Fortis Advisors LLC filed a complaint against BioCardia seeking various

declaratory judgments and other relief in response to demand letters received from BioCardia in

2019. In response, on October 31, 2019, BioCardia answered and filed its counterclaim against

the plaintiffs and counterdefendant Surbhi Sarna. BioCardia's initial counterclaim contained five

"counts," entitled: Count I for correction of inventorship under 35 U.S.C. § 256; Count II for

breach of written contract; Count III for misappropriation of trade secrets under California Civil

Code Sections 3426 *et seq*.; and Counts IV and V for imposition of constructive trusts. On

December 11, 2019, BioCardia filed an amended counterclaim, maintaining only Counts I, II and

III. By agreement of the parties, and adopted under order of the Court, the date for Ms. Sarna to

move to dismiss BioCardia's Amended Counterclaim was set for January 8, 2020. ECF No. 45.

BioCardia asserts each of its three counts against Ms. Sarna. For the reasons explained in

detail below, each count fails to state a claim upon which relief can be granted. BioCardia's first

count fails to allege the "assignment" of a relevant invention, and also fails to allege how two

individuals are co-inventors of a patent. The claims underlying BioCardia's second and third

counts are time barred. BioCardia was required to plead facts that could overcome the overt facial

statute of limitations problem, but failed to do so. BioCardia's attempt to argue that its claims

were tolled under the doctrine of fraudulent concealment and/or had not accrued under the

delayed discovery rule falls short. The numerous deficiencies discussed below compel dismissal

of BioCardia's claims.

### II.     COUNT I DOES NOT STATE A CLAIM FOR CORRECTION OF INVENTORSHIP.

Count I in BioCardia's counterclaim is based on the idea that Peter Altman and Simon

Stertzer are co-inventors of U.S. Patent No. 9,173,571 (the "'571 Patent"), for which Ms. Sarna is

the sole listed inventor. The counterclaim does not, however, allege a collaboration between Ms.

Sarna or allege any other facts demonstrating an actual joint invention effort. The theory behind

Count I is apparently that Dr. Altman once showed Ms. Sarna a lab notebook containing illustrations or text that include prior art features that also appear in claim 1 of the '571 Patent. There are no allegations in the counterclaim that explain Dr. Stertzer's or Dr. Altman's alleged role in anything that appears in the lab notebook, and there is no allegation that explains whether Dr. Altman or Dr. Stertzer conceived of any of the prior art features depicted in the lab notebook. BioCardia's conclusory allegation that Dr. Altman and Dr. Stertzer assigned their rights is not sufficient to confer standing on BioCardia because there are no allegations that either gentleman conceived any of the information "highlighted" in the counterclaim, and nothing beyond the conclusion that an "assignment" was made to support a claim that BioCardia is the owner of anything that is relevant to the activities of Dr. Altman or Dr. Stertzer.

### A.   BioCardia Does Not Sufficiently Allege The "Assignment" Of A Relevant Invention.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). This applies to a plaintiff's claim of standing because of an "assignment." *See, e.g.*, *MAO-MSO Recovery II, LLC v. MSP Recovery, LLC*, No. 17-cv-02525-AB, 2017 U.S. Dist. LEXIS 193874, *12 (C.D. Cal. Nov. 2, 2017) ("The Court is not obliged to accept as true Plaintiffs' legal conclusions that the assignments exist and are valid; Plaintiffs must allege facts sufficient to support these contentions[.]");*In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011) ("In an action involving an assignment, a court must ensure that the plaintiff-assignee is the real party in interest with regard to the particular claim involved by determining: (1) what has been assigned; and (2) whether a valid assignment has been made."); *MVP Asset Mgmt. (USA) LLC v. Vestbirk*, No. 2:10-CV-02483-GEB, 2012 U.S. Dist. LEXIS 1889 (E.D. Cal. Jan. 6, 2012) (finding plaintiff's allegations insufficient to confer standing even where the date and parties to the assignment were alleged in the complaint).

In order to justify its standing in place of the two individuals who are alleged to be co-inventors of the '571 Patent, BioCardia alleges: "BioCardia has standing to seek correction of inventorship because Dr. Altman and Dr. Stertzer each assigned "all of their right, title and interest in and to all inventions they made at BioCardia, and all resulting patents." ECF No. 43 at 24, ¶ 61.

BioCardia did not allege any facts explaining how or when Dr. Altman or Dr. Stertzer assigned his rights in anything relevant to the '571 Patent to BioCardia. ECF No. 43 at 24, ¶¶ 55-62; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 17-cv-02522-CAS, 2017 U.S. Dist. LEXIS 192880, *15-16 (C.D. Cal. Nov. 20, 2017) (citing cases). There are no allegations sufficient to determine whether any assignment was in writing, or whether multiple writings or acts are alleged to comprise the "assignment." Several exhibits are attached to the counterclaim, but no instrument by which either Dr. Altman or Dr. Stertzer assigned any rights of any kind to BioCardia is attached, and no specific written or oral language of assignment is quoted anywhere in the counterclaim.

Coupled with this is BioCardia's failure to provide sufficient factual allegations supporting a conclusion that either Dr. Altman or Dr. Stertzer is an inventor of anything that would confer ownership of the '571 Patent on BioCardia if assigned by Dr. Altman or Dr. Stertzer. The counterclaim contains no factual allegations making it plausible that either of them invented anything, or that they did so "at BioCardia." There is nothing that would allow a conclusion that Dr. Altman or Dr. Stertzer invented the features described in the information highlighted in the counterclaim, and it is entirely implausible that either could claim to be the inventor of most of them. Surely, the claim is not that either Dr. Altman or Dr. Stertzer conceived the original idea of an "elongate shaft" or "a device for maintaining a narrow body lumen," (*see* ECF No. 43 at 23, ¶ 56) for example, because such devices have existed since as early as the eighteenth century. It is not enough simply to assert that Dr. Altman and Dr. Stertzer assigned "all of their right, title and interest in and to all inventions they made at BioCardia" without making

proper factual allegations of relevant inventions, and without sufficiently alleging that the relevant inventions were made "at BioCardia."

The counterclaim does not allege that Dr. Altman or Dr. Stertzer invented any of the features described by the language highlighted in the counterclaim, or that either conceived the idea of combining any of those features in any way, much less as a part of claim 1 as it was ultimately written. An allegation that a feature was recorded in a lab notebook is not sufficient to establish that anyone is the inventor of the feature.

## B.   The Counterclaim Does Not Allege That Dr. Altman Or Dr. Stetzer Is An Inventor Of The '571 Patent.

BioCardia contends in Count I of the counterclaim that "Dr. Altman and Dr. Stertzer are at least co-inventors of at least of [*sic*] at least claim 1 of the '571 Patent because they conceived or at least contributed to the conception of the highlighted portions" of claim 1:

> A device for maintaining a narrow body lumen, comprising: a hydraulic propulsion mechanism and at least one of an imaging portion or a therapeutic portion, said hydraulic propulsion mechanism configured for propelling said imaging portion or said therapeutic portion relative to said hydraulic propulsion mechanism and through the narrow body lumen, said hydraulic propulsion mechanism including an elongate shaft, wherein the narrow body lumen is distal of a distal end of said elongated shaft; wherein said imaging portion or said therapeutic portion, when propelled by said hydraulic propulsion mechanism, is driven distally from said distal end of said elongated shaft and is distally spaced therefrom; and a retrieval mechanism for retrieving said imaging portion or said therapeutic portion from the narrow body lumen.

ECF No. 43 at 23, ¶ 56. This conclusory statement that the two individuals "conceived or at least contributed to the conception" of select words found in claim 1 is the only allegation made by BioCardia to suggest the basis for its claim that a significant contribution to the '571 Patent was made by someone other than Ms. Sarna. BioCardia does not allege an actual collaboration between Ms. Sarna and either Dr. Altman or Dr. Stertzer. The counterclaim asserts that BioCardia was not even aware that Ms. Sarna was engaged in the preparation of the application that led to the '571 patent, and there is no allegation that Dr. Altman or Dr. Stertzer believed at any time that he was participating in an invention process with the other, or with Ms. Sarna. BioCardia's allegations are not sufficient to establish either Dr. Altman or Dr. Stertzer as an inventor for purposes of 35 U.S.C. § 256. Indeed, there is nothing in the counterclaim that would support a

conclusion that Dr. Altman or Dr. Stertzer was aware of progress toward, or the completion of, an invention with the metes and bounds of claim 1.

As a general matter, patents must list all of the true inventors. "Conception is the touchstone of invention, and it requires a definite and permanent idea of an operative invention." *In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018). A definite and permanent idea, in turn, exists "when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan." *Id*. The counterclaim does not allege a common "specific, settled idea," "a particular solution" to any problem perceived by Ms. Sarna.

Section 256 "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." *CODA Dev. s.r.o v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). When assessing a Section 256 claim, "[t]he inventors as named in an issued patent are presumed to be correct." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). Thus, a plaintiff alleging non-joinder "must meet the heavy burden of proving its case by clear and convincing evidence and must provide evidence to corroborate the alleged joint inventor's conception." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). *See also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) ("the alleged co-inventor or co-inventors must prove their contribution to the conception of the claims by clear and convincing evidence"). As mentioned above, the counterclaim contains no allegations corroborating the idea that Dr. Altman or Dr. Stertzer conceived anything.

A joint inventor must: "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *In re VerHoef*, 888 F.3d at 1366 (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed Cir. 1998)). *See also Eli Lilly & Co.*, 376 F.3d at 1359; *CODA*, 916 F.3d at 1358; *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). Further, an alleged joint inventor "must demonstrate that his labors were conjoined with the efforts of the named

inventors." *Id.* (noting that joint inventorship "can only arise when collaboration or concerted effort occurs – that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts"). To survive dismissal, Count I must allege facts giving rise to a reasonable inference that Dr. Altman and Dr. Stertzer contributed to the conception of an invention claimed in the '571 Patent applying these standards. *See*, *e.g.*, *Eastman v. Apple Inc.*, No. 18-cv-05929-JST, 2018 U.S. Dist. LEXIS 194487, *11 (N.D. Cal. November 14, 2018).

BioCardia contends that Dr. Altman and Dr. Stertzer "conceived or at least contributed to the conception of the highlighted portions" – *i.e.*, "a device for maintaining a narrow body lumen"; "at least one of an imaging portion or a therapeutic portion"; "elongate shaft"; "wherein said imaging portion or said therapeutic portion"; "is driven distally from said distal end of said elongated shaft and is distally spaced therefrom," ECF No. 43 at 23, ¶ 56, but that is not a sufficient allegation that they actually contributed to the invention of the '571 Patent.

BioCardia does not allege that Dr. Altman or Dr. Stertzer contributed to the reduction to practice of claim 1. There are no facts mentioning actual reduction to practice, and the allegation that BioCardia was not aware that Ms. Sarna was working on the application that led to the '571 Patent precludes a claim that either Dr. Altman or Dr. Stertzer contributed to the constructive reduction to practice accomplished through the filing of the application.

Nor does BioCardia allege facts sufficient to support a conclusion that Dr. Altman or Dr. Stertzer contributed to the conception of the invention of claim 1. No facts are provided to establish that either conceived of the features described in the information highlighted in claim 1, and there is no hint as to how either might have contributed to the inclusion of any such feature in claim 1. If the idea is that Dr. Altman contributed to the conception of claim 1 by allegedly showing Ms. Sarna the lab notebook, that is not sufficient to establish that the alleged disclosure was the reason for the inclusion of a feature as a part of claim 1. The counterclaim does not allege that there was no other way Ms. Sarna would have been aware, or become aware, of, for example, "an elongate shaft," and no basis for assuming that to be true. Moreover, there is nothing in the counterclaim that would require or allow acceptance of the hypothesis that knowledge obtained as

a result of the alleged exposure to the lab notebook led to the inclusion of any of the features in claim 1.

The counterclaim does not attempt to satisfy the second of the inventorship factors. There are no facts establishing the "quality" of the highlighted information. There is nothing from which the Court could plausibly infer that Dr. Altman's or Dr. Stertzer's contribution was "significant," measure any contribution "against the dimension of the full invention," or discern that Dr. Altman or Dr. Stertzer did "more than merely explain to the real inventors well-known concepts and/or the current state of the art." *In re VerHoef*, 888 F.3d at 1366.[1] BioCardia does no more than assert that features described in the highlighted information are attributable to Dr. Altman or Dr. Stertzer in an unexplained way, and allege that they "contributed" without more. That is not enough.

The counterclaim also does not allege a "conjoined effort" between Ms. Sarna and either Dr. Altman or Dr. Stertzer. *Fina Oil & Chem. Co.*, 123 F.3d at 1473. There is no claim that either of them ever discussed the actual invention of the '571 Patent with Ms. Sarna, or any problem for which it was a solution, or even that either ever formed a thought that included the invention as a whole, or the inclusion of any feature described in the highlighted information as a part of a solution for a problem addressed by the patent. There is simply a conclusory assertion of "contribution," devoid of any facts as to what either Dr. Altman or Dr. Stertzer invented or contributed. There is no allegation of "collaboration or concerted effort," an actual effort to solve

---

[1] The '571 Patent, which discloses "Systems and Methods for Maintaining a Narrow Body Lumen," describes conventional techniques, including those using catheter shafts, employed to maintain the health of body lumens (*i.e.*, the channel of a tubular anatomical structure). The conventional techniques, the patent explains, have drawbacks. The invention described in the '571 Patent provides a novel technique that allows for the effective maintenance of a narrow body lumen without the drawbacks encountered by the prior art. Part of the solution is a device that includes a hydraulic propulsion mechanism. The limited information BioCardia has provided indicates that the alleged contributions (an elongated shaft device with an imaging or therapeutic portion for maintaining a body lumen) refers simply to prior art catheters. Mere reference to the prior art is not sufficient. *See In re VerHoef*, 888 F.3d at 1366 (explaining that the putative co-inventor's contribution must do "more than merely explain to the real inventors well-known concepts and/or the current state of the art"); *Eastman*, 2018 U.S. Dist. LEXIS 194487 at *15-*18.

a problem or devise an invention. No "open line of communication" is alleged.

If BioCardia is attempting to establish that the lab notebook Dr. Altman allegedly showed Ms. Sarna relates to the "highlighted portions" of the claim, no sufficient connection between the two is alleged. There is no allegation that the pages Dr. Altman allegedly showed Ms. Sarna contain inventions conceived by him and included a material part of claim 1. With reference to either the "highlighted portions" of claim 1, or the invention as a whole, there is no allegation that anything in the lab notebook described a definite and permanent idea of an operative invention (*i.e.*, "a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan"). *See In re VerHoef*, 888 F.3d at 1366. That "a device for maintaining a narrow body lumen" might be described in a lab notebook is not sufficient to demonstrate "a specific, settled idea" or "a particular solution to [any] problem at hand." Broad, general descriptions of this nature do not rise beyond "a general goal or research plan."

A further problem is present because BioCardia's allegations never mention Dr. Stertzer in relationship to the lab notebook. Dr. Stertzer is first mentioned, and only mentioned, in the Amended Counterclaim under Count I (ECF No. 43 at 23, ¶¶ 56-62). If something in the lab notebook is behind the allegation of inventorship, there is no allegation in the Amended Counterclaim on which the Court could conclude that Dr. Stertzer had a role, let alone what that role was.

BioCardia's conclusory allegation that high level, prior art ideas can be attributed in some manner to Dr. Altman and Dr. Stertzer does not provide sufficient detail to support a claim of inventorship.  Count I should be dismissed.

## III.   COUNT II (BREACH OF WRITTEN CONTRACT) IS BARRED BY THE STATUTE OF LIMITATIONS.

Count II alleges that Ms. Sarna breached her employment agreement with BioCardia by failing to disclose and to assign provisional patent applications filed in 2011 and a patent resulting from one of the applications. ECF No. 43 at 22, ¶¶ 50-51; *id*. at 24, ¶¶ 64-66. BioCardia's allegations include, in breach of the written employment agreement attached to the counterclaim as Exhibit A, ECF No. 43-1, Ms. Sarna (a) "failing to disclose" her 2011 provisional patent

applications to BioCardia, and Ms. Sarna (b) "failing to assign" her 2011 provisional patent applications (or any subsequent applications claiming priority to the 2011 provisional applications) to BioCardia. *Id.*; *see* ECF No. 43 at 24, ¶ 66 ("Ms. Sarna breached her contractual obligations to BioCardia under the Sarna Agreement by, *inter alia*, failing to disclose to and assign to BioCardia each of the patents and patent applications in the Sarna Patent Family."). BioCardia explicitly acknowledges that Ms. Sarna's alleged "wrongful acts occurred more than eight years ago." ECF No. 43 at 20, ¶ 43. BioCardia filed its initial counterclaim in this action on October 31, 2019, following the filing of the complaint on September 6, 2019. *See* ECF Nos. 1, 22.

Taking BioCardia's allegations as true for purposes of this motion, when Ms. Sarna did not disclose or assign her provisional patent applications to BioCardia in 2011, she was in breach of the employment agreement. ECF No. 43 at 22, ¶¶ 50-51. BioCardia inconsistently alleges, however, that no breach occurred until BioCardia asked Ms. Sarna in 2019 to assign the patent resulting from one of the provisional patent applications, although she did not own the patent at that time. BioCardia does not support the allegation that no breach occurred before assignment was requested by reference to any contractual language. *See* ECF No. 43 at 21, ¶ 46.

California law provides a four-year statute of limitations for claims for the breach of a written contract. *See* Cal. Code Civ. Proc. § 337. A limitations defense "may be raised by motion to dismiss if the running of the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991). Unless it has pleaded facts sufficient to avoid the limitations bar, BioCardia's theory of breach therefore requires that Count II be dismissed.

BioCardia's attempt to avoid the statute of limitations is based on the idea that the "discovery rule" governs accrual of a claim for breach of contract, and a claim of "fraudulent concealment." The discovery rule does not apply to BioCardia's breach of contract claim, and the allegations of the counterclaim are not sufficient to support a claim of delayed discovery, in any event. BioCardia does not sufficiently allege fraudulent concealment.

### A.     The Discovery Rule Does Not Apply To The Breach of Contract Claim Alleged By BioCardia.

Generally, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (quoting *Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). However, some statutes impose, and California courts recognize in some circumstances, a "discovery rule" that "a cause of action accrues when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. July 26, 2006) (citing *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983)). If the discovery rule applies, the statute of limitations is tolled until "the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807 (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 187 (1971)). A plaintiff has reason to discover a cause of action when it "has reason at least to suspect a factual basis for its elements." *Norgart*, 21 Cal. 4th at 398 (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988)).

The statute providing the limitations period for the breach of a written contract does not adopt the discovery rule. *See* Cal. Code Civ. Proc. § 337(a). In limited circumstances, California courts have followed the discovery rule in the breach of contract context. The common themes that apply to the discovery rule cases are that (1) the plaintiff would find it difficult to detect the breach or resulting injury, or (2) a special relationship exists between the parties. *See Evans v. Eckelman*, 216 Cal. App. 3d 1609 (1990). The policy principles behind the discovery rule show that the exception to the ordinary accrual rule does not apply here.

Normally, "[a] cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-Encinas*, 468 F. Supp. 2d at 1134. The discovery rule comes in to play only "where it is manifestly unjust to deprive plaintiffs of a cause of action before they are aware that they have been injured." *Id.* (citing *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423 (2003)). California courts have held that, in

contract actions, the discovery rule could be applied to "breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983).

BioCardia's claim for breach based on Ms. Sarna's failure to disclose and failure to assign a patent or patent applications is not a breach that can be committed in secret, or as to which information is available only to Ms. Sarna. Applications are made available by the U.S. Patent and Trademark Office for the public to view, even before issuance of a patent. *See* MPEP 1120, 35 U.S.C. § 12 (patent applications are automatically published 18 months from their earliest priority date). The two provisional applications BioCardia alleges Ms. Sarna filed while she was employed at BioCardia became public on November 7, 2013 and October 30, 2014.[2]

BioCardia therefore could have known, no later than 2013 regardless of whether Ms. Sarna had disclosed or assigned any inventions or applications to BioCardia. The circumstances under which an exception to the ordinary accrual rule is recognized are not present.

### B.    BioCardia Does Not Allege Facts Sufficient to Postpone the Accrual of Its Claim For Breach of Contract.

To invoke the discovery rule, "the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence…. However, mere conclusory assertions that delay in discovery was reasonable are insufficient." *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*, No. C-05-04726 RMW, 2008 U.S. Dist. LEXIS 111497, *23 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (1978)). *See also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1320-21 (C.D. Cal. 2013);

---

[2] The first application claiming priority to the January 25, 2011 U.S. Provisional Application No. 61/435,945 was U.S. Application No. 13/979,691, which published November 7, 2013 as US2013/0296686. U.S. Application No. 14/357,875, which claimed priority to the November 13, 2011 U.S. Provisional Application No. 61/559,120, was published on October 30, 2014 as US2014/0323859.

*Keilholtz v. Lennox Hearth Products Inc.*, No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 81108, *9 (N.D. Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing: '(a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the [facts underlying the claim])'" (quoting *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)); *EFab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1319 (2007) ("A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.") (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

The "discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox*, 35 Cal. 4th at 807. But the rule "does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to [their] investigation." *Id*. at 808.

As discussed above, BioCardia merely makes the conclusory assertion that it "discovered" Ms. Sarna's "acts" in January 2019. No further details regarding the manner of discovery or the inability to have made earlier discovery despite reasonable diligence is alleged. BioCardia asserts that it had no "duty" to search for certain types of evidence, but that is either a contradiction of the established law, or an irrelevant legal argument. There are no facts supporting the idea that the relevant facts could not have been discovered before 2019 in the exercise of reasonable diligence.

## C.     BioCardia's Fraudulent Concealment Allegations Lack Particularity.

Under the heading "Fraudulent Concealment Tolled the Statute of Limitations," BioCardia alleges that Ms. Sarna "fraudulently concealed U.S. Provisional application No. 61/435,945 from BioCardia" by not disclosing her 2011 provisional patent application when she signed a Termination Certificate on January 4, 2012. ECF No. 43 at 22, ¶ 50.

A claim that fraudulent concealment tolls an applicable state statute of limitations must be pleaded with the particularity required of all allegations of fraud under Rule 9(b). *Orange Street Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999); *Suckow Borax Mines Consolidated v. Borax Consolidated*, 185 F.2d 196, 209 (9th Cir. 1951). *See also Collins v. Nationalpoint Loan Services*, No. 09-cv-1314 JM, 2009 U.S. Dist. LEXIS 91135, *7 (S.D. Cal. Sept. 29, 2009) (Rule 9(b) "requires him to particularly set forth specific allegations demonstrating the tolling of the statute of limitations"); *Juniper Networks v. Shipley*, No. C 09-0696 SB, 2009 U.S. Dist. LEXIS 40978, *14 (N.D. Cal. May 14, 2009) (statement was "too vague to comply with the particularity requirements of Rule 9(b)" to allege fraudulent concealment as a basis for tolling the statute of limitations); *Rambus Inc. v. Samsung Electronics Co., Ltd.*, No. C-05-02298 RMW, 2007 U.S. Dist. LEXIS 3088, *19-*20 (N.D. Cal. Jan. 4, 2007) ("Nevertheless, because fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies"); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM, 2006 U.S. Dist. LEXIS 96772, *148-*149 (C.D. Cal. Sept. 25, 2006) (plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts").

"When a plaintiff relies on a theory of fraudulent concealment . . . to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974)).

BioCardia's counterclaim alleges in general terms when the supposed fraud was discovered, but little more. *See* ECF No. 43 at 16, ¶ 20 ("In or around January 2019, BioCardia learned that on January 25, 2011, while a BioCardia employee and a year before Ms. Sarna left BioCardia, Ms. Sarna filed [a provisional patent] application[.]" ); ECF No. 43 at 21, ¶ 46

("BioCardia sent a letter to Ms. Sarna based on BioCardia's discovery in January 2019 that there was something for which to demand assignment"); ECF No. 43 at 21, ¶ 48 ("BioCardia had no reason to suspect a misappropriation until it found the '571 Patent in January 2019"). There are no allegations, particular or otherwise, of the circumstances under which discovery occurred, that BioCardia was not at fault for failing to discover sooner than eight years after the fact, or that BioCardia had no actual or presumptive knowledge of facts sufficient to put it on inquiry. Can BioCardia allege that it did not know Ms. Sarna left to start a company? That it knew nothing about her activities, or, given the alleged disclosure of the lab notebook, it had no reason to suspect a connection between Ms. Sarna's activities and her work at BioCardia? Is BioCardia prepared to deny all personal and professional contact with Ms. Sarna throughout the extraordinary period in which the patent filings and other facts sufficient to put a reasonable person on notice allegedly were not known or suspected? If BioCardia wishes to assert fraudulent concealment, it is required to do more than assign a convenient date to its purported discovery of the relevant facts.

### IV.    COUNT III (MISAPPROPRIATION OF TRADE SECRETS) IS SIMILARLY TIME BARRED.

Count III is a far-fetched claim for misappropriation of trade secrets, and is subject to a three-year statute of limitations. The limitations period begins when "the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." *See* Cal. Civ. Code § 3426.6.

BioCardia alleges belated discovery of the alleged misappropriation, but, again, the only delayed discovery allegations are conclusory. *See* ECF No. 43 at 21, ¶ 48 ("The statute of limitations on a trade secret claim runs from the date on which the claim was or reasonably should have been discovered, California Civil Code § 3426.6, and BioCardia had no reason to suspect a misappropriation until it found the '571 Patent in January 2019."). The burden of pleading and proving belated discovery "falls on the plaintiff." *Inv'rs Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011), as modified (June 15, 2011). To invoke the discovery rule, therefore, BioCardia must allege the time and manner in which it discovered the

relevant facts. *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 U.S. Dist. LEXIS 88937, at *25 (N.D. Cal. July 7, 2015); *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C-05-04726 RMW, 2008 U.S. Dist. LEXIS 111497, at *25-*26 (N.D. Cal. Sept. 30, 2008) (citing *Community Case v. Boatwright*, 124 Cal. App. 3d 888, 900 (1981)). BioCardia must also allege that it acted reasonably and diligently. *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 U.S. Dist. LEXIS 121634, at *20, *32 (N.D. Cal. Aug. 29, 2014), *aff'd*, 664 Fed. Appx. 651 (9th Cir. 2016).

BioCardia's allegations fall short. It says it "found" the '571 Patent, but it does not say how or why. The counterclaim alleges that the '571 Patent and the provisional applications fall within the scope of BioCardia's business, but BioCardia does not allege that it did not know of Ms. Sarna's company, was not aware of the nature of its business, or had no contact with her, or otherwise substantiate the notion that it had no reason to be aware of facts that would create a suspicion that alleged trade secrets had been misappropriated. Absolving oneself with conclusory allegations of the absence of knowledge is not enough.

## V.     CONCLUSION.

For the foregoing reasons, Ms. Sarna respectfully requests that her motion to dismiss be granted in its entirety.


Dated:  January 8, 2020                                      ROBERT E. FREITAS
                                                            JESSICA N. LEAL
                                                       FREITAS & WEINBERG LLP


                                                         */s/Jessica N. Leal*
                                               _____
                                                           Jessica N. Leal
                                                   Attorneys for Counter-Defendant
                                                             Surbhi Sarna