IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
**FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP**
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Tel: 650.825.4300

*Attorneys for Defendant/Counterclaimant*
BioCardia, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC,<br><br>Plaintiffs,<br>v.<br>BIOCARDIA, INC.,<br><br>Defendant.<br><br>BIOCARDIA, INC.,<br><br>Counterclaimant,<br>v.<br>BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC, AND SURBHI SARNA,<br><br>Counterdefendants. | CASE NO.  3:19-05645-VC<br><br>**BIOCARDIA, INC.'S OPPOSITION TO SURBHI SARNA'S MOTION TO DISMISS AMENDED COUNTERCLAIM**<br><br>Date:     March 19, 2020<br>Time:    10:00 a.m.<br>Crtrm:   4, 17th Floor<br>Judge:   Hon. Vince Chhabria |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF RELEVANT FACTS....................................................................1

III. COUNT I ADEQUATELY PLEADS A CLAIM FOR CORRECTION OF INVENTORSHIP ........................................................................................................1

    A. The FAC Adequately alleged Assignment of the Relevant Invention or if It Did Not It could Easily Amend to Do So. ....................................................................1

    B. BioCardia Adequately Alleged Co-Inventorship .......................................................2

        1. Contribution to Reduction to Practice ..................................................................2

        2. Contribution to Conception ..................................................................................2

        3. Significant Contribution to Conception...............................................................3

        4. Conjoined Effort ..................................................................................................3

        5. Connection of Alleged Contribution to Claim 1 ..................................................5

IV. COUNT II (BREACH OF WRITTEN CONTRCT) IS NOT BARRED BY THE STATUTE OF LIMITATIONS................................................................................5

    A. BioCardia Adequately Alleges a Breach of an Automatic Assignment Which Was Breached Only When Ms. Sarna rejected BioCardia's Demand that She Assign Her Patents to BioCardia, as Well as Breach of Contract .........................................5

    B. BioCardia Adequately Alleges the Circumstances of Discovery of Its Claims .........7

    C. BioCardia Adequately Alleges Fraudulent Concealment............................................8

V. COUNT III (MISAPPROPRIATION OF TRADE SECRETS) IS NOT TIME BARRED ...................................................................................................................10

VI. CONCLUSION ................................................................................................................10

i

## TABLE OF AUTHORITIES

**Cases**

*April Enterprises, Inc. v. KTTV*,
  147 Cal.App.3d 827 (1983) ......................................................................................... 6, 7

*Blue Gentian v. Tristar Products, Inc.*,
  No. 13-1758 (NLH/AMD), 2020 WL 241345 (D.N.J. Jan. 16, 2020) ..................................... 4

*DDB Techs, L.L.C. v. MLB Advanced Media L.P.*,
  517 F.3d 1284 (Fed. Cir. 2008) ........................................................................................ 5

*Eli Lilly and Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ........................................................................................ 3

*General Elec. Co. v. Wilkins*,
  No. CV F 10-0674 LJO JLT, 2012 WL 3778865 (E.D. Cal. Aug. 31, 2012) ....................... 5, 6

*Goldwasser v. Smith Corona Corp.*,
  817 F.Supp. 263 (D. Conn. 1993) .................................................................................... 5

*Imatec, Ltd. v. Apple Computer, Inc.*,
  81 F.Supp.2d 471 (S.D.N.Y. 2000) ................................................................................... 5

*In re VerHoef*,
  888 F.3d 1362 (Fed. Cir. 2018) ........................................................................................ 2

*Intel Corp. v. Tela Innovations, Inc.*,
  No. 3:18-cv-02848-WHO, 2019 WL 2476620 (N.D. Cal. June 13, 2019) ......................... 4, 5

*Jaffe v. Carroll*,
  35 Cal.App.3d 53 (1973) ................................................................................................. 6

*Kimberly-Clark Corp. v. Procter & Gamble Distribution Co.*,
  973 F.2d 911 (Fed. Cir. 1992) .......................................................................................... 3

*Mills v. Forestex Co.*,
  108 Cal. App.4th 625 (2003) ......................................................................................... 10

*Nogart v. The Upjohn Company*,
  21 Cal. 4th 383 (1999) .................................................................................................... 6

*Rodriguez v. United Airlines, Inc.*,
  5 F.Supp.3d 1131 (N.D. Cal. 2013) .................................................................................. 9

*Target Technology Co., LLC v. Williams Advanced Materials, Inc.*,
  No. SACV 04-1083 DOC (MLGx), 2008 WL 5002935 (C.D. Cal. Nov. 21, 2008) ................. 6

*UNiRAM Technology, Inc. v. Taiwan Semiconductor Mfg. Co.*,
  617 F.Supp.2d 938 (N.D. Cal. 2007) ................................................................................ 7

**I.     INTRODUCTION**

Defendant BioCardia, Inc. ("BioCardia") will demonstrate that the alleged pleading defects in its First Amended Answer and Counterclaims ("FAC") raised in counterdefendant Surbhi Sarna's ("Ms. Sarna") motion to dismiss ("Ms. Sarna's MTD") and are either not defects at all, or that if they are defects are easily curable as more fully argued below.  However, BioCardia believes itself obligated to advise the Court that BioCardia attempted to avoid precisely this motion practice when counterdefendants raised pleading issues with the original complaint, communications on which Ms. Sarna's counsel were copied (when written) and on which Ms. Sarna's counsel were on the conference call line (when oral).  As a result of these communications with the other counterdefendants, BioCardia filed the First Amended Complaint ("FAC") to address counterdefendants' concerns, and the other counterdefendants accordingly answered rather than moved to dismiss.  Ms. Sarna's counsel raised but one issue relating to whether certain unjust enrichment damages were available, so BioCardia cited the case in the FAC confirming that they are in fact available.  Importantly, the availability of those unjust enrichment damages is not a subject of Ms. Sarna's MTD.

BioCardia also notes that Ms. Sarna does not seek dismissal with prejudice, which would be inappropriate given that Ms. Sarna argues that BioCardia did not adequately plead certain facts, not that it could not do so.  Accordingly, BioCardia respectfully requests leave to amend to the extent that all or any portion of Ms. Sarna's MTD is granted.

**II.    STATEMENT OF RELEVANT FACTS**

BioCardia does not disagree with the Statement of Relevant facts submitted by Ms. Sarna except as where indicated below.

**III.   COUNT I ADEQUATELY PLEADS A CLAIM FOR CORRECTION OF INVENTORSHIP**

    **A.     The FAC Adequately alleged Assignment of the Relevant Invention or if It Did Not It could Easily Amend to Do So.**

Ms. Sarna is correct that the only explicit pleading of BioCardia's standing to seek correction of inventorship is in FAC ¶ 61, where BioCardia alleges that it "has standing to seek

correction of inventorship because Dr. Altman and Dr. Stertzer each assigned to BioCardia all of their right, title and interest in and to all inventions they made at BioCardia, and all resulting patents." But BioCardia alleges in FAC paragraphs 17-19 what the terms are of BioCardia's standard employment agreement, and that it requires assignment of all inventions made at BioCardia. When coupled with BioCardia's Initial Disclosures identifying Peter Altman and Dr. Stertzer, the FAC at least implicitly alleges that they had a duty to assign the patents pursuant to their agreements with BioCardia. It is of course easy to amend to make that explicit if the Court finds the current pleading inadequate.

### B. BioCardia Adequately Alleged Co-Inventorship

Ms. Sarna seems to allege five defects in BioCardia's Count I inventorship claim: (1) insufficient allegation of contribution to reduction to practice (Dkt. 47 at 12); (2) insufficient allegation of contribution to conception, *id.* at 12-13; (3) insufficient allegation that any such contribution was "significant," *id.* at 13; (4) insufficient allegation of "conjoined effort," *id.*; and (5) no connection between lab notebook and alleged contribution to claim 1, *id.* at 14.

#### 1. Contribution to Reduction to Practice

BioCardia does not allege contribution to reduction to practice. As Ms. Sarna notes in her MTD, contribution to reduction to practice is not required for co-inventorship: rather there must have been contribution to conception **or** reduction to practice. Dkt. 47 at 11; *see In re VerHoef,* 888 F.3d 1362, 1366 (Fed. Cir. 2018). BioCardia adequately alleged contribution to conception as described below.

#### 2. Contribution to Conception

Ms. Sarna asserts at Dkt. 47 at 12, that BioCardia did not allege that Drs. Altman or Stertzer conceived of the features described in the highlighted portion of Claim 1 of the '571. But BioCardia alleged exactly that in FAC ¶ 56:

> BioCardia is informed and believes and on that basis alleges that Dr. Altman and Dr. Stertzer are at least co-inventors of at least of at least claim 1 of the '571 Patent because they conceived or at least contributed to the conception of the highlighted portions of claim 1:
> 
> A device for maintaining a narrow body lumen, comprising: a hydraulic propulsion mechanism and at least one of an imaging portion or a therapeutic

portion, said hydraulic propulsion mechanism configured for propelling said imaging portion or said therapeutic portion relative to said hydraulic propulsion mechanism and through the narrow body lumen, said hydraulic propulsion mechanism including an elongate shaft, wherein the narrow body lumen is distal of a distal end of said elongated shaft; wherein said imaging portion or said therapeutic portion, when propelled by said hydraulic propulsion mechanism, is driven distally from said distal end of said elongated shaft and is distally spaced therefrom; and a retrieval mechanism for retrieving said imaging portion or said therapeutic portion from the narrow body lumen.

Ms. Sarna also argues that the FAC "does not allege that that there was no other way Ms. Sarna would have been aware, or become aware, of," Dr. Altman's and Dr. Stetzer's contribution. But Ms. Sarna cites not authority that such a requirement is necessary to prove contribution to conception, much less that it must be alleged in a compliant. Dkt. 47 at 12. Nevertheless, if the Court holds that such a pleading is required, BioCardia respectfully requests leave to amend to allege it.

### 3. Significant Contribution to Conception

Ms. Sarna argues that the counterclaim does not allege the quality of Dr. Altman's or Dr Stertzer's contribution or that it was "significant" or when measured against the full measure of the invention. Dkt. 47 at 13. But Ms. Sarna cites no authority that such an allegation is required at the pleading stage and BioCardia found none. But BioCardia seeks leave to allege that its contribution to the conception of the Claim 1 of the '571 patent is significant if the Court holds such is reqired.

### 4. Conjoined Effort

"For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting...." *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004), *quoting Kimberly-Clark Corp. v. Procter & Gamble Distribution Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "Though joint inventors must have knowledge of his or her co-inventor's efforts, these cases stop short of requiring an

intent to invent." *Blue Gentian v. Tristar Products, Inc.*, No. 13-1758 (NLH/AMD),

2020 WL 241345, at *9 (D.N.J. Jan. 16, 2020).

> "[T]here must be some element of joint behavior, such as collaboration or working under common direction." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). This test is "not demanding": "Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the 'element of joint behavior' can be satisfied." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 5:11-CV-05236-PSG, 2013 WL 5304134, at *3 (N.D. Cal. Sept. 20, 2013). But "[i]ndividuals cannot be joint inventors if they are totally independent of each other" and do not "work[ ] together in any capacity." *Rubin v. Gen. Hosp. Corp.*, Civil Action No. 09-10040-DJC, 2011 WL 1625024, at *6, 2011 U.S. Dist. LEXIS 45859, at *18, *22 (D. Mass. Apr. 28, 2011).

*Intel Corp. v. Tela Innovations, Inc.,* No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *5 (N.D. Cal. June 13, 2019).

BioCardia alleged that: "Dr. Altman and Dr. Stertzer are at least co-inventors of at least of at least claim 1 of the '571 Patent because they conceived or at least contributed to the conception of the highlighted portions of claim 1:

> A device for maintaining a narrow body lumen, comprising: a hydraulic propulsion mechanism and at least one of an imaging portion or a therapeutic portion, said hydraulic propulsion mechanism configured for propelling said imaging portion or said therapeutic portion relative to said hydraulic propulsion mechanism and through the narrow body lumen, said hydraulic propulsion mechanism including an elongate shaft, wherein the narrow body lumen is distal of a distal end of said elongated shaft; wherein said imaging portion or said therapeutic portion, when propelled by said hydraulic propulsion mechanism, is driven distally from said distal end of said elongated shaft and is distally spaced therefrom; and a retrieval mechanism for retrieving said imaging portion or said therapeutic portion from the narrow body lumen.

FAC ¶ 56. That BioCardia did not allege that Drs. Altman or Stertzer did not "intend to invent" when the disclosure was made to Ms. Sarna is of no moment. "Though joint inventors must have knowledge of his or her co-inventor's efforts, these cases stop short of requiring an intent to invent." *Blue Gentian v. Tristar Products, Inc.*, No. 13-1758 (NLH/AMD), 2020 WL 24135, at *9 (D.N.J. Jan. 16, 2020). BioCardia alleged that its disclosure was intended to help Ms. Sarna conduct research for BioCardia, FAC ¶ 32, which could reasonably have been intended to result in a patentable invention. To the extent that BioCardia did not adequately connect its allegation of joint inventorship to the disclosure to Ms. Sarna alleged in FAC paragraphs 30-32, and Dr.

Stertzer's contribution to that disclosure, BioCardia respectfully seeks leave to amend to make those connections explicit.

### 5. Connection of Alleged Contribution to Claim 1

BioCardia adequately connected Dr. Altman's disclosure to Ms. Sarna to claim 1 of the '571 patent at the pleading stage. At that stage, laying out the claim language allegedly contributed by BioCardia, which BioCardia does in FAC ¶ 56, is sufficient. *Intel Corp. v. Tela Innovations, Inc.,* No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *6 (N.D. Cal. June 13, 2019).

### IV. COUNT II (BREACH OF WRITTEN CONTRCT) IS NOT BARRED BY THE STATUTE OF LIMITATIONS

#### A. BioCardia Adequately Alleges a Breach of an Automatic Assignment Which Was Breached Only When Ms. Sarna rejected BioCardia's Demand that She Assign Her Patents to BioCardia, as Well as Breach of Contract

Oddly, although BioCardia's FAC specifically alleges that Ms. Sarna's obligation to assign patents she invented during her employment at BioCardia is an automatic assignment of a right in a future interest which was breached only when Ms. Sarna refused to assign her patents after demand by BioCardia, FAC at ¶¶ 45-47, Ms. Sarna completely ignores this allegation.

Ms. Sarna's promise to assign patents she invented while an employee of BioCardia is an automatic assignment, *DDB Techs, L.L.C. v. MLB Advanced Media L.P.,* 517 F.3d 1284, 1290 (Fed. Cir. 2008), which was breached only when Ms. Sarna refused to assign the '571 Inventions after BioCardia demanded assignment. *See, e.g., General Elec. Co. v. Wilkins*, No. CV F 10-0674 LJO JLT, 2012 WL 3778865, at *16 (E.D. Cal. Aug. 31, 2012*); Imatec, Ltd. v. Apple Computer, Inc*., 81 F.Supp.2d 471, 483 n.5 (S.D.N.Y. 2000); *Goldwasser v. Smith Corona Corp*., 817 F.Supp. 263, 271-72 (D. Conn. 1993), aff'd, 26 F.3d 137 (Fed. Cir. 1994). This did not happen until April 9, 2019 at the earliest, when BioCardia sent a letter to Ms. Sarna based on BioCardia's discovery in January 2019 that there was something for which to demand assignment. Thus the four-year statute of limitations for breach of the automatic assignment obligation did not begin to run until April 9, 2019, and could not have run when BioCardia asserted its counterclaims herein.

Moreover, in the context of breach of an automatic assignment agreement, the discovery rule "'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'" *Target Technology Co., LLC v. Williams Advanced Materials, Inc.*, No. SACV 04-1083 DOC (MLGx), 2008 WL 5002935, at *12 (C.D. Cal. Nov. 21, 2008), *quoting Nogart v. The Upjohn Company*, 21 Cal. 4th 383, 397 (1999). Again in the context of breach of an automatic assignment agreement, "[t]he statutory limitations period for a breach of contract commences when the party wronged knows, or reasonably should know of the breach." *Gen Elec. Co.,* 2012 WL 3778865, at *15, *quoting Jaffe v. Carroll*, 35 Cal.App.3d 53, 58-59 (1973). As discussed below, discovery occurred on or around January 2019, no earlier than December 2018, well within the four-year statute of limitations.

Even for contractual obligations other than automatic assignments, the limitations period for a breach of contract done in secret resulting in harm that is not reasonably discoverable, as was Ms. Sarna's breach of the Agreement, does not begin to run until the breach was or reasonably should have been discovered. *See, e.g., April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 827, 831 (1983). Ms. Sarna acknowledges as much. Dkt. 47 at 17.

Ms. Sarna then makes a factual argument, legally wrong and in any event one not appropriate for a motion to dismiss, that Ms. Sarna's breach was not done in secret because her patent applications were published on November 7, 2013 and October 20, 2014. Dkt. 47 at 17. Apparently Ms. Sarna contends that BioCardia had a duty to search the patent office records periodically to search for improper patent filings. Dkt. 47 at 17. But:

> California is an inquiry notice state when it comes to the statute of limitations. The limitations period begins to run when the plaintiff knows of the injury or should know of the injury. See *Grisham v. Philip Morris USA, Inc.,* 40 Cal.4th 623, 634, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (2007); *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 807, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005). **Plaintiffs are deemed to have this constructive knowledge "only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious**." *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 438–39, 159 P.2d 958 (1945). **California has expanded upon the "reasonable suspicion" standard by stating that the plaintiff must suspect "that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with its lay understanding. * * * He has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry * * *."** *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397–98, 87 Cal.Rptr.2d 453,

981 P.2d 79 (1999) (citing *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1110, 245 Cal.Rptr. 658, 751 P.2d 923 (Cal.1988)). The plaintiff must have some basis for making further inquiries—in practice this may mean that if a plaintiff knows he has been injured but does not know who has injured him, he has a duty to inquire, which starts the statute of limitations.

*UNiRAM Technology, Inc. v. Taiwan Semiconductor Mfg. Co.,* 617 F.Supp.2d 938, 948 (N.D. Cal. 2007) (emphasis supplied).

Here BioCardia did not know that was injured until it learned of Ms. Sarna's patent applications filed while she was a BioCardia employee. (cite to FAC). In the words of the caselaw, BioCardia did not know that something wrong had been done to it. The only facts it was aware of was that Ms. Sarna had been at BioCardia and had left its employ. Ms. Sarna alleges no basis for imposing a duty on an employer to investigate improper patent filings by former employees and as far as BioCardia has been able to determine there is no such case. Indeed, *April Enterprises, Inc. v. KTTV*, 147 Cal.App. 805, 832 (1983), cited by Ms. Sarna (Dkt. 47 at 11-12), rejected the notion that "a contracting party in such situations has a duty to continually monitor whether the other party is performing some act inconsistent with one of many possible terms in a contract."

### B.     BioCardia Adequately Alleges the Circumstances of Discovery of Its Claims

Ms. Sarna correctly states that when a plaintiff pleads delayed discovery, it must allege (a) lack of knowledge; (b) lack of means of obtaining knowledge in the exercise of reasonable diligence; and (c) how and when the facts underlying the claims were discovered. BioCardia alleges that:

> In or around January 2019, BioCardia learned that on January 25, 2011, while a BioCardia employee and a year before Ms. Sarna left BioCardia, Ms. Sarna filed U.S. Provisional application No. 61/435,945 (the "'945 Provisional Application"), which issued as U.S. Patent No. 9,173,571 (the "'571 Patent") on November 3, 2015. [FAC ¶ 20]

> BioCardia subsequently learned that Ms. Sarna also filed three other published applications claiming priority to the '945 Provisional Application, including US 2014/0323859 published on October 30, 2014, US 2016/151001 published June 2, 2017, and US 2017/0258392 published September 14, 201 (collectively, with the '945 Provisional Application and the '571 Patent, the "'945 Provisional Family"). [FAC ¶ 21]

> BioCardia learned only from the complaint in this Action that while a BioCardia

employee, Ms. Sama also filed Provisional Patent Application No. 61/559120 on November 13, 2011 entitled "Device and method to confirm occlusion of the fallopian tube" (the "'120 Provisional Application") , and that Ms. Sarna subsequently filed Application No, 14/357,875, which claimed priority to the '120 Provisional and which published on October 30, 2014 as US2014/0323859 (collectively the "'120 Provisional Family"). [FAC ¶ 22]

The '945 Provisional Family and the '120 Provisional Family will be collectively referred to as the "Sarna Patent Family." [FAC ¶ 23]

BioCardia had no reason to discover the Sarna Patent Family since it had no reason to search for patents or patent applications on which Ms. Sarna was a claimed inventor to determine if they claimed priority to a date when Ms. Sarna was employed by BioCardia. [FAC ¶ 24]

BioCardia thus alleged lack of knowledge (at least implicitly) in FAC paragraphs 20 and 24, and can certainly amend to make the allegation more explicit if required. BioCardia also alleged it has no means of obtaining knowledge in the exercise of reasonable diligence in FAC paragraph 24. And BioCardia alleges when it learned of its claims in paragraph 24. If the Court deems this insufficient to explain the circumstances of BioCardia's discovery of its claims, BioCardia can amend to allege what Counterdefendants undoubtedly will learn in Dr. Altman's deposition as follows:

> The circumstances of BioCardia's discovery of its claims were that on December 21, 2018, Boston Scientific advised BioCardia's Dr. Altman that it no longer wanted to pursue a business relationship with BioCardia that previously had been under discussion. Dr. Altman knew that Ms. Sarna was CEO of a company, which Boston Scientific recently had acquired. To understand why Boston Scientific acquired Ms. Sarna's company, when it was not interested in doing a deal with BioCardia, Dr. Altman searched the USPTO website to see whether Ms. Sarna had filed any patents or patent applications which might explain why Boston Scientific was interested in acquiring her company but not a relationship with BioCardia. Dr. Altman was surprised to learn from his searchhat Ms. Sarna and her company, nVision, were doing what had been disclosed to Ms. Sarna during her employment at BioCardia. Dr. Altman was even more surprised to discover that nVision's patent applications had been applied for by Ms. Sarna while she was a BioCardia employee.

Thus, BioCardia adequately alleged, or at least could adequately allege, facts sufficient to postpone accrual of its breach of contract claim.

### C.  BioCardia Adequately Alleges Fraudulent Concealment

Under California law, the elements of fraudulent concealment are

> (1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage. *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1156 n. 3 (9th Cir. 2000).

*Rodriguez v. United Airlines, Inc.,* 5 F.Supp.3d 1131, 1135, 1136 (N.D. Cal. 2013).

BioCardia adequately alleged element 1, concealment of a material fact, to wit the inventions she made and patented while at BioCardia: "When Ms. Sarna left BioCardia in January 2012, Ms. Sarna expressly represented to BioCardia in writing that Ms. Sarna did not have any invention to disclose to BioCardia and had made no invention which was assigned to BioCardia pursuant to the Sarna Agreement." FAC ¶ 19. In Exhibit A to Exhibit C, attached to the FAC, Ms. Sarna. on her departure from BioCardia January 4, 2012, represented to BioCardia that:

> I further certify that I have complied with all the terms of the Company's Employment Confidential Information and Invention Assignment Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

BioCardia adequately alleged element 2, a duty to disclose those inventions:

Ms. Sarna agreed in Section 3(f) of her that "I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>." The Termination Certificate Ms. Sarna was contractually obligated to sign and did sign on her January 4, 2012 departure from BioCardia did not disclose the inventions claimed in the '945 Provisional Application and the '120 Provisional Application, which she was obligated to do even if she believed them outside her automatic assignment obligation because of Section 2870. Ms. Sarna thus fraudulently concealed U.S. Provisional application No. 61/435,945 from BioCardia.

FAC ¶ 50. The obvious purpose of that sentence was to require Ms. Sarna to disclose an invention to BioCardia even if she thought she was not obligated to assign them to BioCardia so BioCardia could make its own determination of whether there was an obligation to assign and that any difference of opinion could be resolved.

BioCardia did not explicitly allege the third element, that Ms. Sarna acted with an intent to defraud, but the allegations certainly imply an intent to defraud ("Ms. Sarna thus fraudulently concealed U.S. Provisional application No. 61/435,945 from BioCardia"). Since "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally,"

Fed.R.Civ.Pro. 9(b), an amendment to allege intent to defraud would be no more than such a pro forma allegation.

BioCardia alleged the fourth element, unawareness and that it would have acted differently had it known the facts, at least implicitly when it alleged when it learned the concealed facts in FAC ¶¶ 20-23.  BioCardia can certainly amend to allege specifically what is implied:  that it did not know of the patents before learning about them and would have sued earlier had it known the facts.

BioCardia adequately alleged the fifth element, damage from the concealment, because it is now suing for assignment of the patents and unjust enrichment damages which it would have done earlier had the facts not been concealed.

Ms. Sarna quotes *Mills v. Forestex Co.*, 108 Cal. App.4th 625, 641 (2003), quoting *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 321 (1974), for the proposition that a complaint pleading fraudulent must alleged when the fraud was discovered, the circumstances when it was discovered, and that the plaintiff was not at fault for failing to discover it and had no inquiry notice of the fraud.  Dkt. 47 at 19.  BioCardia was unable to find either the quote, or the citation to Baker v. Beech Aircraft Corp., in Mills.  But even if the statement of the law were correct, BioCardia would have responded to these points in Section III(B), supra, which it incorporates by reference.

V.  **COUNT III (MISAPPROPRIATION OF TRADE SECRETS) IS NOT TIME BARRED**

BioCardia agrees with Ms. Sarna that whether Count III for misappropriation of trade secrets involves the same inquiry as the Count II inquiry for breach of contract.  Accordingly, BioCardia incorporates its argument in Section III, *supra*.

VI.  **CONCLUSION**

BioCardia respectfully requests that Ms. Sarna's MTD be denied in its entirety.  To the extent that the Court disagrees and grants all or any part of Ms. Sarna's MTD, BioCardia respectfully requests leave to amend.

Dated: February 5, 2020          By */s/ Ian N. Feinberg*
                                 Ian N. Feinberg

                                 FEINBERG DAY KRAMER ALBERTI LIM
                                 TONKOVICH & BELLOLI LLP
                                 Ian N. Feinberg
                                 577 Airport Blvd., Suite 250
                                 Burlingame, CA. 94010
                                 Telephone: 650.825.4300
                                 Ifeinberg@feinday.com

                                 Attorneys for Defendant and Counterclaimant
                                 BioCardia, Inc.

-11-
OPPOSITION MOTION TO DISMISS- 3:19-CV-05645-VC