July 21, 2020

<u>*Via CM/ECF*</u>

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *Boston Scientific Corp., et al. v. BioCardia, Inc.* Case No. 3:19-05645-VC
        *BioCardia, Inc. v. nVision Medical Corp., et al.* 3:20-2829-VC

To the Honorable Vince Chhabria:

The parties submit the following arguments in response to the Court's July 16, 2020 Minute Order (Dkt. 88).

## BIOCARDIA'S ARGUMENT

I.      **The nVision Case is Not an End-Run Around the Court's Scheduling Order**

BioCardia did not attempt to circumvent the Court's scheduling order in *Boston Scientific Corp. v. BioCardia, Inc.* ("the BSC Case") by filing the nVision case.  Rather, BioCardia filed the nVision Case in response to Ms. Surbhi Sarna's April 16, 2020 Opposition to BioCardia's Motion to Amend the Scheduling Order and For Leave to File Second Amended Answer and Counterclaims (BSC Case Dkt. 63) which pointed out that nVision continued to exist as a corporation as the surviving entity in a reverse triangular merger with BSC.  BSC Case Dkt. 76 at p. 8.  BioCardia did not know this fact prior to the February 10, 2020 deadline to add parties in the BSC Case.

BioCardia previously believed that BSC had acquired nVision by merger based on BSC's allegation in the very first paragraph of the very first pleading in this case that "[a]mong other things, BioCardia's pre-suit communications to Plaintiffs challenged inventorship and ownership of various patents that Boston Scientific acquired ***through an April 13, 2018 merger with nVision*** ('Merger')… ." Dkt. 1 at ¶ 1 (emphasis supplied).  BioCardia's belief was further confirmed by the fact that BSC, but not nVision, was a declaratory judgment plaintiff, despite the fact that BioCardia's April 9, 2016 pre-suit communications had been directed at nVision, with only a copy to BSC.  In light of these facts, BioCardia reasonably believed that nVision was not a proper party.

Defendants argue that they told BioCardia on January 8, 2020 that in fact BSC had not acquired nVision by merger as BSC itself alleged, and thus BioCardia had been on notice one month before the February 10 deadline that there never was a BSC merger with nVision because BSC's own complaint was false.  BSC alleged that it had acquired nVision through a merger ***with*** nVision, not through what now appears to have been ***through*** a reverse triangular merger

by which BSC ***never merged*** with nVision but instead created a merger subsidiary that merged with nVision.  While BSC should be estopped by its pleadings from now asserting that it did not merge with nVision, BioCardia sued nVision in case BSC were not estopped.  BSC should not be able to take advantage of BioCardia's confusion which its own pleading engendered and claim that BioCardia in effect waited too long to realize the falsity of BSC's pleading allegation.  But most importantly, there is no prejudice to any party from adding nVision now since it is represented by the same counsel as BSC, and the parties in their joint case management conference agreed that the nVision Case and the BSC Case would not only be on the same schedule but also that discovery would be shared between the two cases. BSC Case Dkt. 83; nVision  Case Dkt.54.

## II.     BioCardia Has Sought to Make the Alleged Trade Secrets in the Two Cases the Same

After BSC objected to the adequacy of BioCardia's initial December 18, 2019 disclosure of trade secrets, on January 14, 2020, BioCardia identified in the BSC Case the same trade secrets allegedly misappropriated in the nVision case.  This was weeks before the deadline to amend the pleadings in the BSC Case.   BSC then asserted that the January 14, 2020 trade secret identification was not supported by BioCardia's First Amended Complaint.  The parties then debated whether BioCardia was required to amend its complaint to support its January 14, 2020 trade secret identification.  Rather than risking a determination by the Court that its January 14, 2020 trade secret identification was in fact not supported by its FAC, BioCardia moved to modify the scheduling order and for leave to file a Second Amended Complaint in the BSC Case (Dkt. 60).  Importantly the trade secrets identified in BioCardia's January 14, 2020, designation are the same trade secrets which are the subject of its motion to amend its complaint in the BSC Case, and also the same trade secrets at issue in the nVision Case (nVision Case Dkt. 22).

It may be that BioCardia was being too conservative in seeking leave to amend its complaint in the BSC Case rather than just proceeding on its January 14, 2020 trade secret identification.  The Ninth Circuit has held that a complaint does not need to identify the misappropriated trade secrets.  "Appellants cite no state authority for the proposition that Meggitt SJC should have identified the particular trade secrets *at the pleading stage.* Rather, the authorities on which they rely simply require a plaintiff to identify a trade secret "with reasonable particularity" prior to commencing discovery.  Meggitt SJC has done so."  *Meggit San Juan Capistrano, Inc. v. Yongzhong*, 575 Fed. Appx. 801, 803 (9th Cir. 2014).  Courts in this District have allowed trade secrets claims to proceed without even any specific identification of trade secrets because that is the role of CCP 2019.210 and FRCP Rule 8 does not have a particularity requirement.  *See, e.g., Poynt Corp. v. Innowi, Inc.,* No. 18-cv-05814-BLF, 2019 WL 935499, *3 (N.D. Cal. Feb. 26, 2019) ("Plaintiff's trade secret claims may be deficient as pled, but as Defendant indicated at the Hearing, the discovery process will provide sufficient notice as to these allegations. All discovery matters are referred to the assigned magistrate judge. As required by state law, the party alleging the misappropriation shall identify the trade secrets with reasonable particularity before commencing discovery. See Cal. Civ. Proc. Code § 2019.210. In order to move the case along efficiently, the Court directs that the DTSA claim be addressed through the CCP's 2019.210 process.");  *Alta Devices, Inc v. LG*

*Electronics, Inc.,* 343 F.Supp.3d 868, 882 (N.D. Cal. 2018) ("Rule 8 does not have a particularity requirement, and that California Civil Procedure Code § 2019.210 has no place at the pleading stage.")

## III.    BSC Provides No Precedent for Denying the Motion to Consolidate

In its opposition to the motion to consolidate, BSC cited a number of cases for the proposition that consolidation should be denied when "a party is attempting to circumvent the court's scheduling order and use the 'attempted consolidation as a means of achieving what [the party] could not achieve by way of their motion to supplement.'"  BSC Case Dkt. 78 at 12 (citations omitted).  But the cases cited by BSC involve attempts to consolidate a second case with new claims against the very same defendants in the first case after motions to add those claims against those same defendants were denied in the first case.  These cases do not involve bringing a new suit against new defendants.  *See Lam v. San Francisco*, No. 4:08-cv-04702-PJH (N.D. Cal. Sept. 9, 2011) (BSC Case Dkt. 182 at 1) (one-page unpublished order concerning new claims against the same defendant after an attempt to add the new claims to a prior case was denied); *Averhart v. Commun. Workers of Am.,* No. CIV. 10-6163, 2013 WL 3285268, at *2-3 (D.N.J. June 27, 2013) (denying consolidation between two suits with the same defendants (as well as some new ones) after leave to amend the first suit was denied); *SalesTraq Am., LLC v. Zyskowski*, No. 208-CV01368-LRH-LRL, 2010 WL 1006656, at *2 (D. Nev. Mar. 16, 2010) (denying a defendant's attempt to sever its counterclaims in a first and can then consolidate them with claims in another case after an attempt to add a related entity was denied); *Jones v. Bank of Am., N.A.*, No. 11CV1161 JM (WVG), 2013 WL 12091088, at *2 (S.D. Cal. May 9, 2013) (denying motion to consolidate two class actions brought by different classes with different class representatives alleging the same wrongful acts against the same defendant but based on different types of documents and representations because "Plaintiffs have failed to move for class certification and may have relinquished their class action claims for that reason."); *Zisumbo v. Ogden Regional Medical Center*, No. 1:12-CV-91 TS, 2012 WL 4795655, at *3 (D. Utah Oct. 9, 2012) (denying a motion to consolidate and dismissing a second case because although denial of a motion to amend did not preclude the second lawsuit against the same defendants, the doctrine of claim splitting did); *McKenna v. City of Philadelphia*, 304 F. App'x 89, 92 (3d Cir. 2008) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)) (holding that "Walton applies when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter.").

## IV.    Consolidation Obviates Any Purported Claim Splitting and None of Defendants' Purported Legal Authority Supports a Finding of Claim Splitting

The Court *sua sponte* mentioned the possibility of "claim splitting," but claim splitting does not apply here given the defendants in BSC Case opposed consolidation.  The rule against claim splitting is designed to avoid a defendant having to defend similar claims in different actions, as well as to promote judicial efficiency and to avoid inconsistent verdicts.  *See, e.g., Fernandes v. Quarry Hills Associates, L.P.,* No. 09-11912-JGD, 2010 WL 5439785, at *10 (D. Mass. Dec. 28, 2010).   A motion to consolidate eliminates all of those potential harms.

That a motion to consolidate obviates all of the perceived ills of clam splitting is why the Ninth Circuit held that where, as here, a defendant opposes a motion to consolidate two actions, it acquiesces to a claim split and the general rule against claim splitting does not apply. *RA Medical Sys., Inc. v. Photomedex, Inc.*, 373 Fed. Appx. 784, *787 (9th Cir. 2010); *see also Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995) (considering claim splitting in the related context of claim preclusion and finding that "where a defendant acquiesces in the split, the rule [preventing claim splitting] should be inapplicable."); Restatement (Second) of Judgments § 26(1)(a) and comment a (1982) (in the context of claim preclusion, "a main purpose of the general rule [against claim splitting] is to protect the defendant from being harassed by repetitive actions based on the same claim.  The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim."); 18 Charles A. Wright, Arthur C. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415.  Accordingly, the defendants in the BSC Case—all of whom opposed consolidation—have waived their claim splitting accusation.

None of the cases argued by nVision conclusively demonstrate that at this stage of the proceedings the motion should be denied based on claim-splitting. For example, in *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 4963253, at *7-8 (N.D. Cal. Oct. 8, 2019), on which nVision strongly relies, the court determined that it lacked sufficient facts to decide the motion with respect to subsidiaries' claim that they should have been joined in the first suit with their parent. There, it was not known whether and to what extent the parent was going to disclaim responsibility for the acts of its subsidiaries, which caused the plaintiff not to timely sue them in the first action. *Id.*

In *Efficient Frontiers, Inc. v. Marchese*, 2016 WL 7117243, at *4 (C.D. Cal. Dec. 6, 2016), the plaintiff conceded that defendant had been adequately represented by its alleged privy in the first case, such that the court found essentially by default that the defendant "has adequately established privity for purposes of a claim-splitting analysis."

In *Pollok v. Vanguard Mktg. Corp.*, CV 18-1099-JLS (JCG), 2018 WL 6118602, at *4 (C.D. Cal. May 29, 2018), *aff'd sub nom. Pollok v. Vanguard Fiduciary Tr. Co.,* 803 Fed. Appx. 67 (9th Cir. 2020), the district court made factual findings of intertwined agency that whatever each defendant had done was done in the capacity of and as agent for each of the other defendants. Moreover, there was an identity of interests established by a contract signifying an express identify of interest with respect to the transaction in question.

It is simply not clear on the record as yet undeveloped that nVision and any Defendant in the BSC Case share precisely the same rights and interests with respect to BioCardia's claims so as to irrevocably deem them to be in privity with one another for the purpose of determining that claim splitting has occurred. *Tuitama v. Nationstar Mortg. LLC*, 2015 WL 12744269, at *9 (C.D. Cal. Apr. 13, 2015), *aff'd*, 678 F. App'x 538 (9th Cir. 2017).

## V.     nVision's Failure to Plead Claim Splitting as an Affirmative Defense Waived Any Attempt to Argue for a Finding of Claim Splitting.

nVision also has no basis to argue that BioCardia is claim splitting, having waived any such argument. In *Christensen v. CLP Resources Inc.*, the plaintiffs argued that claim splitting was an affirmative defense that the defendant should have raised in its answer to the original complaint or to the first amended complaint. No. CV 14-8073-GW (PLAx), 2018 WL 6017015, at *6 (C.D. Cal. Oct. 22, 2018). The *Christensen* court agreed, finding that "claim splitting is an affirmative defense that can be waived" and that "CLP's time to challenge any allegations from the FAC is barred by the claim splitting doctrine has, therefore, long past." *Id.* Because nVision answered the complaint without a defense of claim splitting, nVision waived the defense.

## VI.    The Claims Against the Shareholder Defendants Should be Consolidated with the BSC Case to Promote Efficiency

Regardless of whether the claims against the Shareholder Defendants are consolidated with the claims in the BSC Case, the claims against the Shareholder Defendants must be allowed to proceed because there is no claim splitting issue between the claims in the BSC Case and the claims against the Shareholder Defendants. Claim splitting requires privity and there is no privity between the Shareholder Defendants—all of whom have been paid out—and any other party in either case. As a result, BioCardia was, and remains, entitled to pursue its claims against the Shareholder Defendants, even if that requires a separate litigation.

However, as explained in BioCardia's motion to consolidate, the particulars of the BSC Case and the nVision Case strongly favor consolidation. The Court has broad discretion to fashion a remedy, including consolidation of both actions. *See, e.g., Adams v. Cal. Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir. 2007) (overruled on other grounds by *Taylor v. Sturgell,* 553 U.S. 880 (2008)). It will be more efficient for the Court and all parties involved to have the claims against nVision and the Shareholder Defendants consolidated with the claims in the BSC Case.

Defendants suggest that the Shareholder Defendants should be spared the "unjustified burden and expense" of defending BioCardia's claims against them even if EXXclaim's motion to dismiss is denied. But if the Shareholder Defendants' motion to dismiss is denied, there is no justification for eliminating colorable claims against the Shareholder Defendants. This appears to be nothing more than a transparent argument for one-way collateral estoppel: BioCardia would be bound if it loses its claims against the remaining shareholders but the Shareholder Defendants would not be bound if BioCardia won. The Shareholder Defendants have no grounds for arguing for the staying of BioCardia's well-pled claims. This "head I win, tails you lose" argument should be rejected.

## DEFENDANTS' ARGUMENT

In a transparent attempt to circumvent the February 10, 2020 amendment deadline in the Original Case (Dkt. 45 at 2), BioCardia filed a duplicative Second Case and then moved to consolidate it with the Original Case. Under the guise of "consolidation," BioCardia seeks to make three untimely additions to the Original Case, adding: (1) nVision as a defendant, (2) nineteen former nVision shareholders as defendants, and (3) expanded trade secret allegations.

BioCardia had all the information it needed to make these additions in the Original Case before the amendment deadline, but chose not to.  BioCardia knew it could not show good cause for leave to amend, which is why BioCardia filed the Second Case.  This tactic is not permitted.  The rule against claim splitting mandates dismissal of the Second Case against nVision.[1]

## I.     BioCardia Had Prior Knowledge Of All Relevant Facts.

**nVision.**  BioCardia should have discovered from a basic pre-suit investigation that nVision and Boston Scientific Corporation are separate entities.  (See Dkt. 63-2.)  In any event, during a meet-and-confer on December 6, 2019, BSC's counsel expressly informed BioCardia that nVision had not been merged into BSC and asked that BioCardia amend its counterclaims accordingly.  BioCardia refused to do so, and on January 8, 2020, BSC answered to deny that it had merged nVision into itself.  (Dkt. 46, ¶ 53.)  On the same day, Ms. Sarna moved to strike BioCardia's amended answer to the extent it failed to add nVision as a defendant and yet referenced nVision as if it were a party.  (Dkt. 48.)  This motion stated that nVision remained "an active California corporation," that Ms. Sarna "is currently the Chief Executive Officer" of nVision, and that BioCardia could have made nVision "a party to these proceedings."  (*Id.* at 2-4.)  BioCardia responded with a statement of non-opposition.  (Dkt. 56.)  Thus, BioCardia made an intentional choice not to include nVision as a party in the Original Case.

**Shareholders.**  BioCardia has known of the former nVision shareholders since at least September 9, 2019.  (Dkt. 4.)  On January 20, 2020—weeks before the deadline to amend the pleadings in the Original Case—BioCardia stated that it "will need to amend to name as additional counterdefendants the individuals and entities identified by Fortis as interested parties pursuant to Civil Local Rule 3-15."  (Dkt. 78-3 at 2.)  BSC responded by explaining why the former shareholders were not proper defendants.  (Case No. 20-cv-2829, Dkt. 43-1.)  BioCardia then allowed the February 10 deadline to pass without any motion to amend.  Thus, BioCardia made an intentional choice not to include the shareholders as parties in the Original Case.

**Trade Secrets.**  BioCardia's trade-secret allegations in its original and first amended counterclaims were cabined in two respects: (1) the alleged trade secrets were limited to select pages of Dr. Altman's lab notebook, and (2) the asserted misappropriation was limited to two provisional patent applications filed by Ms. Sarna in 2011 (i.e., the "Sarna Patent Family").  BioCardia made these allegations with full knowledge of its own trade secrets and after having reviewed all of Ms. Sarna's published patent applications.  But BioCardia subsequently realized that its case had little value—nVision did not use the Sarna Patent Family in its MAKO device then under development and there was no reason to believe the pleaded "trade secrets" had any other value.  BioCardia then went back to the drawing board, and concocted new trade secrets that are both vaguely stated and not documented anywhere.  BioCardia is now trying to assert that these new trade secrets, allegedly disclosed by the same BioCardia employee during the same meeting as the original trade secrets, were somehow used in patent applications Ms. Sarna filed years after she left BioCardia.  BioCardia's attempts to add these

---

[1] EXXClaim is not asserting a defense of claim-splitting and none of the other shareholders has made an appearance.  Accordingly, the claim splitting analysis is focused on nVision.

new allegations after the applicable amendment deadline—whether by its pending motion to amend in the Original Case or by its improper filing of the Second Case—are improper.

## II.     BioCardia's Second Case Against nVision Is Improper Claim Splitting.

"The doctrine of claim-splitting bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once." *Rivera v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO, Local 444*, 2017 WL 3021038, at *3 (N.D. Cal. July 17, 2017); *Silva v. Bennet*, Case 17-cv-06550, Dkt. 23 (Feb. 20, 2018) ("Dismissal is appropriate because it appears that the plaintiffs have filed this second suit to circumvent the procedural rules that govern the amendment of complaints."). A court may dismiss, with prejudice, a second-filed action that violates the rule against claim splitting. *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 692 (9th Cir. 2007) ("[T]he district court did not abuse its discretion in electing to dismiss the second action with prejudice."), *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008)[2]; *Rivera*, 2017 WL 3021038 at *3 ("If a court determines that a party has impermissibly split her claims, it may exercise its discretion to 'dismiss the duplicative later-filed action . . .'"). "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the 'comprehensive disposition of litigation.'" *Adams*, 487 F.3d at 692. Such dismissals are reviewed for abuse of discretion. *See id.*

The test for claim splitting "'borrows from the test for claim preclusion,' but rather than requiring that the first suit have a final determination on the merits, it 'assumes that the first suit were already final.'" *Rivera*, 2017 WL 3021038, at *3 (quoting *Adams*, 487 F.3d at 688-89). "[I]n the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion." *Adams*, 487 F.3d at 689. "Thus, in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* The rule against claim splitting fully applies here.

### A.     The Two Actions Involve The Same Causes Of Action And Requested Relief.

"To ascertain whether successive causes of action are the same, [courts] use the transaction test, developed in the context of claim preclusion." *Anguiano-Tamayo*, 2019 WL 359417, at *5 (quoting *Adams*, 487 F.3d at 689). "Courts examine four criteria in applying the transaction test: '(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.'" *Id.* (quoting *Adams*, 487 F.3d at 689). "The last of these criteria is the most important." *Id.*

BioCardia concedes that the two actions are entirely duplicative, confirming that all factors favor a conclusion of improper claim splitting. As BioCardia puts it: "The two cases arise out

---

[2] *Adams* was overruled to the extent it relied on a doctrine of "virtual representation," which is not at issue here. "[T]he *Adams* court's discussion of impermissible claim-splitting remains precedential." *Rivera*, 2017 WL 3021038, at *3 n.2 (quotation omitted).

of exactly the same facts and contain nearly identical allegations." (Dkt. 76 at 5; *see also, e.g.*, *id.* at 1 ("the overlap between the two cases is total"); *id.* at 5 ("The BSC Case and the nVision Case are Essentially Identical").) BioCardia is also correct that "[t]he two actions are so closely related that such duplication makes little, if any, sense." (*Id.* at 10.) The rule against claim splitting supplies the solution: the duplicate action should be dismissed. *Adams*, 487 F.3d at 692.

### B.      nVision Is In Privity With Multiple Defendants In The Original Case.

For claim splitting, a party to the second action is in privity with a party to the first action where "'the [party is] adequately represented in the prior litigation by someone with the same interests who [is] a party.'" *Efficient Frontiers, Inc. v. Marchese*, 2016 WL 7117243, at *3 (C.D. Cal. Dec. 6, 2016) (quoting *Taylor*, 553 U.S. at 894); *see also Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1124 (C.D. Cal. 2016). Thus, even in the absence of a legal affiliation between entities or concurrent liability, privity can exist for purposes of claim splitting. *See MLC Intellectual Prop.*, 2019 WL 4963253, at *7 ("a privity relationship does not always equal an alter ego relationship"). Moreover, "a lesser degree of privity is required" to support a defendant's use of claim splitting than in other contexts. *See In re PersonalWeb Techs., LLC, et al. Patent Litig.*, 2019 WL 1455332, at *8 (N.D. Cal. Apr. 2, 2019).

Applied here, it is clear that if BioCardia wanted to sue nVision, BioCardia had to do so by including nVision as a defendant in the Original Case. nVision is in privity with multiple defendants in the Original Case for claim-splitting purposes, including Boston Scientific Corporation, Boston Scientific Scimed, and Ms. Sarna, because each of these defendants in the Original Case has the same interest as nVision in disproving BioCardia's allegations that Ms. Sarna acted improperly in founding nVision or developing its intellectual property.[3]

BioCardia acknowledges that "nVision is a wholly-owned subsidiary of Boston Scientific Corporation." (Case 20-CV-2829, Dkt. 22, ¶2.)[4] "[O]rdinarily, a wholly-owned subsidiary is deemed in privity with its parent for claim splitting (or at least res judicata) purposes." *MLC Intellectual Prop.*, 2019 WL 4963253, at *6; *see also Pollok v. Vanguard Mktg. Corp.*, 2018 WL 6118602, at *4 (C.D. Cal. May 29, 2018) ("Privity [] exists for purposes of preclusion

---

[3] To be clear, the tests and standards for claim splitting and successor liability are different, so while nVision is in privity with Boston Scientific within the meaning of the claim-splitting doctrine, nVision is not related to Boston Scientific in a way that would make Boston Scientific liable for any acts of nVision, whether as a successor entity or under any other theory.

[4] Given this admission, BioCardia can no longer maintain its allegation in the Original Case that "Boston Scientific merged nVision into itself" and is therefore "liable for all of the liability of nVision, including that alleged herein, under California Corporations Code § 6020." (Dkt. 43, ¶53.) Boston Scientific has no liability for any claim of damages against nVision or Ms. Sarna.

between a parent corporation and its wholly-owned subsidiary."); *Tuitama v. Nationstar Mortg. LLC*, 2015 WL 12744269, at *10 (C.D. Cal. Apr. 13, 2015) (collecting cases). Further, BioCardia's claim for liability against nVision is premised on nVision's alleged *respondeat superior* liability derived from Ms. Sarna's actions in her role as nVision's CEO. (Case No. 20-02829, Dkt. 22, ¶70.)  Accordingly, privity also exists between nVision and Ms. Sarna.  *Tuitama*, 2015 WL 12744269, at *10 (finding privity where parent was alleged to be "vicariously liable under a *respondeat superior* theory"); *Ramirez v. Adventist Med. Ctr.*, 2017 WL 4798996, at *3 n.1 (D. Or. Oct. 24, 2017) ("Generally, 'when *respondeat superior* is the sole asserted basis of liability against a master for the tort of its servant, an adjudication on the merits in favor of either the master or servant precludes suit against the other.'").

\* \* \*

BioCardia's decision to file a new lawsuit against nVision, and then promptly seek consolidation, was a transparent attempt to circumvent the Court's Scheduling Order in the Original Case.  It was also a tacit admission that BioCardia knew it could not meet the good-cause standard.  Accordingly, because the Second Case is duplicative of the First Case—it involves the same causes of action and the same parties and their privities—the Second Case violates the rule against claim splitting and the claims against nVision should be dismissed with prejudice.  *See Efficient Frontiers*, 2016 WL 7117243, at *4 (dismissing second case, and noting that "[w]hile granting district court's discretion to select an appropriate remedy, the Ninth Circuit has also noted that 'dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy.").

## III.    The Court Should Not Allow BioCardia To Expand Its Trade Secrets.

The Court should also deny BioCardia's untimely motion to amend its trade-secret allegations in the Original Case.  (Dkt. 60.)  *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (requiring "good cause").  "In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification."  *Id.*  As explained more fully in BSC's opposition to BioCardia's motion to amend (Dkt. 62 at 14-15; *see also* Dkt. 63), BioCardia's proposed amendments are not based on any newly discovered facts but on BioCardia's realization that its case as originally pled has no merit.  The amendments are also futile, including because they fail to state a claim for trade-secret misappropriation.  (*See* Dkt 62 at 12-14.)  Accordingly, BioCardia cannot demonstrate diligence or good cause and the Court should deny BioCardia leave to amend.

In addition, BioCardia has not made a showing that the addition of the expanded trade secrets in the Second Case somehow avoids dismissal for claim splitting.  The new trade secrets were supposedly disclosed to Ms. Sarna at the same time as the original trade secrets.  BioCardia cannot reasonably contend that a subgroup of the alleged trade secrets disclosed in a single sitting somehow give rise to distinct causes of action under the transaction test.

Finally, while the Court should dismiss the Second Case, it was also improper for BioCardia to try to add the new trade secrets in the Second Case and as an end-run around the Scheduling Order.  A party may not use "consolidation to do exactly that which [it] was refused permission to do when [the] Court denied [its] motion to amend."  *Averhart v. Commc'ns. Workers of*

*America*, 2013 WL 3285268, at *2-3 (D.N.J. June 27, 2013). Thus, even if the Court does not dismiss the Second Case, BSC respectfully requests in the alternative that BioCardia's trade-secret claims in the Second Case be limited to the trade-secret claims in the Original Case.

## IV.     There Was No Waiver Of nVision's Defense Of Claim Splitting.

BioCardia's assertion that nVision waived its claim-splitting defense, or that BSC acquiesced to claim splitting, has no merit. To the contrary, BSC's opposition to BioCardia's motion to consolidate repeatedly asserts that the Second Case was "a blatant attempt to circumvent the Court's Scheduling Order" (Dkt. 78 at 1, 5, 7, 8, and 12) and that "[i]f BioCardia wanted to amend its counterclaims to add parties or expand the scope of its allegations, **it should have done so with a motion showing good cause to modify the Court's Scheduling Order in the Original Case**" (*id.* at 8). nVision then filed a case management report again asserting that "BioCardia filed this case in a blatant attempt to circumvent the Court's scheduling order in the BSC Case." (Case 20-CV-2829, Dkt. 54 at 7-12.) Thus, while nVision did not attach the label of claim splitting, it did "consistently object[] to and voice[] concerns over the duplicative nature of" BioCardia's pleading strategy. *Garcia v. J.P. Morgan Chase Bank*, 2017 WL 2687697 at *12 (D. Ariz. June 22, 2017). There is no waiver in this circumstance, and nothing prevented the Court from *sua sponte* raising claim splitting at the July 16 hearing. *Id.* (rejecting waiver argument raised in response to the Court *sua sponte* raising claim splitting and claim preclusion). Indeed, BioCardia's own cases only support waiver if defendant fails to object throughout the period "while both proceedings are pending," which is not the case here. *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995); *Christensen v. CLP Resources, Inc.*, 2018 WL 6017015 (C.D. Cal. Oct. 22, 2018) (discussing potential waiver arising from 4 years of litigation without objection). Here, the Second Case is at the earliest of stages—there is not even a scheduling order in place and the deadline to amend pleadings has not passed. Accordingly, to the extent the Court believes nVision should include claim splitting as an affirmative defense in its answer, nVision requests leave to amend. *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("'A district court shall grant leave to amend freely when justice so requires,' and 'this policy is to be applied with extreme liberality.'" (quotation omitted)).

## V.     BioCardia's Claims Against The Former nVision Shareholders.

BioCardia's claims against the former nVision shareholders should be dismissed with prejudice under Rule 12(b)(6). In the alternative, if the Court does not dismiss the claims against the former nVision shareholders, the case against the shareholders should not be consolidated with the Original Case and should instead be stayed pending resolution of the Original Case. Requiring the shareholders to participate in the litigation in which the claims against others are addressed, and to present their additional defenses before the "underlying" claims are decided, would result in unjustified burden and expense to the shareholders.

Dated: July 21, 2020

**FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP**

By: /s/ Ian N. Feinberg

Ian N. Feinberg (SBN 88324)
ifeinberg@feinday.com
Elizabeth Day (SBN 177125)
eday@feinday.com
Marc Belloli (SBN 244290)
mbelloli@feinday.com
Nicholas Martini (SBN 237687)
nmartini@feinday.com
577 Airport Blvd., Suite 250
Burlingame, CA 94010
Tel: 650.825.4300

Attorneys for Defendant and Plaintiff
BioCardia, Inc.

Dated: July 21, 2020

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: /s/ Timothy E. Grimsrud

David J.F. Gross (SB# 290951)
Nick P. Chan (SB# 286925)
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone: (650) 324-6700
Fax: (650) 324-6701
david.gross@FaegreDrinker.com
nick.chan@FaegreDrinker.com

Timothy E. Grimsrud (pro hac vice)
Kevin P. Wagner (pro hac vice)
Lauren J.F. Barta (pro hac vice)
Andrea I. Savageau (pro hac vice)
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-8800
Fax: (612) 766-1600
tim.grimsrud@FaegreDrinker.com
kevin.wagner@FaegreDrinker.com
lauren.barta@FaegreDrinker.com
andrea.savagaeu@FaegreDrinker.com

Attorneys for Plaintiffs-counterdefendants

Boston Scientific Corp. and Boston Scientific
SciMed, Inc., and Defendant nVision Medical
Corporation

Dated: July 21, 2020                    **FREITAS & WEINBERG LLP**

By: /s/ *Jessica N. Leal*

Robert E. Freitas (SBN 80948)
rfreitas@fawlaw.com
Jessica N. Leal (SBN 267232)
jleal@fawlaw.com
350 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301

Attorneys for Plaintiff Fortis Advisors,
Counterdefendant Surbhi Sarna and Defendant
eXXclaim Capital Partners I, LP