IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
Nicholas Martini (SBN 237687)
nmartini@feinday.com
**FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP**
577 Airport Blvd., Suite 250
Burlingame, CA. 94010
Tel: 650.825.4300/Fax: 650.460.8443

*Attorneys for Defendant/Counterclaimant*
BioCardia, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC,<br><br>Plaintiffs,<br>v.<br>BIOCARDIA, INC.,<br><br>Defendant. | CASE NO. 3:19-05645-VC<br><br>**BIOCARDIA, INC.'S MOTION TO JOIN BIOCARDIA, LIFESCIENCES, INC. AS AN ADDITIONAL COUNTERCLAIMANT AND RATIFY BIOCARDIA'S ACTS IN THIS ACTION, OR IN THE ALTERNATIVE, TO SUBSTITUTE BIOCARDIA LIFESCIENCES, INC. AS COUNTERCLAIMANT INSTEAD AND IN PLACE OF BIOCARDIA, INC. PURSUANT TO RULE 17(a)(3)**<br><br>Date: December 3, 2020<br>Time: 10:00 am<br>Judge: Hon. Vince Chhabria<br>Crtrm: 4, 17th Floor |
| BIOCARDIA, INC.,<br><br>Counterclaimant,<br>v.<br>BOSTON SCIENTIFIC CORPORATION, BOSTON SCIENTIFIC SCIMED, INC. AND FORTIS ADVISORS LLC, AND SURBHI SARNA,<br>Counterdefendants. | |

**TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................................. 1
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2
I.     INTRODUCTION ........................................................................................................... 3
II.    FACTUAL BACKGROUND .......................................................................................... 3
III.   LEGAL STANDARD ..................................................................................................... 7
IV.    ARGUMENT ................................................................................................................... 7
V.     CONCLUSION .............................................................................................................. 11

-ii-

## **TABLE OF AUTHORITIES**

**Cases**

*Bank of N.Y. Mellon v. Stafne*,
  No. C16-77-TSZ, 2016 WL 2016 8738664 (W.D. Wash. Aug. 9, 2016) .................................. 8

*Continental Insurance Co. v. N.A.D. Inc.*,
  16 Fed. Appx. 659 (9th Cir. 2001) ...................................................................................... 10

*Dolores Press, Inc. v. Robinson*,
  766 F.Appx. 461 (9th Cir. 2019) ........................................................................................... 7

*Liberty Mut. Ins. Group v. Panelized Structures*,
  No. 2:10-CV-01951-MMD, 2013 WL 760343 (D. Nev. Feb. 26, 2013) .............................. 7, 8

*Malikyar v. Sramek*,
  No. C 07-03533 WHA, 2008 WL 4891020 (N.D. Cal. Nov. 12, 2008) .................................. 9

*Mutuelles Unies v. Kroll & Linstrom*,
  957 F.2d 707 (9th Cir. 1992) .............................................................................................. 10

*United States of America for the Use and Benefit of Robert Wulff, v. CMA, Inc.*,
  890 F.2d 1070 (9th Cir. 1989) .............................................................................................. 9

## **NOTICE OF MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, December 3, 2020 at 10 a.m., before the Honorable Vince Chhabria in Courtroom 4 of the U.S. District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff BioCardia, Inc. ("BioCardia") will, by this motion and supporting memorandum of points and authorities and the supporting declaration thereto, move to join BioCardia Lifesciences, Inc. as an Additional Counterclaimant and Ratify the Acts of BioCardia, Inc. in this Action or, in the Alternative, to Substitute BioCardia Lifesciences, Inc. as Counterclaimant Instead and In Place of BioCardia, Inc., Pursuant to Rule 17(a)(3).

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES

BioCardia, Inc. ("BioCardia") moves to join its wholly-owned subsidiary, BioCardia Lifesciences, Inc. ("BioCardia Lifesciences"), as an additional Counterclaimant and ratify the acts of BioCardia, Inc. in this Action or in the alternative, to Substitute BioCardia Lifesciences, Inc. as Counterclaimant Instead and In Place of BioCardia, Inc., pursuant to Rule 17(a)(3).

**I.     INTRODUCTION**

Until the September 24, 2020 filing of Surbhi Sarna's Corrected Notice of Motion to Dismiss BioCardia's Second Amended Answer to Complaint and Counterclaims, Dkt. 121 at 11 ("Ms. Sarna's MTD SACC"), plaintiff BioCardia, Inc. had not realized that at least some, and perhaps all, of the intellectual property in this case technically belongs to its wholly-owned subsidiary, BioCardia Lifesciences, Inc.  There is a reasonable explanation for this confusion, requiring a small journey into some complex corporate transactions and resulting name-changes.

The denial of this Motion could severely prejudice BioCardia due to contested statute of limitations issues.  While BioCardia believes the statute has not yet run, and is confident about when it actually discovered its claims, there likely will be a dispute as to when it should have discovered those claims.  To avoid the possibility that the statute could run while this Motion is pending (because of the potential for some event, of which BioCardia is presently unaware, that occurred less than three years before the filing of this Motion but more than three years after this Motion is ruled upon), BioCardia Lifesciences, Inc. is filing a complaint concomitantly with the filing of this Motion to preserve the statute of limitations.  Should this Motion be granted, BioCardia Lifesciences, Inc. will immediately dismiss that lawsuit.

**II.    FACTUAL BACKGROUND**

The name "BioCardia, Inc." has been used by three distinct corporate entities over the past twenty years as BioCardia's business evolved.   All three entities have been related to plaintiff BioCardia, Inc.  This complex corporate history is what has precipitated the need for the present motion.  *See* Declaration of Peter Altman in support of Plaintiff's Motion to Join BioCardia Lifesciences, Inc. as an Additional Counterclaimant or, in the Alternative, to Substitute BioCardia Lifesciences, Inc. as Counterclaimant Instead and In Place of BioCardia, Inc., Pursuant to Rule 17(a)(3) ("Altman Declaration") at ¶ 3.

On February 13, 1995, while an employee of another medical device company (Ventritex), and with their written permission, Dr. Altman created Hippocratic Engineering to pursue catheter-based technology at the intersection of biotechnology (cells, genes, and proteins).  The Company was incorporated in 1998.  Altman Declaration at ¶ 4.

In 1999, Hippocratic Engineering, Inc. changed its name to BioCardia, Inc. ("BioCardia 1"). Dr. Altman was the President and CEO of the entity first named Hippocratic Engineering and later named BioCardia 1. Altman Declaration at ¶ 5.

In early 2002, BioCardia 1 sought additional financing and realized that it would be more difficult to fund its interventional catheter business (part of the current BioCardia, Inc.) and its blood-based gene expression diagnostics business together as one business than if the two businesses were separate companies. On February 18, 2002, BioCardia 1 (formerly named Hippocratic Engineering) created and spun out the blood-based gene expression diagnostics business as BioCardia DeviceCo, Inc. ("DeviceCo").

On March 2, 2002 BioCardia 1 (identified as "Seller") and DeviceCo. (identified as "Buyer") entered into an Asset Purchase Agreement and agreed in Section 1.1 as follows:

> 1.1 Sale and Purchase of Assets. At the Closing Seller agrees to transfer, convey, assign and deliver to Buyer and Buyer agrees to buy from Seller, all right, title and interest in and to all of the assets and properties, tangible and intangible, wherever located used primarily in the Device Business (collectively, the "Acquired Assets") including without limitation the following:

Altman Declaration at ¶ 8.

This transfer included all intellectual property and contracts related to BioCardia, Inc.'s medical device business. *Id.* As a result of the Asset Purchase Agreement, all of BioCardia 1's medical device intellectual property, including the invention assignments of Drs. Altman and Stertzer, were transferred to DeviceCo. BioCardia 1 retained the rights to the gene expression technology. Altman Declaration at ¶ 9.

On May 17, 2002, BioCardia 1 (the former Hippocratic Engineering) changed its name from "BioCardia, Inc." to "Expression Diagnostics, Inc." (dba XDx, Inc), which was more suitable for its gene expression technology. This had the added advantage of making the name BioCardia, Inc. available to DeviceCo, which was carrying on the medical device business associated with the "BioCardia" name. At that time Dr. Altman was still the President and CEO of Expression Diagnostics (the former BioCardia 1) as well as the President and CEO of DeviceCo. Altman Declaration at ¶ 10.

On August 9, 2002, DeviceCo changed its name to BioCardia, Inc. ("BioCardia 2"). Altman Declaration at ¶ 11.

On January 17, 2003, Expression Diagnostics, Inc. (BioCardia 1 f/k/a Hippocratic Engineering, Inc.) completed a financing with Kleiner Perkins Caufield and Byers and Texas Pacific Group. At that time Dr. Altman stepped down as CEO of Expression Diagnostics, Inc. (the former BioCardia 1) but continued to work as President and CEO of BioCardia, Inc. (BioCardia 2). Altman Declaration at ¶ 12.

 In 2008, Ms. Sarna became an employee of BioCardia 2. Altman Declaration at ¶ 13.

In 2016, BioCardia 2 entered into a financing transaction with a publicly traded shell (non-operating) company having cash and a listing on a stock exchange. As a result of the transaction, the shell company, Tiger X Medical, Inc. ("Tiger X"), became the owner of BioCardia 2, and the shareholders of BioCardia 2 became shareholders of Tiger X. Altman Declaration at ¶ 14.

Because it was intended that Tiger X, as parent company, would take the "BioCardia, Inc." name, BioCardia 2 was renamed BioCardia LifeSciences, Inc. Tiger X changed its name to BioCardia, Inc. ("BioCardia 3"). Dr. Altman became the President and CEO of BioCardia 3 (the former Tiger X). Altman Declaration at ¶ 15.

As a result of the 2016 transaction, BioCardia 3 owns all of the stock in BioCardia Lifesciences (BioCardia 2). The management and employees of BioCardia 3 after the transaction were the same as before the transaction. The business of BioCardia 3 after the transaction was the business of BioCardia 2 before the transaction. Altman Declaration at ¶ 16.

In sum, the entity which owns the claims asserted in this Action is BioCardia Lifesciences (the former BioCardia 2), not its parent, BioCardia 3 (the former Tiger X) which owns all the stock in BioCardia Lifesciences. Altman Declaration at ¶ 17. Since the 2016 transaction, BioCardia 3 and BioCardia Lifesciences have been operating as a single company with consolidated financials. BioCardia, Inc. (including BioCardia Lifesciences) only has 27 employees. Altman Declaration at ¶ 18.

Although BioCardia, Inc.(BioCardia 3) and its wholly-owned subsidiary, BioCardia

Lifesciences, Inc. (the former BioCardia 2), are distinct legal entities, Dr. Altman never thought of them as two entities and thus did not distinguish between them. Altman Declaration at ¶ 19.

In fact, BioCardia 3 plans to merge BioCardia Lifesciences into itself to create a single entity. Dr. Altman always thought of, and managed, BioCardia Lifesciences and BioCardia, Inc. as one and the same company, and there has been no other corporate business issue that would have made this a pressing matter for the business. To Dr. Altman, BioCardia Lifesciences and BioCardia, Inc. were, for all intents and purposes, the same entity. Altman Declaration at ¶ 20.

When the merger of BioCardia Lifesciences into BioCardia 3 occurs, BioCardia Lifesciences will cease to exist as a separate company. For this reason, BioCardia, Inc. (BioCardia 3) will not merge up BioCardia Lifescienses into BioCardia, Inc. until after the pending motions are resolved. Also for this reason, BioCardia, Inc. (BioCardia 3) seeks to add BioCardia Lifesciences as an additional plaintiff, rather than to substitute it for BioCardia 3, so the proper entity will still be a party to this Action after BioCardia Lifesciences is merged into BioCardia, Inc. (BioCardia 3). Altman Declaration at ¶ 21.

Because the anticipated merger of BioCardia Lifesciences into BioCardia, Inc. (BioCardia 3) would require BioCardia, Inc. to then be added back in as a plaintiff, BioCardia 3 instead seeks to add BioCardia Lifesciences as an additional plaintiff now. In addition, because BioCardia 3 and BioCardia Lifesciences have been operated as a single entity, it is possible that some of the injury alleged in this Acton was suffered by BioCardia 3 directly rather than through its subsidiary, BioCardia Lifesciences. That is an additional reason why BioCardia 3 prefers that BioCardia Lifesciences be added as an additional plaintiff rather than substituted as the plaintiff in place of BioCardia 3.

As President of BioCardia Lifesciences, Inc., Dr. Altman ratifies the acts BioCardia, Inc. already undertook in this litigation. In particular, BioCardia Lifesciences, Inc. authorizes continuation of this Action and agrees to be bound by the results of this Action. Altman Declaration at ¶ 22. BioCardia Lifesciences also ratifies the Acts of BioCardia, Inc. in this Action. Id.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 17(a)(3) ("Rule 17(a)(3)") authorizes a ready solution to this problem by providing that joinder, substitution, or ratification is appropriate:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

This provision is "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Federal Rules of Civil Procedure Rule 17 Notes of Advisory Committee on Rules – 1966 Amendment.

### IV. ARGUMENT

Rule 17(a)(3) provides that "[a]fter ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest." The Ninth Circuit recently confirmed that joinder pursuant to Rule 17(a) can cure the lack of standing for a plaintiff. *Dolores Press, Inc. v. Robinson*, 766 F.Appx. 461, 465 (9th Cir. 2019). "Thus, the action may be maintained, '***even though the original plaintiff presumably has no standing***.'" *Liberty Mut. Ins. Group v. Panelized Structures*, No. 2:10-CV-01951-MMD, 2013 WL 760343, at *3 (D. Nev. Feb. 26, 2013) (internal citations omitted; emphasis supplied):

> Before the Court are Plaintiff Liberty Mutual Insurance Group's Motion to Substitute LM Insurance Corporation as Plaintiff Real Party in Interest Pursuant to Rule 17(a) (Dkt. No. 119), Defendant Panelized Structure's Motion to Dismiss (Dkt. No. 132), and Defendant Panelized Structure's Motion for Judicial Estoppel (Dkt. No. 165). Liberty Mutual Insurance Group alleges that this action was inadvertently brought in its name, rather than the name of its subsidiary, LM Insurance Corporation, who was the actual party to the disputed contract. However, Liberty Mutual Insurance Group brought this motion after two years of litigation, including litigation on the very subject of the real party in interest. For this reason, Panelized Structures opposes the motion, and has brought separate motions arguing that Liberty Mutual is estopped from making the argument that it is not the real party in interest, and that the Court lacks subject matter jurisdiction as the suit is not prosecuted by the real party in interest. For the reasons discussed below, Plaintiff's Motion to Substitute is granted, and Defendant's Motions to Dismiss and for Judicial Estoppel are denied. Liberty Mutual is also ordered to show cause why the Court should not impose sanctions for its negligent misrepresentations to the Court.

*Id.* at * 1.  The court set forth a three-part analysis as to whether to grant the motion.

First, "substitution under FRCP 17(a) is only applicable when the wrong party initiated suit because 'determination of the right party to sue was difficult' or because 'an understandable mistake was made.'"  *Id.* at *3.

Second, "because the rule's main purpose is to avoid injustice, 'equitable principles should apply' in assessing the applicability of Rule 17(a) and the court must consider the prejudice to both parties and the public policy interest in litigating suits on their merits."  *Id.*  "When considering prejudice to a defendant, 'as long as defendant is fully appraised [**sic**] of a claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added, and defendant should not be permitted to invoke a limitations defense.'"  *Id.* (citations omitted).

Third, the court considered whether Liberty Mutual brought its motion to substitute within a reasonable time.  *Id*. at 4.

Over strenuous objection, the court granted the motion.  Although it was "questionable" whether Liberty Mutual's prosecution of the action resulted from an "understandable mistake," its actions did "not appear to be a purposeful implementation of Rule 17(a) as part of trial strategy."  *Id.* at *4.  As the prejudice to LMIC from dismissal would be great (the statute of limitations had run), while the prejudice to defendant from granting the motion would be minimal ("Defendant has been fully apprised of the claim, has prepared to defend, and has in fact defended itself against this action for some time"), the Court granted the motion.  *Id.* at *5.  Moreover, the policy favoring a decision on the merits weighed heavily in favor of substitution.  *Id.*  Even Liberty Mutual's 20-month delay in bringing the motion did not defeat the substitution.  *Id.* at *4*.  And the Court rejected defendant's judicial estoppel argument because "Liberty Mutual's actions do not appear to present the deliberate manipulation of the courts that the rule seeks to prevent."  *Id.* at *2.

Rule 17(a)(3) often has been invoked to allow substitution of the real party in interest in circumstances essentially identical to those here and in *Liberty Mutual*.  *See Bank of N.Y. Mellon v. Stafne*, No. C16-77-TSZ, 2016 WL 2016 8738664, at *2 (W.D. Wash. Aug. 9, 2016) (granting

motion to substitute a subsidiary in place of a parent and collecting other cases allowing the same substitution).

Plaintiff here (BioCardia 3) has a far stronger basis for its Rule 17(a)(3) motion than did Liberty Mutual.  "BioCardia, Inc." is the party to the agreement with Sarna – but it turns out to be BioCardia 2, not plaintiff BioCardia 3.  Therefore, at most, listing "BioCardia, Inc." as plaintiff was an understandable mistake.  BioCardia 3 gained no litigation advantage from this mistake.  It did not file this lawsuit in order to toll the statute of limitations until it could substitute the correct party.  *See Malikyar v. Sramek*, No. C 07-03533 WHA, 2008 WL 4891020, at *5 (N.D. Cal. Nov. 12, 2008):

> Defendants contend that Malikyar should not be allowed to cure her status under Rule 17(a)(3) because it was not difficult to determine that Jacobsen, not Malikyar, was the real party in interest when the suit was filed because Jacobsen had already filed for bankruptcy. Jacobsen could bring the suit, but not Malikyar....
>
> The situations contemplated by *Wulff* and the advisory committee are distinguishable.  In those instances, parties sought to toll the statute of limitations by filing suit, not by the real party in interest, then use the shelter of Rule 17(a)(3) once the real party in interest was joined or substituted in the action to beat the statute of limitations. There is no evidence of such a ploy here. Plaintiffs filed their complaint well within the statute of limitations, which would have run on May 5, 2009. Defendants contend in their reply brief that "the filing of this case by Malikyar alone was intended to circumvent Jacobsen's duty to list the alleged claim in his bankruptcy schedules" (Reply Br. 3). But defendants do not provide any support for this assertion. Malikyar is not prevented from curing her status under Rule 17(a)(3).

*Id.* at *5.

*United States of America for the Use and Benefit of Robert Wulff, v. CMA, Inc.*, 890 F.2d 1070 (9th Cir. 1989) ("*Wulff*") cited and distinguished by *Malikyar*, involved a lawsuit filed by a plaintiff who **knew** it did not have the rights it was asserting.  The plaintiff filed anyway because it knew the statute of limitations was about to run, and there was no time to get the necessary rights in time to avoid the statute.  The plaintiff hoped that it could acquire by assignment the rights necessary to give it standing later, which it did.  The plaintiff then amended the complaint to allege the assignment.  In opposition to a motion for summary judgment, the Wulff's argued "that the amended complaint may be construed as a specific ratification by B & K of the Wulffs' right to

maintain this Miller Act claim under Fed.R.Civ.P. 17(a)." *Id.* at 1074. The Ninth Circuit rejected that argument:

> In the Wulffs' Reply Brief they note that the suit was filed on September 17, 1986 "in order to toll the statute of limitations." Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment. Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period. B & K's assignment to the Wulffs of its claim against CMA cannot ratify the Wulffs' commencement of suit on a claim which theretofore did not exist.

*Id.* at 1075.

Here the balance of equities favors BioCardia, Inc. BioCardia, Inc. thought it had the rights it is asserting and certainly did not file this Action in its own name to avoid any statute of limitations. The prejudice to BioCardia, Inc. of having to dismiss and refile on behalf of BioCardia Lifesciences, Inc. could potentially be great. Defendants' statute of limitations defense is based on when BioCardia discovered or should have discovered the wrongdoing. Depending on when that was, the statute of limitations could have run between when BioCardia, Inc. filed the original complaint in this Action and now.

On the other hand, there is no prejudice to Defendants. They have been fully apprised of the claim and substitution will not affect their defense in the slightest. Indeed, permitting this substitution of plaintiffs will bind the real party in interest and thus fulfill the purpose of the Rule. *See Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992) ("The function of Rule 17(a) 'is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'") (quoting Rule 17(a) Advisory Committee's note).

Finally, BioCardia's Rule 17(a)(3) motion is timely as a matter of law. Sarna first objected that BioCardia, Inc. was not the real party in interest on September 24, 2020. BioCardia's motion would be filed without delay, less than a month later. *See Continental Insurance Co. v. N.A.D. Inc.*, 16 Fed. Appx. 659, 662 (9th Cir. 2001) (motion filed less than two months after objection "was not an unreasonable delay.").

BioCardia Lifesciences, Inc. also formally ratifies the Acts of BioCardia, Inc. in this Action.  Altman Declaration at ¶ 22.

As stated above, BioCardia, Inc. intends to consummate its long-time plan to merge BioCardia Lifesciences into itself, which would make it necessary for BioCardia, Inc. again to be a plaintiff.  And some of the injury alleged in this Action may have been suffered by BioCardia, Inc.  Accordingly, BioCardia Inc. strongly prefers to be allowed to join BioCardia Lifesciences, Inc. as an additional plaintiff.  In the less preferred alternative, however, BioCardia, Inc. seeks leave to substitute BioCardia Lifesciences, Inc. as plaintiff instead and in place of BioCardia, Inc., pursuant to Rule 17(a)(3).

## V.   CONCLUSION

For all the foregoing reasons, Defendant/Counterclamant's motion Pursuant to Rule 17(a)(3) to join BioCardia Lifesciences, Inc. as an additional Counterclaimant should be granted. In the less preferred alternative, BioCardia, Inc.'s motion to substitute BioCardia Lifesciences, Inc. as Counterclaimant instead and in place of BioCardia, Inc. should be granted.

Dated: October 23, 2020

By */s/ Ian N. Feinberg*
Ian N. Feinberg

FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP

Attorneys for Defendant/Counterclaimant BioCardia, Inc.