UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al.,<br><br>  Plaintiffs,<br><br> v.<br><br>BIOCARDIA, INC.,<br><br>  Defendant. | Case No. 19-cv-05645-VC<br><br><br>Re: Dkt. Nos. 117, 119, 121 |
| BIOCARDIA, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>NVISION MEDICAL CORPORATION, et al.,<br><br>  Defendants. | Case No. 20-cv-02829-VC<br><br><br>Re: Dkt. Nos. 76, 79 |
| BIOCARDIA LIFESCIENCES, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>SURBHI SARNA, et al.,<br><br>  Defendants. | Case No. 20-cv-04667-VC<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

   In April 2019, BioCardia sent a demand letter to Boston Scientific Corporation and Surbhi Sarna regarding an intellectual property dispute. BioCardia was under the impression that

Boston Scientific had acquired certain patents when it purchased a company called nVision, which Sarna founded. BioCardia's allegations, in a nutshell, were: (i) when Sarna previously worked for BioCardia, she was privy to certain trade secrets; (ii) during and after her time with the company, she secretly obtained patents for inventions using those trade secrets; (iii) she later founded nVision to develop those inventions; and (iv) Boston Scientific was now liable to BioCardia since it acquired nVision.

In September 2019, Boston Scientific and Fortis Advisors, a representative for nVision's former securityholders, filed a declaratory relief action in the Northern District of California against BioCardia, challenging BioCardia's allegations. BioCardia responded with counterclaims against Boston Scientific and Fortis and also named Sarna. The counterclaims were for correction of inventorship, breach of contract, and misappropriation of trade secrets under California law.

It eventually became apparent that nVision was the actual holder of the intellectual property that BioCardia thought Boston Scientific held. But instead of filing a motion under Rule 16 seeking leave to add nVision, BioCardia filed a second lawsuit in the Northern District. That lawsuit was originally against nVision but later amended to add 19 of nVision's former shareholders. Similar to the counterclaims in the first case, in the second case BioCardia asserted claims for correction of inventorship and misappropriation of trade secrets. BioCardia then filed a motion to consolidate the second lawsuit with the first lawsuit. In that motion, BioCardia asserted that the relevant information "came to light after the Court's . . . [scheduling order] deadline to amend its counterclaims, [so] BioCardia filed a complaint against nVision . . . so it could be sure all parties had been sued and complete relief could be obtained." BioCardia's counsel implied during a hearing that he never sought to add these parties to the first lawsuit

2

because he did not think the Court would find good cause to amend the scheduling order under Rule 16 and thus would deny such a motion. The Court ultimately denied the motion to consolidate the cases, determining that BioCardia's second lawsuit was an impermissible effort to circumvent the scheduling order in the first lawsuit. The Court also noted that the second lawsuit raised serious claim-splitting concerns that could lead to its dismissal.

Then, in October 2020, BioCardia's counsel filed yet another lawsuit in the Northern District. The plaintiff in this third lawsuit was not BioCardia, but its wholly owned subsidiary, BioCardia Lifesciences. Apparently, all this time, BioCardia and its lawyers were mistaken about which entity had potential claims for correction of inventorship, breach of contract, and misappropriation of trade secrets. Sarna had been employed by BioCardia Lifesciences, not BioCardia. And the alleged trade secrets belonged to Biocardia Lifesciences, not BioCardia.

At roughly the same time that the third lawsuit was filed, BioCardia filed motions in the first and second cases to substitute BioCardia Lifesciences as a plaintiff under Rule 17. BioCardia stated that the third lawsuit was only filed as a placeholder, in case the motions to substitute were denied in the first two cases. BioCardia made clear that if the motions to substitute were granted, the third lawsuit would be dismissed.

Boston Scientific, Sarna, Fortis Advisors, and nVision opposed the motions to substitute, arguing that BioCardia's prolonged failure to figure out that BioCardia Lifesciences was the proper party was inexcusable. They also filed motions to dismiss the first two cases, noting that BioCardia: (i) had no ownership interest in the patents; (ii) was not a party to the contract allegedly breached by Sarna; and (iii) had no ownership interest in the trade secrets allegedly stolen by Sarna.[1]

---

[1] nVision's motion to dismiss in the second lawsuit challenged the case as improper claim

Eventually (and for reasons that are not entirely clear) BioCardia withdrew the motions to substitute. And it agreed that the first two cases should be dismissed because BioCardia technically could not assert ownership interest in the intellectual property and was not party to the contract with Sarna.

But one dispute remains in the first two cases. The motions to dismiss were brought under Rule 12(b)(6) for failure to state a claim. BioCardia believes that the cases should instead be dismissed for lack of standing under Rule 12(b)(1). That is wrong. The motions were properly brought under Rule 12(b)(6), and BioCardia's claims must be dismissed for failure to state a claim rather than for lack of standing. This is so for two independent reasons.

1. BioCardia has Article III standing arising from its financial interest in and corporate relationship with BioCardia Lifesciences. BioCardia Lifescience is BioCardia's wholly owned subsidiary. And the parent whose financial interests are directly affected by an injury to the wholly owned subsidiary can claim "actual injury" within the meaning of Article III. *See Franchise Tax Board of California v. Alcan Aluminium Limited*, 493 U.S. 331, 336 (1990) (explaining that parent corporations had Article III standing to challenge a tax on their wholly owned subsidiaries because the tax "threatens to cause actual financial injury" to them by "reducing the return on their investments" and "lowering the value of their stockholdings"). A declaration signed by Peter Altman, who is the CEO of both BioCardia and BioCardia Lifesciences, makes clear that BioCardia's financial interests are directly affected by the alleged conduct of Boston Scientific, Sarna, and the other parties accused of enriching themselves at the expense of BioCardia Lifesciences. Indeed, Altman states that the two companies "have been operating as a single company with consolidated financials."

---

splitting but incorporated the arguments regarding BioCardia being the wrong party.

It's true that the Ninth Circuit, in an opinion that came after *Franchise Tax Board*, expressed the view that the parent of a wholly owned subsidiary lacks Article III standing based on financial injury stemming from harm done to the subsidiary. *Virginia Surety Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1246 (9th Cir. 1998). But the statement in *Virginia Surety* is best understood as dicta because the court went on to hold that the parent corporation had Article III standing for separate reasons. *Id.* at 1246-47. Furthermore, the Ninth Circuit in *Virginia Surety* neglected to mention the Supreme Court's opinion in *Franchise Tax Board* when making its statement about parents of wholly owned subsidiaries lacking Article III standing. And to support its statement, *Virginia Surety* invoked cases that *Franchise Tax Board* had already squarely identified as implicating prudential standing, not Article III standing. *Franchise Tax Board*, 493 U.S. at 336-338. The Supreme Court has since made clear that questions of prudential standing should generally be considered questions about the ability of a plaintiff to state a claim, not questions about jurisdiction. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014). This reinforces the conclusion that dismissal must be under Rule 12(b)(6), not Rule 12(b)(1).

    2. Even if the default rule were that a parent corporation lacks Article III standing based on financial injury stemming from harm to a wholly owned subsidiary, BioCardia would still have standing here—and thus dismissal would still need to be under Rule 12(b)(6) for failure to state a claim—because of the nature of the claims in these cases. Recall that BioCardia has brought claims for correction of inventorship, breach of contract, and theft of trade secrets. To win on the merits of the inventorship claim, BioCardia would need to show that it was an inventor or assignee and retained its ownership rights to the invention. To win on the merits of its breach of contract claim, BioCardia would need to show that it had a contractual agreement with

5

Case 3:19-cv-05645-VC   Document 178   Filed 03/11/21   Page 6 of 7

Case 3:19-cv-05645-VC   Document 178   Filed 03/11/21   Page 6 of 7

Sarna. And to win on the merits of its trade secrets claim, BioCardia would need to demonstrate an ownership interest in those trade secrets. Clearly then, the question of whether BioCardia is the proper party depends on the resolution of factual issues that go to the merits of BioCardia's claims. In other words, the question that BioCardia believes is a standing question—whether BioCardia is truly the "injured" party—is intertwined with the elements of the claims that BioCardia has asserted.

"As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (internal quotations and alterations omitted). That's because courts presume success on the merits when evaluating standing. Thus, given the claims BioCardia asserts, the question of whether BioCardia is the proper party is not a standing issue—it's a merits inquiry. *See also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004) ("The district court erred in characterizing its dismissal of Safe Air's complaint under Rule 12(b)(1) because the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits."); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019). This rule has been applied in a variety of contexts similar to the one in this case. *See, e.g.*, *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010); *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015); *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019); *see also Lexmark*, 572 U.S. at 127-28.

6

Accordingly, the motions to dismiss for failure to state a claim under Rule 12(b)(6) are granted. And because BioCardia concedes that it cannot establish an ownership interest in the intellectual property or a contractual relationship with Sarna, dismissal is without leave to amend.[2] Judgment will be entered in the first two cases accordingly, after adjudication of the sanctions motions. A case management conference in the third case is scheduled for April 14, 2021 at 2:00 pm.

**IT IS SO ORDERED.**

Dated: March 11, 2021

VINCE CHHABRIA
United States District Judge

---

[2] Technically, the Court is considering facts from outside the pleadings that contradict BioCardia's assertions, in the pleadings, of a contractual relationship and ownership of the intellectual property. This could make one wonder if the motion to dismiss should be converted to a motion for summary judgment. However, it remains appropriate to dismiss the claims under Rule 12(b)(6) because the contradictory facts are now conceded by BioCardia. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117-18 (9th Cir. 2018).